# Exhibit A - Arrest Warrant Excerpts and Core Probable-Cause Defect

## All arrest warrants written and executed April 5th -7th

Source of tampering allegation: <mark>Michael Allen Walker Defense Team</mark>

### James Louis Roden Jr. - April 7th, 2025

From 3/17/2025 to 4/5/2025, I have been receiving documentation from the Guadalupe County Attorney's Office that is from the Defendant. The Defendant has repeatedly

### James Louis Roden Sr. - April 7th, 2025

From 3/17/2025, I have been receiving documentation <mark>from the Guadalupe County Attorney's Office that they had received from Michael Walker's attorneys.</mark> In the affidavit

### Jamie Renee Walker - Saturday April 5th, 2025

On 3/17/2025, I obtained from the <mark>Guadalupe County Attorney's Office affidavits from</mark> Cody and Andrea Koelle that <mark>they had given to Michael Walker's attorneys.</mark> In the

**False Statement -1**

CASE to wit, coerce Shelby Jame Koelle, who was a witness in an official proceeding, namely Aggravated Sexual Assault, by means of repeatedly contacting Shelby and

**The objective carrier T-Mobile Plaintiff phone records establishes the following:**

 • **Shelby Jane Koelle initiated approximately 165 incoming calls to Plaintiff**

 • **Plaintiff initiated only 2 outgoing calls to Shelby Jane Koelle during the entire period** between October 2024 - April 2025.

• **Plaintiff ignored** or did not answer approximately **145 of the incoming calls** initiated by Shelby Jane Koelle

• Plaintiff answered approximately 20 incoming calls from Shelby Jane Koelle

• Plaintiff returned approximately 35 calls, all in response to prior incoming calls initiated by Shelby Jane Koelle At no point do the records show Plaintiff engaging in persistent, unsolicited, or harassing contact toward Shelby Jane Koelle.

Shelby repeatedly contacted Plaintiff and easily accessible phone records proved it.

**False Conclusion and Omitted Facts - 2**

advising her to tell the prosecution, sign a waiver, and testify in court that her mother did not know she was being sexually assaulted by her stepfather and that her mother is innocent, with intent to influence Shelby to testify falsely in the official proceeding. And it

The warrant's intent theory collapses under its own logic. Reamer assumed that because Plaintiff helped S.J.K. communicate a statement favorable to Jamie, Plaintiff must have intended S.J.K. to testify falsely. But the affidavit never answered the essential question: how would Plaintiff know S.J.K.'s statement was false? Plaintiff did not witness the Seguin events. He had no access to secret law-enforcement theories. No official ever told him S.J.K. had given a different firsthand account. And the account S.J.K. gave Plaintiff was the same core account she had already given Reamer before Plaintiff's alleged influence. The videos show Plaintiff asking the exact questions an advocate should ask when he lacks firsthand knowledge: Are you being coerced? Are you being bribed? Are you being told what to say? S.J.K. answered no and later swore the same under oath. The forensic evaluation of Jamie gave Plaintiff additional reason to believe Jamie may also be a disabled victim of coercion and abuse. Reamer omitted that context

and turned a good-faith effort to verify voluntariness into an accusation of criminal intent. That is not probable cause. That is a conclusion built by removing the facts that disproved it.

**Proof from Court Filed and Court Appointed Forensic Evaluation**

Resolution Forensic and Consultation Services
John Delatorre, Psy.D.
Licensed Psychologist

**PSYCHOLOGICAL EVALUATION**

Police interview video of victim (Investigator Elaine Reamer), dated 4/4/2024, this video is of the investigator and the victim in the case. The victim stated she was threatened with physical violence by Michael Walker if she told police the two were having sex. The victim stated her mother was never involved in any sexual activity. The victim stated that Ms. Walker was afraid of Mr. Walker and that she never knew what was happening to her.

Police interview video of Jamie Walker (Investigator Elaine Reamer), dated 4/9/2024, this video is of the investigator and Ms. Walker. She outlined various instances of intimate partner violence. According to Ms. Walker, she learned the victim was pregnant and the father was her husband at the same time. She confronted her husband at that time. She stated that she was never threatened by her husband in an effort to continue to have a sexual assault to happen with the victim. She denied having sexual contact with both of them.

**Notice how GCSO suspended S.J.K. rape case and allowed the abuse to continue for months after I made the report in January 2024 but arrested me in days with no evidence with a 1st degree felony carrying up to 99 years in prison.**

Guadalupe County Sheriff's Office Incident/Offense Report (case number 24-02887), dated 5/21/2024, this reported indicated a 26-year-old woman became pregnant by her stepfather. The woman was diagnosed with intellectual disability and cannot give consent. The reported indicated a history of domestic violence in the home from the stepfather to the woman's mother, Ms. Walker. The case was initially suspended until officers received an APS report. It does not appear as though the victim in the case says Ms. Walker had sexual contact with her; however, emails received by the investigator appeared to indicate the possibility that all individuals were having sex with each other.

**SHIPLEY 2 (IQ SCREEN)**: The Shipley-2 is intended for use with children and adults in any setting in which an estimate of cognitive functioning is needed, is a brief measure of cognitive functioning, and assesses crystallized abilities through the use of the Vocabulary Scale and assesses fluid cognitive abilities using the Abstraction Scale. The results can adequately determine overall cognitive ability for everyday applications despite the instrument's brevity.

Her composite standard score (estimated IQ) is 56 (Low), using the Abstraction subtest, and is 65 (Low) using the Block Patterns subtest. Her vocabulary scale score of 62 is in the Low range. This suggests she has extremely limited verbal ability and comprehension.

**Forensic Evidence Conclusion Report Court Filed March 31st, 2025 for Jamie Walker**

I.    **Recommendations in reference to performing the psychological examination identifying the following issues:**

*Are there any cognitive issues?*

> Yes, based on her history and current intellectual screener, there are significant concerns about her overall intellectual functioning.

*Are there any mental health issues?*

> Yes, these issues are related to both her current legal situation and her symptoms of PTSD. On their own, these issues would be debilitating, but when combined, especially within the context of the allegations she is facing, Ms. Walker is experiencing a tremendous amount of distress. Her limited cognitive functioning also impairs her ability to cope.

*What role did previous trauma play with respect to the allegations?*

> As the testing suggests, Ms. Walker appears to have been seriously manipulated and coerced by the men in her life. In particular, her most recent marriage appears to be marred with various influences that was used to convince her to engage in sexual behaviors she would not otherwise engage in. Her prior experience of intimate partner violence and limited coping resources influenced her into acquiescing to demands rather than advocating for herself. This is not uncommon in abuse survivors.

Reamer's theory also ignored that a court-filed forensic report, based in part on Reamer's own investigative materials, reflected the same core account Plaintiff was accused of causing. Dr. Delatorre's report summarized S.J.K.'s April 4, 2024 interview with Reamer, including that S.J.K. stated Jamie was not involved in sexual activity, that Jamie was afraid of Michael Walker, and that Jamie did not know what was happening. The same report documented Jamie's low intellectual functioning, including estimated IQ scores of 56 and 65, "extremely limited verbal

ability and comprehension," and diagnosed Jamie with Intellectual Developmental Disorder and PTSD, with secondary concerns of spousal physical and sexual abuse. The report further concluded that Jamie appeared to have been seriously manipulated and coerced in abusive relationships. These court-filed professional findings gave Plaintiff reason to understand Jamie as a disabled domestic-violence victim who needed accommodation, protection, and direct access to the legal process, not as a knowing participant. They also showed that S.J.K.'s account was already reflected in Reamer's own investigative record and professional forensic review. Reamer could not fairly treat the same account as Plaintiff-created witness tampering while omitting that it appeared in her own file and in a court-filed psychological evaluation.

### False Statement and Conclusion -3

been in contact with the victim over phone calls and Facetime. The Defendant has been able to coerce the victim into changing her statement where she stated Jamie and Michael had both been sexually assaulting her while she was in their care. The

Reamer inflated the alleged "changed statement" by describing S.J.K. as having previously accused Jamie of direct sexual assault, even though the indictment charged Jamie only with soliciting, encouraging, directing, aiding, or attempting to aid Michael Walker. That mischaracterization made S.J.K.'s later statement appear like a dramatic Plaintiff-caused recantation from a direct accusation Jamie was never actually charged with.

### Directly from Reamers own Investigative Report:

Guadalupe County Sheriff's Office Incident/Offense Report (case number 24-02887), dated 5/21/2024, this reported indicated a 26-year-old woman became pregnant by her stepfather. The woman was diagnosed with intellectual disability and cannot give consent. The reported indicated a history of domestic violence in the home from the stepfather to the woman's mother Ms. Walker. The case was initially suspended until officers received an APS report. It does not appear as though the victim in the case says Ms. Walker had sexual contact with her; however,

### False Statement and Conclusion - 4

Defendant sent videos, transcripts and recorded phone calls, where he is contacting and/or attempting to contact prosecutors with the victim also on the phone, advising the victim on what to say to include the Jamie did not know about the victim being repeatedly sexually assaulted by Michael. I saw a video that the Defendant and the

Reamer falsely labeled advocacy as coaching while supplying no quote, timestamp, or specific statement showing tampering. She claimed to possess videos, transcripts, recorded calls, and communications, yet identified no threat, bribe, benefit, instruction to lie, request to withhold information, or request to avoid court. Those recordings, videos, and documents showed advocacy by a certified Special Education teacher helping an intellectually disabled victim contact prosecutors and the court so she could receive meaningful access and have her own voice

heard. If the materials actually showed witness tampering, Reamer could have quoted the tampering. She did not. Instead, she turned protected advocacy into a crime.

## False Statement and Conclusion - 4

repeatedly sexually assaulted by Michael. I saw a video that the Defendant and the victim are on Facetime, where the Defendant is telling the victim that no one had been in contact with her from the prosecutor's office.

Reamer misattributed the "no prosecutor contact" statement to Plaintiff. The recorded call Reamer claimed to have received and reviewed showed S.J.K. made that statement herself, and County Attorney personnel confirmed on the same call that their office had not contacted S.J.K. since October 31, 2024. Reamer turned S.J.K.'s own access complaint, confirmed by County personnel, into supposed evidence of Plaintiff's influence.

## Mischaracterization - 5

During the investigation, the Defendnant has repeatedly stated he is aware the victim has an Intellectual Disability (IDD) and cannot properly take care of herself. The Defendant has repeatedly stated that the victim has a low IQ.

Reamer treated Plaintiff's knowledge of S.J.K.'s IDD, low IQ, pregnancy, and exploitation as evidence of criminal influence, even though that same knowledge existed because Plaintiff was the mandated reporter and special-education-certified teacher whose APS report helped trigger the underlying investigation. In Plaintiff's view, the County then inverted the law: the report of disability and exploitation became evidence against the reporter, while the sexual-exploitation case against the stepfather who impregnated an IDD woman was reduced through a theory that treated S.J.K.'s age alone as consent. That inversion is why the warrant lacked probable cause and why the arrest was retaliatory.

## Mischaracterization - 6

### The Defendant is Jamie's biological brother.

Reamer implied Plaintiff was protecting Jamie Walker because she was his sister, but omitted the fact that Plaintiff himself reported concerns involving Jamie to authorities and helped initiate the investigation. Plaintiff had no motive to shield Jamie from accountability; he wanted the allegations investigated and the truth determined. That is also consistent with Plaintiff's limited adult relationship with Jamie, whom he had seen only a few times over more than thirty years after she moved out when Plaintiff was approximately thirteen. Reporting suspicion was not proof that Plaintiff knew Jamie was guilty. Plaintiff's later advocacy arose because S.J.K.'s repeated firsthand account, Reamer's own records, and court-filed disability evidence showed that both S.J.K. and Jamie diagnosed with IDD needed to be heard and ADA accomediation before suspicion was treated as fact.

### State Proves there was no Probable Cause

70

Closing Statement by Mr. Green
November 3, 2025

waiting to DNA paternity test the client's future daughter, Natalie, to match it to the stepfather, Michael Allen Walker, and, quote, 'put him -- stepfather -- Michael Allen Walker away for life.'"

We're not seeking a life sentence, but we are putting on evidence that shows a witness who is unreliable; who has an intellectual development disability; who has vacillated in her story; who is easily swayed; who has given several conflicting accounts, many of which are documented in State's 11 alone; but who, it is undisputed, is the stepdaughter of the defendant and was impregnated by the defendant and now has a child that is biologically his.

Amdur's later sentencing argument undermines the warrant theory. If the State's own evidence showed S.J.K. had IDD, was easily swayed, had vacillated, and had given conflicting accounts before Plaintiff's alleged influence, then Reamer could not reasonably infer that Plaintiff caused S.J.K. to lie merely because S.J.K. repeated an account favorable to Jamie. The County's own view of S.J.K. required careful verification, direct disability-informed questioning, and disclosure of prior inconsistent and prior consistent statements. Instead, Reamer skipped the central question—whether Plaintiff coerced S.J.K.—and treated Plaintiff's advocacy as the cause of a "changed story" the State already knew was part of S.J.K.'s broader history.

### Omissions and Proof of Defense Strategy to charge Roden Family with Tampering

### John Green Michael Walker defense Attorney closing argument:

> I think that the -- this case -- the facts are certainly murky, Judge. I think that's because ==from the very beginning the Roden family was out to get Michael Walker because they thought it was a rape from the beginning.== That's why they ==called APS.== That's why they told APS that he's a convicted felon when he's absolutely not and they just kind of

### APS was called because Texas law says this:

The key statute is **Texas Penal Code § 22.011(b)(4)**. It says a sexual assault is "without consent" if:

*"the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it."*

### Dr. Sanders May 2024 Report concluded:

RECOMMENDATIONS

1. ==Ms. Koelle is not capable of independent living.== She will require someone to act as ==legal guardian== and to make legal and financial decisions for her.

8

**Michael Walker defense Strategy was to have Roden Family arrested to assist Michael**

John Green questioning his PI under Oath:

Q. And did you come with me to meet with the D.A.'s office to tell them this information?

A. We did twice.

Q. What happened after that?

A. They were then charged -- several family members were charged with witness tampering.

Q. And that would be Jaime, James Roden and James Roden, Sr.?

A. Correct.

Q. And who is Cody in all of this?

A. Cody is Jaime's biological son. So it's Shelby's brother.

Reamer herself states in two of the affidavits the source of the allegation came form Michael Walker Defense Attorney's

From 3/17/2025, I have been receiving documentation from the Guadalupe County Attorney's Office that they had received from Michael Walker's attorneys. In the affidavit

On 3/17/2025, I obtained from the Guadalupe County Attorney's Office affidavits from Cody and Andrea Koelle that they had given to Michael Walker's attorneys. In the

Mr. Amdur admits in Court that it was Michael's defense team to push charges against the Roden Family without proof and used those charges to reduce the charges against Michael.

CROSS-EXAMINATION

Q.   (BY MR. AMDUR) Ma'am, where does it talk about James, Sr. threatening in this document, State's exhibit -- Defense Exhibit 1?

A.   The third page. It says grandad.

Q.   Okay. Not by name, right?

A.   Correct.

Q.   Okay. You're assuming that it is James Roden, Sr. though?

A.   Yes.

Q.   And while that's your assumption, in full disclosure the State has filed charges -- not indicted -- both James, Sr., the father of Jaime; James, Jr., the brother of Jaime; and Jane I think is her name, the mother of Jaime. Is that correct?

A.   Yes.

Amdur's cross-examination of Michael Walker's defense investigator confirms both the weakness and source of the accusation stream. The investigator admitted that the document did not identify James Louis Roden Sr. by name; it only said "grandad," and she assumed that meant James Sr. She also admitted that she and Walker's counsel brought the matter to the State's attention. Amdur further stated that at that meeting the State indicated a willingness to look into the matter and, shortly afterward, indicated a willingness to work out a plea offer on charges much more lenient than aggravated sexual assault or sexual assault. This testimony supports Plaintiff's allegation that the tampering charges arose from a defense-connected accusation stream that benefitted Michael Walker, and that Reamer failed to disclose the adversarial source, assumptions, and motive behind the allegations before seeking first-degree felony warrants.

59

| Melissa Cortez - November 3, 2025 |
| Cross-Examination by Mr. Amdur |

Q.   Okay.  You actually did, with Mr. Green, bring this to our attention, did you not?

A.   I did.

Q.   And, if you know, shortly after that -- actually it was at that meeting we indicated a willingness to look into the matter.  And shortly after that we indicated to Mr. Green a willingness to work out a plea offer on much more lenient charges than aggravate sexual assault or sexual assault, right?

A.   Yes.

Q.   Okay.  Do you know -- and part of your investigation duties, did that entail looking into the charges against Jaime at this point?

A.   I did not look into Jaime's case, specifically.  No.

The State's own source evidence points to Cody, not to independent probable cause against Plaintiff or James Sr. If the materials came from Cody and Jamie/Cody jail calls, then Reamer could not simply transfer Cody's accusations onto the entire Roden family. The Fourth Amendment required individualized probable cause. Instead, the warrants treated a defense-routed family narrative as if it were evidence that each accused person committed first-degree felony tampering.

The problem is even clearer for James Sr. The defense investigator admitted the document did not name him; it said "grandad," and she assumed it meant James Sr. An assumption from a defense investigator is not probable cause to arrest a disabled elderly veteran on a first-degree felony without interviewing him, verifying the claim, or identifying a specific threat.

The problem is equally clear for Plaintiff. Reamer claimed to have Plaintiff's videos, transcripts, calls, and advocacy communications, but identified no quote where Plaintiff

11

threatened, bribed, pressured, or instructed S.J.K. to lie. If the evidence came from Plaintiff's own recordings, the tampering words should have been easy to quote. Reamer quoted none.

The defense side gave prosecutors a Cody-centered narrative. Prosecutors routed it to law enforcement. Reamer converted it into felony warrants. But the warrants lacked individualized facts showing what each accused person actually did to satisfy witness tampering.

Cody's most serious allegation against the Roden family was that Plaintiff forged Cody's November 2024 affidavit and signature. Cody made that accusation in a sworn notarized affidavit before Plaintiff's arrest and repeated it under oath at Jamie Walker's June 18, 2025 bond hearing. Yet neither Reamer nor the Guadalupe County Attorney's Office sought a forgery warrant or forgery charge against Plaintiff. Plaintiff alleges that omission is significant because available evidence, including recorded calls and later notary verification, strongly undermined Cody's forgery accusation. Rather than investigate or charge the alleged forgery directly, officials allegedly pivoted to Plaintiff's open advocacy for S.J.K. and used that advocacy as the basis for a first-degree felony tampering charge, a $100,000 bond, and protective conditions barring contact with both S.J.K. and Cody, who were listed as "victims." Plaintiff alleges this sequence supports an inference that the warrant process was used to silence and restrain the Roden family rather than to pursue a verified forgery or witness-tampering offense.

A.    I -- I mean the things they were saying were pretty bad about Michael.  So I would think that it would effect him just as much in a worse way.

Q.    Right.  But these were affidavits to try to exonerate Jaime that were being discussed, right?  The $8,000 was bond money for Jaime.  Really it had nothing to do with this particular case, right?

A.    No, it did.  I mean it was to put all the blame on one person -- on Michael.

Q.    Did you witness any direct communication involving Jaime or her immediate family that related to conspiring to set up or frame or falsely accuse this defendant, your client --

A.    Well --

Q.    -- or was it -- let me finish really quickly -- or was it more for the benefit of Jaime getting her out of jail or getting documentation to show that she was a victim in this?

A.    All of the communication, the recordings and I don't know how many text messages I saw from Jaime, it was all with regard to Michael.

Q.    Michael's culpability, not Michael's case, correct?

A.    Michael's case and his past and --

61

Melissa Cortez - November 3, 2025
Cross-Examination by Mr. Amdur

Q.    Okay.  How was it in relation to Michael's case or this particular case that you're testifying in today?

A.    She was sending Andrea, her sister-in-law, and her son photos of what she was trying to insinuate was case work.  It was like, you know, files and saying she had all of these records showing all of these things.  And she was using that photo to try to convince them that Michael had done all of these things.

Q.    And did Andrea or Cody do anything with that information to the detriment of your client?

A.    No.

Q.    All right.  So as far as this case is concerned, it was wholly ineffective.  And it just scored three of them -- actually, and Jaime as well with additional charges, right?

Q. Let's talk about the affidavits that are trying to exonerate Jaime. So if Jaime is a victim in all of this, does that mitigate her culpability in a crime?

A. Yes.

Q. And as for the plotting, we talked a little bit on cross how they're supposedly plotting through jail calls. But who initially called APS?

A. The Roden family.

Q. And in those calls to APS, did they mention that my client is a convicted felon?

A. They did.

Q. And is he a convicted felon?

A. He's not.

Q. All right. So from the beginning, was that the truth

## Criminal Case Records Search Results

iddle Name: Allen   All All   Sort By: Filed Date

| Defendant Info | Filed/Location | Type/Status | Charge(s) |
|---|---|---|---|
| WALKER, MICHAEL ALLEN<br>06/25/1968 | 06/02/2022<br>2nd 25th District Court | Adult Felony<br>Dismissed | AGG ASSAULT W/DEADLY WEAPON<br>ASSAULT FAM/HOUSE MEM IMPEDE BREATH/CIRCULAT |
| WALKER, MICHAEL ALLEN<br>06/25/1968 | 03/31/2023<br>County Court at Law # 2 | Adult Misdemeanor<br>Disposed | DEADLY CONDUCT |
| WALKER, MICHAEL ALLEN<br>06/25/1968 | 07/08/2024<br>274th District Court | Adult Felony<br>Disposed | AGG SEXUAL ASSAULT<br>AGG SEXUAL ASSAULT<br>AGG SEXUAL ASSAULT<br>SEXUAL ASSAULT CONDUCT - LESSER INCLUDED<br>SEXUAL ASSAULT PROH/PURPORT SPOUSE<br>SEXUAL ASSAULT PROH/PURPORT SPOUSE |

**Omitted Mandated Report Against Jesse Ross Cole**

**See Exhibit B for full Mandated Report of Shelby's second pregnancy:**

**Cody claimed he was dealing drugs and feared for the safety of his family and young children:**



00:14:31 ▶ ‖

Cody Lane Koelle    ▶    And I was like, hey, this guy's been living with me. My sister moved him in when we told her to let me and me and Shelby talk. About what? Him living here. So, like. Okay, well, what's the situation? I said he has a bag of cocaine on him, and he has weed, and I. I feel that my family is in danger because my three little boys right now.



**FORD COUNTY SHERIFF'S OFFICE**

Ford County Sheriff
11311 E Comanche
Dodge City, KS 67801

**COLE, JESSE ROSS**                    **ARREST**

Age: 38 (at time of arrest)    Gender: Male

**VARIOUS CHARGES**

*Presumed innocent until proven guilty in a court of law.*

ARREST FOR RECKLESS DRIVING, POSSESSION OF DEPRESSANT, DRIVING UNDER THE INFLUENCE 1ST CONVICTION, LICENSE TO BE CARRIED AND EXHIBITED UPON DEMAND AND FLEE OR ATTEMPT TO ELUDE LAW ENFORCEMENT



Location
**Dodge City, KS 67801**

**ELECTRONICALLY FILED**
2024 Mar 15 PM 3:06
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: FO-2024-CR-000104
PII COMPLIANT
**IN THE DISTRICT COURT OF FORD COUNTY, KANSAS**
Ford County Courthouse, Central & Spruce, Dodge City, Kansas

**STATE OF KANSAS**
            Plaintiff,

        vs.

**JESSE ROSS COLE,**
        Defendant.

Case No. **FO 24 CR**
Tracking No.
Agency No. 24FO1893
Court ORI No. KS029015J

**INFORMATION**

15

**Excerpt from April 1st, 2025 Mandated Report**

Shelby, who has Intellectual and Developmental Disabilities (IDD) and receives Social Security Disability benefits, has been living with her brother, Cody, and his wife, Andrea, in Kansas since August 1st, 2024. Despite knowing Shelby's condition, Cody and Andrea allowed a man named Jesse to move into their home. They permitted Jesse to sleep in the same room with Shelby, and Cody has openly stated that he was aware Jesse was using Shelby for sex, claiming that the relationship would not last long. It is now believed that Shelby is pregnant for a second time, potentially as a result of exploitation due to her disability, an issue that both Cody and Andrea had a responsibility to protect her from.

This situation is deeply disturbing, not only because it exposes Shelby to abuse but because it mirrors the very crime Jamie and Michael Allen Walker are being accused of. By allowing this man to have unrestricted access to Shelby, and permitting him to engage in sexual activity with her, Cody and Andrea may have facilitated the same type of abuse that is being prosecuted in Jamie's case. This is a clear violation of Shelby's rights as a vulnerable adult and falls under the same legal concerns as those Jamie and Michael face.

As set forth in Texas Penal Code Section 22.011, which criminalizes sexual assault, the law clearly outlines that individuals with intellectual disabilities cannot consent to sexual activity, and any sexual act committed against them without their consent is a violation of their rights. Under Texas law, consent cannot be legally given by a person who lacks the mental capacity to understand the nature of the act (Tex. Penal Code § 22.011(c)).

In Kansas, the law similarly protects individuals with IDD from sexual exploitation and abuse. According to Kansas Statutes Annotated (K.S.A.) 21-5503, any sexual act involving a person who is unable to provide consent due to mental incapacity is considered sexual assault. Given that Shelby has been diagnosed with IDD, her ability to consent to sexual acts is legally restricted, and Cody and Andrea's actions in permitting this relationship to develop and continue may amount to legal violations under both Texas and Kansas law.

Plaintiff alleges that his April 1, 2025 mandated report was sent to senior County Attorney leadership, including First Assistant County Attorney Jonathan Amdur and elected County Attorney David Willborn. The report raised concerns about renewed exploitation, drug activity, unsafe living conditions, Jesse Ross Cole, Cody Koelle's environment, and S.J.K.'s possible pregnancy. Yet Plaintiff alleges neither Jesse nor Cody was meaningfully investigated with comparable urgency. Instead, six days later, Plaintiff became the target of a first-degree felony warrant. Amdur later characterized the Roden family's efforts as "craziness," even though those efforts included protected reporting, court filings, disability-access requests, and attempts to help an intellectually disabled victim be heard. Plaintiff alleges this sequence supports an inference that County actors treated protected advocacy and mandated reporting as a threat to the preferred narrative rather than as a duty to investigate.

**Michael's "best friend" and former lover/wife stated she was in contact with Shelby and Jesse**

```
Q    (MR. GREEN) Where's Shelby now?
A    Kansas.
Q    Is she currently pregnant?
A    Yes.
Q    With whose baby?
A    His name is Jesse.  I'd have to get my phone
to remember what the guy's last name is.
```

Plaintiff alleges the sentencing transcript and recorded communications with investigator Jesse Prado support the inference that County actors had a reason not to investigate Jesse Ross Cole or Cody Koelle at all. Those materials show that Michael Walker's defense side and persons aligned with Walker had access to Jesse Ross Cole and used him as a comparator to argue that, if Jesse was not being investigated or prosecuted for impregnating S.J.K., then Michael Walker should not face first-degree sexual-assault exposure for impregnating her either. Plaintiff alleges this comparison helps explain why Jesse and Cody were not investigated after Plaintiff's April 1 mandated report, while Plaintiff was arrested six days later. Investigating Jesse would have undermined the comparator used to reduce Michael's charges, while investigating Cody would have undermined the "planned pregnancy" narrative used to portray Jamie as the mastermind and discredit the Roden family. Cody himself revealed in the March 18, 2025 recorded call that S.J.K. had been told to say the pregnancy was planned if she wanted her mother free, and later court testimony reflected that Walker's private investigator captured a brief recorded statement from S.J.K. before ending the call. Plaintiff alleges these facts support an inference that the County accepted defense-aligned narratives while refusing to investigate facts that would have undermined those narratives.

17

○ 00:26:03 ▶ ❚❚

**Jesse Prado**    ▶    Apparently they're (County Attorney's Office) stating. Now, remember, I know a lot of the answers to the questions that I'm asking you, but but apparently they're stating that Shelby makes her own decisions since she's been an adult. So, in other words, what they're saying is my first question was, is it illegal for someone to have sexual relations with Shelby? That's question number one, right? Because she can't consent on her own, apparently. And the answer to that question that I'm getting is that it is not illegal.

Investigator Jesse Prado informed advocate Kimberly Kennedy that, according to the County Attorney's Office, Michael Walker's impregnation of S.J.K. and Jesse Ross Cole's alleged sexual exploitation of S.J.K. were not being treated as illegal because S.J.K. was an adult and did not have a legal guardian, despite her documented intellectual disability, childlike functioning, and reported vulnerability to coercion and exploitation.

completely candid the Rhoden family, right, which is the codefendant's maiden name, provided us with a report from a psychiatrist whose last name was Rhoden on the letterhead, and then, I think, it was a few days later sent us a corrected report that psychiatrist -- letterhead with that psychiatrist's actual name. So I don't know what was fabricated and what was not. And I think that's a big part of it.

THE COURT: Okay.

MR. GREEN: As far as the indictments concerned too, Judge, at the very beginning of this whole process I filed a motion to quash, because the language in the statute didn't specify whether or not he was being prosecuted under the prohibited sexual contact as a stepfather or as sexual relations with a mentally retarded person. At that time the State clarified this was because it was a stepdaughter-stepfather relationship and that's why they're going forward with that specific charge.

| 08/29/2024 | Motion |
| | *To Amend The Indictment* |
| 09/11/2024 | Order |
| | *Order Amending the Indictment* |

The August 29, 2024 motion practice further exposes the County's inconsistent and retaliatory use of S.J.K.'s disability. Seven months before Plaintiff's arrest, the State clarified that Michael Walker's prosecution was not proceeding on a theory that S.J.K.'s intellectual disability rendered her incapable of consent, but on a stepfather/stepdaughter or force-related theory. Later, when Plaintiff relied on S.J.K.'s documented IDD, low IQ, and communication limitations to request accommodations, direct access, and support so her own voice could be heard, Reamer used that same disability context as suspicious evidence of witness tampering. Amdur then deepened the contradiction by publicly suggesting in open court uncertainty over whether disability evidence supplied by the Roden family was "fabricated," even though the report identified the evaluator and could have been verified directly through a basic phone call, email, subpoena, or records check. Plaintiff alleges this was not a good-faith misunderstanding. It supports the inference that County actors had no real intention of accommodating S.J.K.'s disability when her voice challenged their preferred narrative, but were willing to use that same disability as a weapon against Plaintiff when his advocacy became inconvenient. County actors treated S.J.K. as competent enough that her adult status and lack of guardianship weakened sexual-assault accountability for Michael Walker, but too disabled to speak with help from an advocate without that advocate being accused of manipulation. Reamer then converted that contradiction into a fabricated probable-cause narrative: protected disability advocacy became coercion, S.J.K.'s access-seeking became manipulation, and the absence of any quoted threat, bribe, benefit, or instruction to lie was replaced with the unsupported conclusion that Plaintiff intended false testimony.

19

**Cody Lane Koelle star witness for the State and Michael Walker Defense**

 **FORD COUNTY SHERIFF'S OFFICE**

Ford County Sheriff
11311 E Comanche
Dodge City, KS 67801

## KOELLE, CODY LANE

**ARREST**

Age: 28 (*at time of arrest*)     Gender: Male

### VARIOUS CHARGES

*Presumed innocent until proven guilty in a court of law.*

ARREST FOR FELONY INTERFERENCE WITH LEO AND FELONY CRIMINAL THREAT

Location
**Dodge City, KS 67801**

Arrest Date
**Apr 14, 2025**

Incident Type
**All Other - Criminal**

Page 10

Supplemental Criminal History Worksheet - Prior Convictions

Offender's Name (L, F, M) KOELLE, CODY LANE          Judicial District 16TH          County FORD          Case # 2025 CR 000203

Page #  1  of  1

| Statute/Ordinance # | Description | Juris. Code | State | County | City | Conviction Date | Case # | Conviction Code | Amended Code | Source of Information |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.  21-5904(a)(1)(C) | INTERFERENCE WITH LEO-FALSE REPORT | S | KS | PAWNEE | | 5/8/2025 | 24 CR 121 | AMN | | CR |
| 2.  21-5917(a) | FALSE IMPERSONATION | S | KS | PAWNEE | | 5/8/2025 | 24 CR 121 | AMU | | CR |

20

COUNT 1

INTERFERENCE WITH LAW ENFORCEMENT, FALSE REPORT (Misdemeanor)
K.S.A. 21-5904(a)(1)(C)
Class A Nonperson Misdemeanor

On or about the 27th of September, 2024, in the State of Kansas and County of Pawnee, CODY LANE KOELLE, did, then and there, unlawfully and knowingly, provide any information to a law enforcement officer, law enforcement agency or state investigative agency, to-wit: DEPUTY NICHOLAS DELANEY, during a misdemeanor investigation, to wit: FALSE IMPERSONATION , by informing the law enforcement officer or a state investigative agency, to-wit: BY INFORMING THE OFFICER HIS FRIEND WAS AUTHORIZED TO USE THE LIGHTS, knowing that such information was false and intending to influence, impeded or obstruct such officer's or agency's duty, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas.

COUNT 2

FALSE IMPERSONATION
K.S.A. 21-5917(a)
Class B Nonperson Misdemeanor

On or about the 27th of September, 2024, in the State of Kansas and County of Pawnee, CODY LANE KOELLE, did, then and there, unlawfully and knowingly represent oneself to be a public officer, public employee or a person licensed to practice or engage in any

information and belief:

## COUNT ONE

On or about the 14th day of April, 2025, the above named defendant, within Ford County Kansas, did then and there contrary to the statutes of the State of Kansas unlawfully and knowingly falsely report to a law enforcement agency, to wit: Officer Cisco Soto of the Dodge City Police Department that a particular person has committed a crime, knowing that such information is false and intending that the officer or agency shall act in reliance upon such information. INTERFERENCE WITH LAW ENFORCEMENT ~ FELONY is a severity level 8 non-person felony in violation of the K.S.A. 21-5904(a)(1)(A).

**<u>Defendant Knew Plaintiff Advocacy was necessary, Plaintiff saved S.J.K. life when he made the report to APS.</u>**

CLOSING STATEMENT

MR. AMDUR:  I want to finish the sentence that Mr. Green read from the last page of the report picking up from "but due to power imbalance/differential, coercion and safety reasons, the client is likely telling the truth about being repeatedly raped by her stepfather, Michael Allen Walker."

And that's really what this comes down to, Judge Mr. Walker has admitted to having impregnated his stepdaughter and Mr. Green is trying to sell that that's the extent of it

RICHARD E. ROBERTS, JR., CSR

Closing Statement by Mr. Amdur
November 3, 2025

and that there was no violence.

At this point he's not pleaded to having committed any violence. But this is not a situation between a 70-year-old and a 45-year-old all of whom have high levels or at least average levels of intelligence.

State's Exhibit 11 is very clear that she may have been able to have the capacity to consent, but she absolutely has an intellectual disability -- or it doesn't say "absolutely." It says -- it says she may have mild to moderate intellectual mental disabilities on Page 7 of 12 or Page 4. And then it says in conclusion the same thing further in.

Judge, this case -- these accusations did not begin once the Roden family got their hands on Shelby as Mr. Green is trying to portray. The problems -- the cracks started to show on March 29th, 2022 when Shelby ran to the neighbors to report an assault.

And State's Exhibits 1 through 8 show pictures of the broken strap -- the cut strap on the purse and the knife that was probably used to cut that purse as well as three photos of the goose egg and red marks on the neck.

Shelby's statement in State's Exhibit 9, which was admitted, all of that came in before she went to live with the Roden's before they got her on that long drive from Seguin to the greater Houston area.

23

77

Closing Statement by Mr. Amdur
November 3, 2025

And if the case was in fact pled down to deadly conduct, which it was -- it was technically dismissed as part of the plea deal. As the evidence showed, that was because Jaime filed an affidavit of non-prosecution.

She filed an affidavit of non-prosecution because ostensibly they were scared of the defendant. They were scared of the defendant because of what he did to her. He choked her. He threatened repeatedly, "I'm going to kill you. I'm going to kill you" while he choked her out.

The evidence says she passed out. She hit the floor and she came to as he was slamming her head on the floor, hence the goose egg. And deadly conduct -- or the Roden family's getting ahold of Shelby a year later cannot explain away the goose egg.

So while two years might be appropriate for a mildly egregious situation -- because any instance of this crime that I can imagine is egregious when you're having sex with your stepdaughter and there might be situations where two years is appropriate.

But when you have a man who, in March of 2022, has committed these -- this assaultive behavior to the extent that he's leaving these marks, he's threatening to kill her and her retarded daughter is scared enough to go try to find his gun, which is the gun the evidence said -- or it is a gun as the evidence said he was freaking out over a gun that he

RICHARD E. ROBERTS, JR., CSR

78

| Closing Statement by Mr. Amdur |
| November 3, 2025 |

had accused Jaime of stealing at like 5:00 in the morning or something like that. So of course they were scared of him.

And then their sexual relations started, some evidence would say, before then according to Shelby. Some of the evidence comes out suggesting that maybe it was after that.

But, again, Shelby is not reliable because she is saying different things. She doesn't have to be reliable. She's pregnant. She has a kid and the defendant has owned that that kid is biologically his. He's admitted that.

The evidence, State's 1 through 9, shows the damage he did. That's Shelby's statement and the photos in 1 through 8. In State's Exhibit 10 the police officer is writing down the observations he has. He makes a diagram of where the injuries were.

And that officer, Officer Wheeler -- or Deputy Wheeler is saying Shelby had him write down her statement because she couldn't write. So if there's conflicting evidence later that says she actually can read and write, that does cloud things in terms of Shelby's ability to understand or Shelby's ability to even consent.

It doesn't cloud anything about Shelby's fear of the defendant or Shelby's -- that Shelby has less than average intelligence and that Shelby was taken advantage of given the power imbalance.

RICHARD E. ROBERTS, JR., CSR

25

Court's Ruling
November 3, 2025

And if the Roden's pointed out to her "Shelby, this is wrong" -- or if it hadn't been the Rodens who pointed it out to her, we can ask ourselves: Why didn't Jaime or why didn't the defendant point that out to her? That just shows how much more egregious this offense was.

Given his tendency for violence and his threats to harm Jaime and the fact that he scared Shelby enough that she ran to the neighbors to call the police, all of that suggests this man was a threat to them.

They're scared of him and he should be put away for a long time for the egregious behavior he did. And for that reason we would ask for -- we would ask for the maximum, Judge.

The State's own later sentencing argument confirms the defect in Reamer's warrant theory. First Assistant County Attorney Jonathan Amdur argued that the accusations against Michael Walker did not begin when the Roden family became involved, but arose from earlier evidence of violence, fear, injury, power imbalance, and S.J.K.'s vulnerability. That matters because Reamer's warrant depended on making S.J.K.'s March 2025 statements appear Plaintiff-created. The State's own position shows otherwise: the concerns predated Plaintiff's alleged influence, and S.J.K.'s disability, fear, and inconsistent statements required careful investigation, not a first-degree felony warrant against the advocate who tried to have her heard.

## WARRANT OF ARREST

Guadalupe County Sheriff's Office                CASE #24-02887

STATE OF TEXAS                    §              WARRANT NO. 2402887EMR5

COUNTY OF GUADALUPE        §

WHEREAS, a complaint in oath and in writing has been made before me charging that on or about November 2024 to March 2025, James Luis Roden Jr., **Date of Birth:** ▮▮▮▮▮▮ did commit the offense of TAMPERING WITH A WITNESS FV CASE WITH F1 CASE, Statute Number 36.05(e-1)(2), CJIS Code 48990025, a 1st Degree Felony, contrary to the statutes, and against the peace and dignity of the State of Texas.

YOU ARE HEREBY COMMANDED to arrest **James Louis Roden JR., Date of Birth:** ▮▮▮▮▮▮ Guadalupe County Sheriff's Office and Case Number 24-02887. James Louis Roden JR. is height 6'00, ▮▮▮▮▮▮, with **Blue** eyes and **Brown** hair, and bring HIM before a magistrate in Guadalupe County, Texas to answer to said complaint.

HEREIN FAIL NOT, but due service and return make this Writ as the law directs.

GIVEN UNDER my hand and seal of this court the __7th__ day of __April__ A.D. 2025.

25th District Court Judge
William D. Old III
Guadalupe County, Texas

Court __25th Judicial District__

Bond: __$100,000.00__

OFFICER'S RETURN
Come to hand the_____ day of_____ A.D. 2025.
Executed this _____ day of_____ A.D. 2025

THE STATE OF TEXAS            §        DOCKET # _____

COUNTY OF GUADALUPE           §        COURT: _____

## COMPLAINT
### {Articles 15.04 & 15.05, Texas Code of Criminal Procedure}

BEFORE ME, THE UNDERSIGNED AUTHORITY PERSONALLY APPEARED THE AFFIANT HEREIN, A PEACE OFFICER UNDER THE LAWS OF TEXAS, WHO, BEING DULY SWORN, ON OATH MADE THE FOLLOWING STATEMENTS AND ACCUSATIONS:

My name is Elaine M. Reamer, the Affiant, and I am commissioned as a peace officer by the Guadalupe County Sheriff's Office, currently assigned to the Criminal Investigation Division as an Investigator. I currently have 16 years law enforcement experience, over 3000 hours of TCOLE training hours and hold a Master TCOLE License. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that

James Louis Roden JR, White Male, Date of Birth: ███████ 6'00 in height, ███████, Brown hair, Blue eyes, ████████████████████████████

on or about the November 2024 to March 2025, in **Guadalupe County, Texas**, did then and there commit the offense of **TAMPERING WITH A WITNESS FV CASE WITH F1 CASE** to wit, coerce Shelby Jame Koelle, who was a witness in an official proceeding, namely Aggravated Sexual Assault, by means of repeatedly contacting Shelby and advising her to tell the prosecution, sign a waiver, and testify in court that her mother did not know she was being sexually assaulted by her stepfather and that her mother is innocent, with intent to influence Shelby to testify falsely in the official proceeding. And it is further presented that the official proceeding involved family violence as defined by Section 71.004 of the Texas family Code, against the laws of the State. **CJIS 48990025**

My probable cause for said belief and accusation is as follows:

In March 2024, I began an investigation into the offense Prohibited Sexual Conduct, where Jamie Renee Walker and her husband Michael Walker were the suspects. Jamie is the victim's biological mother.

It was determined during the investigation; the victim had been diagnosed with an Intellectual Disability while in high school and received an SSI check for a disability. The victim became pregnant from Michael who was her stepfather at the time of the sexual assaults. During the investigation, the victim stated Jamie and Michael had been having a sexual relationship with her. I drafted warrants for the arrest of Jamie and Michael. The couple was arrested for their warrants on 4/9/2024.

1

Jamie and Michael has been indicted on several counts of Aggravated Sexual Assault.

The Defendant is Jamie's biological brother.

From 3/17/2025 to 4/5/2025, I have been receiving documentation from the Guadalupe County Attorney's Office that is from the Defendant. The Defendant has repeatedly been in contact with the victim over phone calls and Facetime. The Defendant has been able to coerce the victim into changing her statement where she stated Jamie and Michael had both been sexually assaulting her while she was in their care. The Defendant sent videos, transcripts and recorded phone calls, where he is contacting and/or attempting to contact prosectors with the victim also on the phone, advising the victim on what to say to include the Jamie did not know about the victim being repeatedly sexually assaulted by Michael. I saw a video that the Defendant and the victim are on Facetime, where the Defendant is telling the victim that no one had been in contact with her from the prosecutor's office.

During the investigation, the Defendnant has repeatedly stated he is aware the victim has an Intellectual Disability (IDD) and cannot properly take care of herself. The Defendant has repeatedly stated that the victim has a low IQ.

Based on the facts and circumstances established in this affidavit, I believe there is probable cause that James Louis Roden JR committed offenses against the laws of the State of Texas as described above.

*Elaine M. Weaver #121*

**Affiant**

SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT/COMPLAINANT ON THIS THE 7th DAY OF April 2025.

*L. Porter 128*

**PEACE OFFICER**
**GUADALUPE COUNTY, TEXAS**

The sworn affidavit and accompanying warrant were submitted by reliable electronic means.

**William D. Old III**
**25th Judicial District Judge**

2

## WARRANT OF ARREST

Guadalupe County Sheriff's Office                     CASE #24-02887

STATE OF TEXAS                    §              WARRANT NO. 2402887EMR6

COUNTY OF GUADALUPE           §

WHEREAS, a complaint in oath and in writing has been made before me charging that on or about November 2024 to March 2025, James Louis Roden SR, **Date of Birth:** ███████ did commit the offense of TAMPERING WITH A WITNESS FV CASE WITH F1 CASE, Statute Number 36.05(e-1)(2), CJIS Code 48990025, a 1st Degree Felony, contrary to the statutes, and against the peace and dignity of the State of Texas.

YOU ARE HEREBY COMMANDED to arrest **James Louis Roden SR, Date of Birth:** ███████, Guadalupe County Sheriff's Office and Case Number 24-02887. James Louis Roen SR. is height 6'01, ███████ with **Blue** eyes and **Brown** hair, and bring HIM before a magistrate in Guadalupe County, Texas to answer to said complaint.

HEREIN FAIL NOT, but due service and return make this Writ as the law directs.

GIVEN UNDER my hand and seal of this court the ___7th___ day of __April__ A.D. 2025.

25th District Court Judge
William D. Old III
Guadalupe County, Texas

Court __25th Judicial District__

Bond: ____100,000.00____

OFFICER'S RETURN
Come to hand the_____ day of _____ A.D. 2025.
Executed this _____ day of _____ A.D. 2025

THE STATE OF TEXAS                §      DOCKET # _____

                                  §

COUNTY OF GUADALUPE               §      COURT: _____

## COMPLAINT
### {Articles 15.04 & 15.05, Texas Code of Criminal Procedure}

BEFORE ME, THE UNDERSIGNED AUTHORITY PERSONALLY APPEARED THE AFFIANT HEREIN, A PEACE OFFICER UNDER THE LAWS OF TEXAS, WHO, BEING DULY SWORN, ON OATH MADE THE FOLLOWING STATEMENTS AND ACCUSATIONS:

My name is Elaine M. Reamer, the Affiant, and I am commissioned as a peace officer by the Guadalupe County Sheriff's Office, currently assigned to the Criminal Investigation Division as an Investigator. I currently have 16 years law enforcement experience, over 3000 hours of TCOLE training hours and hold a Master TCOLE License. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that

James Louis Roden SR, White Male, Date of Birth: ▓▓▓▓▓▓ 6'01 in height, ▓▓▓▓▓, Brown hair, Blue eyes, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

on or about the November 2024 to March 2025, in **Guadalupe County, Texas**, did then and there commit the offense of **TAMPERING WITH A WITNESS FV CASE WITH F1 CASE** to wit, coerce Cody Lane Koelle, who was a witness in an official proceeding, namely Aggravated Sexual Assault, by means of contacting Cody and telling him if he lost $40,000.00 he was going to start cracking down. He also told Cody he would come to where he lives and have his children removed if he did not help Jamie Renee Walker, with intent to influence Cody to testify falsely in the official proceeding. And it is further presented that the official proceeding involved family violence as defined by Section 71.004 of the Texas family Code, against the laws of the State. **CJIS 48990025**

My probable cause for said belief and accusation is as follows:

In March 2024, I began an investigation into the offense Prohibited Sexual Conduct, where Jamie Renee Walker and her husband Michael Walker were the suspects. Jamie is the victim's biological mother.

It was determined during the investigation; the victim had been diagnosed with an Intellectual Disability while in high school and received an SSI check for a disability. The victim became pregnant from Michael who was her stepfather at the time of the sexual assaults. During the investigation, the victim stated Jamie and Michael had been having a sexual relationship with her. I drafted warrants for the arrest of Jamie and Michael. The couple was arrested for their warrants on 4/9/2024.

1

Jamie and Michael has been indicted on several counts of Aggravated Sexual Assault.

The Defendant is Jamie's biological father.

From 3/17/2025, I have been receiving documentation from the Guadalupe County Attorney's Office that they had received from Michael Walker's attorneys. In the affidavit written by Cody, he stated the Defendant told him if he lost $40.000.00, "he going to come don cracking hard".

Incldued in the file, is an affidavit from Cody's wife, Andy. Andy stated Cody and her are in fear of Jamie's family. Andy advised they are afraid the family will retaliate if they did not cooperate with their demands and call Child Protective Services on the couple.

I was advised by Guadalupe County Attorney's Office that Cody had told them repeatedly that the Defendant stated he would call Child Protective Services on him and have his children removed if he did not side with Jamie and sign the affidavits that had been sent to them.

Based on the facts and circumstances established in this affidavit, I believe there is probable cause that James Louis Roden SR committed offenses against the laws of the State of Texas as described above.

_Dain M. Dean #121_

Affiant

SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT/COMPLAINANT ON THIS THE 7th DAY OF April 2025.

_L. Porter_

PEACE OFFICER
GUADALUPE COUNTY, TEXAS

The sworn affidavit and accompanying warrant were submitted by reliable electronic means.

William D. Old III
25th Judicial District Judge

2

THE STATE OF TEXAS      §   DOCKET # _____

COUNTY OF GUADALUPE      §   COURT: _____

## COMPLAENT
### }Articles 15.04 & 15.05, Texas Code of Criminal Procedure}

BEFORE ME, THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED THE AFFIANT HEREIN, A PEACE OFFICER UNDER THE LAWS OF TEXAS, WHO, BEING DULY SWORN, ON OATH MADE THE FOLLOWING STATEMENTS AND ACCUSATIONS:

My name is Elaine M. Reamer, the Affiant, and I am commissioned as a peace officer by the Guadalupe County Sheriff's Office, currently assigned to the Criminal Investigation Division as an Investigator. I currently have 16 years law enforcement experience, over 3000 hours of TCOLE training hours and hold a Master TCOLE License. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that

Jamie Renee Walker, White Female, Date of Birth: ▮▮▮▮▮▮▮▮ 5'10 in height, 150 pounds, Brown hair, Blue eyes, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

on or about the November 2024 to March 2025, in Guadalupe County, Texas, did then and there commit the offense of TAMPERING WITI-I **A WITNESS FV CASE WITH F1** CASE to wit, agree to confer a benefit, namely $8,000.00, to Cody Koelle, who was a prospective witness in an official proceeding, Aggravated Sexual Assault, with intent to influence Cody Koelle to testify falsely in the official proceeding, And it is further presented that the official proceeding involved *family* violence as defined by Section 71.004 of the Texas family Code, against the laws of the State. CJIS 48990025

My probable cause for said belief and accusation is as follows:

In March 2024, I began an investigation into the offense Prohibited Sexual Conduct, where the Defendant and her husband Michael Walker were the suspects. The Defendant is the victim's biological mother.

1

It was determined during the investigation, the victim had been diagnosed with an Intellectual Disability while in high school and received an *SSI* check for a disability. The victim became pregnant from Michael who was her stepfather at the time of the sexual assaults. During the investigation, the victim stated the Defendant and Michael had been having a sexual relationship with her. I drafted warrants for the arrest of the Defendant and Michael. The couple was arrested for their warrants on 4/9/2024.

The Defendant has been indicted on several counts of Aggravated Sexual Assault.

On 3/17/2025, I obtained from the Guadalupe County Attorney's Office affidavits from Cody and Andrea Koelle that they had given to Michael Walker's attorneys. In the affidavit, Cody states Jamie has been harassing him to sign an affidavit that they had drafted. Cody advised the victim was also sent an affidavit to sign. The victim does not know how to read. Cody stated he was receiving calls and texts repeatedly to sign the affidavits. Andrea also stated she is being harassed to sign the affidavits.

The Defendant was in custody at the Gudalupe County Jail from 4/9/2024 to 11/6/2024.

The Defendant called the victim on 9/15/2024 and tells her she needs to write a statement.

The Defendant tells the victim's brother Cody Koelle who the victim is living with in Kansas, that her attorney is going to be calling the victim and Cody to get statements.

The Defendant calls Cody again on 9/15/2024. The Defendant is asking the victim if Cody had helped her write the statement yet. The Defendant states she is going to see if"Grandma or Pawpaw° can go down there to help the victim with a statement. The Defendant later states she is going to have someone call her to write the statement. The victim is in obvious distress and trying to confide in the Defendant over her current living situation. The Defendant keeps rerouting the victim into talking about writing the statements. The Defendant ends the phone call stating she is going to talk to Cody to help the victim write her statement.

On 9/2d/2024, the Defendant calls Cody and asks him if he is still going to help her out. The Defendant tells Cody, the sooner she gek out of jail, the sooner she can help with the victim. The Defendant then states "And I got that $8000.00 for ya". The Defendant tells Cody that he needs to remember his mother helped him out for a long time and now it is time for him to help her.

On 10/28/2024, The Defendant called Cody again. The Defendant is wanting Cody to send a confifmation number for money that he was supposed to send the family. The

2

Defendant tells Cody how "Pawpaw" was going to leave him "somethings, some guns, his truck and a few other things".

Oa 2/4/2025, Cody filed a petition for a protective order against the Defendant. Cody states in the affidavit that the Defendant had texted him on 2/7/2025, telling him to get rid of the victim's old phone and to delete everything on it. The Defendant told Cody not to tell anyone that she had been talking to the victim. The Defendant said if Cody did not comply, she would find a way to have his children taken from him and she would kill herself If she went back to jail.

Based on the facts and circumstances established in this affidavit, I believe there is probable cause that Jamie Renee Walker committed offenses against the laws of the State of Texas as described above.

*Elain M. Reana #21*

SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT/COMPLAINANT ON THIS THE Sth DAY OF April 2025.

PEACE OFFICER
GUADALUPE COUNTY, TEXAS

The sworn affidavit and accompanying warrant were submitted by reliable electronic means.

*Jessica Crawford*
Jes
2nd 25th Judicial District Judge