# Exhibit D - Plaintiff ADA Protected and Documented Advocacy

1. Texas mandated reporting: abuse, neglect, exploitation, children, elderly persons, and disabled adults

**Disabled adult / elderly abuse, neglect, or exploitation: Texas Human Resources Code Chapter 48**

Texas Human Resources Code § 48.051 requires reporting when a person has cause to believe that an elderly person, a person with a disability, or an individual receiving certain provider services is in a state of abuse, neglect, or exploitation. The report must be made to DFPS or the appropriate state agency

**2. Federal ADA and Section 504: protected advocacy, retaliation, and interference**

**ADA Title V: 42 U.S.C. § 12203**

ADA Title V protects not only disabled persons, but **"any individual"** who opposes disability discrimination or aids another person in exercising ADA rights. Section 12203(b) makes it unlawful to coerce, intimidate, threaten, or interfere with any individual because that person exercised ADA rights or **"aided or encouraged any other individual"** in exercising ADA-protected rights.

ADA Title V and Section 504 protect individuals who aid, encourage, or assist disabled persons in exercising protected rights. Plaintiff's requests for simplified communication, support-person assistance, direct communication with S.J.K., disability-aware procedures, and meaningful access were protected advocacy. Treating those disability-access communications as evidence of witness tampering reverses the purpose of federal disability law.

3. Texas law and guidance on IDD rights, support, family advocacy, and communication

Texas HHS rights handbook: advocate means family or friend helping with decisions

Texas disability policy recognizes that people with IDD retain legal rights, may need help communicating and making decisions, and may receive support from trusted advocates, including family members or friends. The absence of a guardian does not erase the need for accommodations or make advocacy suspicious. It means officials should support the person's meaningful participation, not criminalize the advocate who helps her speak.



# Electronically Certified Court Record

# (Cover Page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. At the last page of this document, you will find the digital signature bearing the identity and authority of the District Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

## DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Guadalupe County District Clerk |
| **District Clerk:** | The Honorable Linda Balk |
| **Date Issued:** | 12/9/2025 8:40:38 AM |
| **Unique Reference Number:** | CAA-BAA-EIBIHCAA-IEABIAG-BDFFIJD-B |
| **Case Number:** | 24-1775-CR-B |
| **Case Document:** | Request:ADA Accommodation Request for Shelby Koelle |
| **Requesting Party Code:** | 100 |

## HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The last page of this document contains a digital signature indicating the certifier as the Guadalupe County District Clerk. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://verify.clerkecertify.com/VerifyImage to learn more about validating this certified copy.



Unique Code : CAA-BAA-EIBIHCAA-IEABIAG-BDFFIJD-B Page 1 of 3

**CASE NO.: 24-1775-CR-B**

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **COUNTY OF GUADALUPE** |
| **VS** | § | **274th JUDICIAL DISTRICT COURT** |
| **JAMIE WALKER** | § | **GUADALUPE COUNTY, TEXAS** |

# ADA Accommodation Request for Shelby Koelle

**March 23rd, 2025**

**Honorable Gary Steel, Court Coordinator, Guadalupe County Attorney's Office**
274th District Court



Seguin, TX

**ADA Accommodation Request for Shelby Koelle – Case No. 24-1775-CR-B**
**(State of Texas vs. Jamie Renee Walker 274th District Court Guadalupe County Texas)**

Dear **Honorable Gary Steel, Court Coordinator, Guadalupe County Attorney's Office**

I am writing on behalf of **Shelby Jane Koelle,** a victim and potential witness in the above-captioned case, to formally request **ADA accommodations** for her participation in the upcoming proceedings. Shelby suffers from a **severe intellectual disability (IDD)** with an **IQ of 55** and is currently receiving **Social Security Disability** benefits for her condition. These accommodations are necessary to ensure Shelby's full participation in the judicial process and to protect her rights under the **Americans with Disabilities Act (ADA),** the **Texas Constitution,** and other applicable laws.

### Shelby's Disability and Need for Accommodations

Due to her **intellectual disability,** Shelby has **significant difficulty** with reading, writing, and understanding complex legal language. She **cannot read or write** and faces challenges articulating her responses in a legal context. Given these limitations, it is critical to provide Shelby with accommodations that will allow her to testify accurately and effectively. Without these accommodations, her ability to meaningfully participate in the case will be severely hindered.

### Request for Accommodations

FILED
1:34 P M

MAR 2 5 2025

*Linda Balk*
LINDA BALK
Clerk, Dist. Court, Guadalupe Co. Tx.

CERTIFIED TRUE AND CORRECT COPY    GUADALUPE COUNTY, TEXAS

Unique Code : CAA-BAA-EIBIHCAA-IEABIAG-BDFFIJD-B Page 2 of 3

I respectfully request the following accommodations to ensure that Shelby's rights are upheld and that she can fully participate in the legal process:

1. **Court-Appointed Support Person**: We request that a **court-appointed support person** be provided to assist Shelby during questioning and testimony. This person should have experience working with individuals with intellectual disabilities and will help **ensure Shelby understands the questions asked** and **articulate her responses clearly**.

2. **Simplification of Legal Terms**: We request that any legal questions or documents presented to Shelby be **simplified** and explained in clear, plain language that is appropriate for her cognitive abilities.

3. **Additional Time for Response:** Given Shelby's processing time for understanding and responding to questions, we request that she be **given additional time** to respond to questions or statements made by the Court, attorneys, or other witnesses.

4. **Appropriate Communication Methods**: Since Shelby is unable to read or write, we request that any **written communication** from the **County Attorney's Office** or any legal entity be **explained orally** or in a way that Shelby can understand. We also request that **text messages or written correspondence** be avoided in favor of **verbal communication** or in-person visits, as Shelby cannot read text messages and would require someone else to read and explain them.

5. **Breaks as Needed**: We request that Shelby be allowed to take breaks during her testimony if needed to ensure she remains comfortable and able to focus.

6. **Assistance with Court Documents**: Since Shelby is unable to read or write, we request that she be **provided with assistance** in understanding and filling out any necessary documents related to her testimony, and that any correspondence from the **County Attorney's Office** or other legal entities be sent in a format that Shelby can easily comprehend (e.g., with assistance from her support person).

**Instructions for the Guadalupe County Attorney's Office**

Additionally, it is imperative that the **Guadalupe County Attorney's Office**, including **Victim Advocate Ileen Rangel**, take the following actions to ensure proper communication and involvement of Shelby in this case:

1. **Regular Contact:** The **County Attorney's Office** should establish **regular and ongoing contact** with **Shelby Koelle** using accessible methods such as telephone

CERTIFIED TRUE AND CORRECT COPY    GUADALUPE COUNTY, TEXAS

Unique Code : CAA-BAA-EIBIHCAA-IEABIAG-BDFFIJD-B Page 3 of 3

calls or in-person visits. It is crucial that the County Attorney's Office **make sure Shelby fully understands** the case, her rights, and the proceedings.

2. **Use of Appropriate Communication Methods**: All communication with **Shelby Koelle** should **consider her disability** by using simplified language, making sure she understands the nature of the proceedings, and offering **verbal explanations** of any written correspondence or legal terminology.

3. **Assist with Subpoena and Legal Process**: The County Attorney's Office should **assist Shelby in understanding any subpoenas or legal notices**, ensuring that she is fully informed of her role and responsibilities in the case.

4. **Clarification of Shelby's Rights as a Victim**: The County Attorney's Office must ensure that **Shelby's rights as a victim** under the **Victims' Rights Amendment** in the **Texas Constitution** (Article 1, Section 30) are respected, which include her **right to be informed, right to participate** in court proceedings, and **right to be heard**.

## Conclusion

Shelby has been an essential part of this case as the victim and potential witness, and it is crucial that she be allowed to fully participate in the proceedings. We respectfully request that these **ADA accommodations** be granted to ensure that **Shelby's testimony** is heard, understood, and properly recorded in a manner that protects her rights and promotes fairness in the judicial process.

We look forward to the Court's review of this request and hope that the necessary accommodation will be made to ensure Shelby's participation and effective communication during this case.

Thank you for your attention to this important matter. Should the Court require any additional information or documentation, we are happy to provide it.

Sincerely,
James Louis Roden Jr.
Uncle and Advocate to Shelby Jane Koelle
Phone: ▮▮▮▮▮▮▮▮

Shelby Jane Koelle
▮▮▮▮▮▮▮▮
▮▮▮▮  Kansas  ▮▮
▮▮▮▮▮▮

I, Linda Balk, Clerk of the District Courts, in Guadalupe County, Texas, certify this copy is true and correct as FILED & RECORDED in the Official Court Records of District Court.

24-1775-CR-B, 12/9/2025 8:40:40 AM

RECORDED 12/9/2025 8:40:40 AM
THE HONORABLE LINDA BALK
GUADALUPE COUNTY DISTRICT CLERK,
THE STATE OF TEXAS



# Electronically Certified Court Record

# (Cover Page)

This cover page is for informational purposes only and is not a requirement when presenting the **Electronic Certified Document**. At the last page of this document, you will find the digital signature bearing the identity and authority of the District Clerk. On the left side of each page is a unique code identifying the electronic certification for this document.

## DOCUMENT INFORMATION

| | |
|---|---|
| **Agency Name:** | Guadalupe County District Clerk |
| **District Clerk:** | The Honorable Linda Balk |
| **Date Issued:** | 12/9/2025 8:40:28 AM |
| **Unique Reference Number:** | CAA-BAA-EIBIHCAA-IDJJEHJ-BDFFIJC-F |
| **Case Number:** | 24-1775-CR-B |
| **Case Document:** | Correspondence:Letter to the Judge Regarding Subpoena Issues and Conduct of Guadalupe County Attorne |
| **Requesting Party Code:** | 100 |

## HOW TO VERIFY THIS DOCUMENT

This electronically certified Court Record contains a unique electronic reference number for identification printed on each page. This document is delivered in PDF format and contains a digital signature identifying the certifier and a tamper proof seal indicating whether this document has been tampered with. The last page of this document contains a digital signature indicating the certifier as the Guadalupe County District Clerk. Open this document using Adobe Reader software to verify the digital signature of the author. Visit https://verify.clerkecertify.com/VerifyImage to learn more about validating this certified copy.



Electronically Filed
3/21/2025 9:02 PM
Linda Balk
Guadalupe County District Clerk
Denise Stewart

**James Louis Roden Jr.** ███████████

**Dolores Jane Roden** ███████████

**James Louis Roden Sr.** ███████████

**Anna Mares Roden –** ███████████

**Kimberly Kennedy** ███████████

March 21st, 2025

**Judge Gary Steel**
**274th District Court**
**Guadalupe County Courthouse**
████████████
**Seguin, TX** ██████

**Re: Cause No. 24-1775-CR-B – Jamie Renee Walker**
**Concerns Regarding Subpoenas, Retaliation, and Subversion of the Legal Process**

Dear Judge Steel,

I am writing to express serious concerns regarding the recent **subpoenas** issued to members of my family in relation to the **bond hearing** for **Jamie Renee Walker** (Cause No. 24-1775-CR-B). These subpoenas were issued only after I intervened to assist the **Guadalupe County Attorney's Office** in obtaining **Shelby Jane Koelle's first-hand testimony**, which is crucial to both the **indictment** and the **bond hearing**. I believe the **Guadalupe County Attorney's Office** retaliated against me and my family for advocating on **Shelby's behalf**, using the **subpoenas** as an intimidation tactic to silence our efforts to ensure that **Shelby's testimony** is heard in the proceedings.

**Family Members Affected by Retaliation**

The **subpoenas** were issued to the following family members, none of whom have **first-hand knowledge** of the facts relevant to the **bond hearing**:

- **My mother, Dolores Jane Roden**, a **stroke survivor** of **83 years old** with **limited mobility**.

- **My father, James Louis Roden Sr.**, a **77-year-old Army veteran** suffering from **severe neuropathy**, which **significantly limits his mobility**.

- **My sister, Kimberly Kennedy**, who lives in **South Carolina** and has a **limited income**.

CERTIFIED TRUE AND CORRECT COPY     GUADALUPE COUNTY, TEXAS

Unique Code : CAA-BAA-EIBIHCAA-IDJEHJ-BDFFIJC-F Page 1 of 6

Unique Code : CAA-BAA-EIBIHCAA-IDJEHJ-BDFFIJC-F Page 2 of 6

- **My wife, Anna Mares Roden**, who has **no first-hand knowledge** of the **bond hearing**.

- **Myself, James Louis Roden Jr.**, a **middle school teacher** with **two small children** age ▮ and ▮

Despite these family members being subpoenaed without any **prior communication** or attempt to verify their **relevance** to the **bond hearing**, the **Guadalupe County Attorney's Office** made no effort to **contact Shelby directly** until **I intervened** and provided the **County Attorney's Office** with **Shelby's contact information**. Prior to my intervention, they did not know **where Shelby lived**, **did not have her phone number**, and had made **no attempt** to reach out to her. It was only **after I provided this contact information** that the **Guadalupe County Attorney's Office** finally made contact with **Shelby**.

**Failure to Investigate Facts Before Filing the Motion**

The **motion to increase bond** was filed without verifying the **facts** surrounding the **allegations** within it. Specifically, **Shelby's name** was used in the motion, suggesting that **Jamie Walker** had violated bond conditions by **contacting the complaining witness**, yet the **Guadalupe County Attorney's Office** never attempted to **contact Shelby directly** to verify these claims. This failure to **verify the facts** before filing the motion raises serious concerns about the **due diligence** of the **Guadalupe County Attorney's Office**.

Instead of ensuring that **Shelby's testimony**, which could **exonerate Jamie**, was properly evaluated and considered before filing the motion, the **Guadalupe County Attorney's Office** proceeded with filing it, without even confirming its accuracy. This oversight undermines the **integrity** of the process and seems to further highlight the **lack of commitment** to a fair and just outcome.

**Retaliatory Nature of the Subpoenas**

After I provided **Shelby's contact information**, the **Guadalupe County Attorney's Office** retaliated by issuing **subpoenas** to my family members, knowing that none of us had **first-hand knowledge** of the facts relevant to the **bond hearing**. The **subpoenas** were issued without any **prior consultation**, **investigation**, or understanding of whether our testimony would be relevant or helpful to the **bond hearing**.

Instead of thanking me for providing the **contact information** that enabled them to connect with **Shelby**, the **County Attorney's Office** chose to issue **subpoenas** with threats of **jail time** and **$500 fines**, using the subpoena process as a **punitive measure** to intimidate my family. These **subpoenas** were not issued in good faith to gather **relevant testimony**, but rather as a form of **retaliation** for our **advocacy on behalf of Shelby**. This

Unique Code : CAA-BAA-EIBIHCAA-IDJEHJ-BDFFIJC-F Page 3 of 6

constitutes an **abuse of the subpoena power,** which is meant to be used for legitimate purposes, not to **harass** or **intimidate** those involved in the case.

## Brady Evidence and Retaliation

As I've previously stated, **Shelby's testimony** is **exculpatory evidence** that is **critical** to both the **bond hearing** and the **indictment**. According to **Brady v. Maryland (1963),** the **prosecution must disclose exculpatory evidence** that could potentially **exonerate the defendant**. In this case, the **Guadalupe County Attorney's Office** has failed to acknowledge the importance of **Shelby's testimony** and its **exculpatory value**. **Shelby's testimony** could potentially **dispel any allegations** against **Jamie,** yet instead of thoroughly investigating it, the **County Attorney's Office** chose to **punish** my family for advocating for the **truth** to be heard. This raises serious concerns about the **retaliatory** and **intimidatory nature** of their actions.

## Legal Implications of Retaliation and Abuse of Subpoena Power

The actions taken by the **Guadalupe County Attorney's Office** raise significant **legal and ethical concerns**. The **misuse of subpoena power, failure to investigate** relevant facts, and **retaliatory tactics** employed in this case violate established **legal principles:**

1. **Misuse of Subpoena Power:**
   The **U.S. Supreme Court** in **U.S. v. Fisk (1869)** and **U.S. v. Nixon (1974)** emphasized that subpoenas must be issued for **legitimate purposes** and must be used in good faith to gather **material evidence**. In this case, the subpoenas were issued with no reasonable basis and serve only to **harass** and **intimidate** witnesses.

2. **Failure to Investigate:**
   In **State v. Simpson, 318 S.W.3d 74, 85 (Tex. App. – Houston [14th Dist.] 2010),** the court emphasized that subpoenas should only be issued if they are **reasonably necessary** to gather **relevant testimony**. The **failure** to contact **Shelby directly** to verify her **exculpatory testimony** before filing the **motion to increase bond** constitutes a failure to exercise **due diligence**.

3. **Ethical Violations:**
   **Texas Disciplinary Rules of Professional Conduct, Rule 3.04,** prohibits attorneys from using the **subpoena power** to **burden, harass,** or **intimidate** witnesses. The actions of the **Guadalupe County Attorney's Office,** by issuing subpoenas without **prior consultation** or consideration of their **relevance,** appear to violate this rule.

4. **Retaliation Against Advocacy:**
   **Retaliation** for advocating for **Shelby's testimony** and **ensuring her rights** are

CERTIFIED TRUE AND CORRECT COPY          GUADALUPE COUNTY, TEXAS

heard is a violation of **due process** and the right to a **fair trial**. As established in **Brady v. Maryland (1963)**, the **prosecution is obligated** to disclose **exculpatory evidence**, and the **failure to investigate or verify Shelby's testimony** constitutes a **violation** of **due process**.

**Request for Action**

I respectfully request that this Court review the **subpoenas** issued to my family and the **actions taken by the Guadalupe County Attorney's Office**, as these actions seem intended not to gather **relevant testimony** but to **punish** and **intimidate** those who have advocated for **Shelby's testimony** to be heard. Please consider taking appropriate action to ensure that **Shelby Jane Koelle's testimony** is **given proper weight** in these proceedings. **Shelby's testimony** is **critical** to ensuring **truth** and **justice** in this case, and I believe it should be heard at the **bond hearing** to ensure that all facts are properly considered.

Thank you for your time and attention to this matter.

Sincerely,

**James Louis Roden Jr.**

*James L. Roden Jr.*

League City TX

Date: *March 21st, 2025*

**Disclaimer:** I am not an attorney, nor am I offering legal advice. I am a concerned family member and a **citizen of the United States and Texas**, seeking to ensure that the **truth** and **justice** are served in this case. My intention is solely to provide information that may assist in bringing the **truth** to light and ensuring that **Shelby Jane Koelle's voice** is heard in accordance with her **constitutional rights**. I am not acting in any legal capacity and do not intend to interfere with the legal process or represent any party in a legal manner.

Unique Code : CAA-BAA-EIBIHCAA-IDJEHJ-BDFFIJC-F Page 4 of 6

CERTIFIED TRUE AND CORRECT COPY    GUADALUPE COUNTY, TEXAS

Unique Code : CAA-BAA-EIBIHCAA-IDJEHJ-BDFFIJC-F Page 5 of 6

**Key Legal Precedents and Citations:**

1. **U.S. v. Fisk (1869):** Subpoenas must be issued for **legitimate purposes**, such as obtaining relevant and material testimony.

2. **U.S. v. Nixon (1974):** Subpoenas must serve the purpose of obtaining **evidence** that is **material** and **relevant** to the case.

3. **Brady v. Maryland (1963): Exculpatory evidence** (like **Shelby's testimony**) must be disclosed, and failure to do so may violate **due process**.

4. **Texas Rules of Criminal Procedure - Rule 17:** Subpoenas must be issued for **relevant** testimony related to the case.

5. **Texas Disciplinary Rules of Professional Conduct - Rule 3.04:** A lawyer must not use subpoenas to **harass**, **burden**, or **intimidate** witnesses.

6. **ABA Model Rules of Professional Conduct - Rule 3.4:** A lawyer must not use subpoenas for **improper purposes**, including retaliation against those advocating for the truth.

CERTIFIED TRUE AND CORRECT COPY    GUADALUPE COUNTY, TEXAS

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 98766008
Filing Code Description: Letters
Filing Description: Letter to the Judge Regarding Subpoena Issues and Conduct of Guadalupe County Attorney's Office
Status as of 3/24/2025 7:53 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Guadalupe County DA Jessica Johnson, ADA | | jessica.johnson | 3/21/2025 9:02:15 PM | SENT |

Unique Code : CAA-BAA-EIBIHCAA-IDJEHJ-BDFFIJC-F Page 6 of 6

Case 5:26-cv-00054-XR   Document 14-6   Filed 05/04/26   Page 13 of 51

 **Gmail**

**Paladin R** < ███████████████████ >

# Important Information Regarding the Case of Jamie Renee Walker (Case No. 24-1775-CR-B)

1 message

**Paladin R** <████████████████████>       Wed, Mar 19, 2025 at 5:06 AM
To: Jessica Johnson <jessica.johnson@████████████████>
Cc: Kelly Pittl <kelly████████████

**Re: Important Information Regarding the Case of Jamie Renee Walker (Case No. 24-1775-CR-B)**

Dear Ms. Johnson and Kelly Pittl,

I am writing to you as a **concerned family member** of **Jamie Renee Walker** and Shelby Jane Koelle as someone who values truth, justice, and fairness in our legal system. My only intent in reaching out is to ensure that **all relevant and truthful information** is made available to those involved in this case. I firmly believe that a fair and just judicial process benefits everyone, and I hope this information will be taken into consideration.

I want to bring to your attention that **Shelby Jane Koelle, the alleged victim in this case, has signed a sworn affidavit stating that Jamie is innocent**. She has also provided **a video statement affirming this**, and she has been consistent in maintaining that **Michael Allen Walker is solely responsible for the crime**. Given the significance of this information, I felt it was my duty to make sure you were aware of it.

Additionally, I have phone recordings in which **Cody Koelle clearly states that he has no firsthand knowledge of Jamie ever contacting Shelby while she has been on bond**. There are concerns that there may be **an effort to falsely accuse Jamie of violating bond conditions**, and I wanted to ensure that all parties involved are fully informed before any further action is taken on such allegations.

**Shelby has personally requested to testify on Jamie's behalf**, as she believes it is important that the truth be heard in court. To support her in doing so, I will be **accompanying her and providing transportation to each pretrial hearing** to ensure that she is able to testify. Given the significance of her testimony, I respectfully ask that **Shelby be given the opportunity to speak under oath** and that her statements be properly considered as part of this case.

I understand that these matters are complex, and I have great respect for the role of your office in pursuing justice. My hope is that **this information is considered carefully, so that all parties have access to the full truth** and that the judicial process is as fair and transparent as possible.

I appreciate your time and consideration, and I am available if you need any further clarification. I trust that your office will do what is right in ensuring that all evidence is properly reviewed and considered in pursuit of justice.

Sincerely,
James Louis Roden Jr. and Family
Phone ██████████████
Email: ████████████████████

[Cody Koelle Phone Call March 18th, 2025](#)

[Shelby Video Testimony of Jamie Walker Innocence](#)

[Shelby Video Testimony of Jamie Walker Bond Violation Innocence.](#)

Going forward the following people will be available for testimony and will be at all future hearings to testify under oath.

James Louis Roden Jr. - Uncle to Shelby Jane Koelle (School Teacher 20+ years experience)
James Louis Roden Sr - Grandfather to Shelby Jane Koelle (Retired Master Sergeant)
Dolores Jane Roden - Grandmother to Shelby Jane Koelle (Retired school teacher)
Kimberly Kennedy - Aunt to Shelby Jane Koelle (Minster at Morning Star Church)
Anna Mares Roden - Aunt to Shelby Jane Koelle (School Counselor 20+ years experience)
Shelby Jane Koelle - Victim in this case

Everyone can testify and give first hand accounts of the abuse Jamie Renee Walker suffered at the hands of Michael Allen Walker and Shelby Jane Koelle can give first hand testimony as to the facts of the case as it relates to Jamie Renee Walker and Michael Allen Walker.

---

**6 attachments**



**Shelby Affidavit Picture March 2025.JPG**
848K

**Exhibit B1 Transcript Shelby Testimony Video.pdf**
45K

**Exhibit B2 Transcript of Shelby Testimony Bond Hearing.pdf**
45K

**Exhibit D Motion to Oppose James Sr Affidavit.pdf**
619K

**Exhibit E Motion to Oppose Dolores Jane Roden Affidavit.pdf**
500K

**Exhibit F Motion to Oppose James Jr Affidavit.pdf**
809K

 **Gmail**

**Paladin R** <_____>

---

## Brady Material

---

**Paladin R** <_____>                                  Fri, Mar 21, 2025 at 3:59 PM
To: Jessica Johnson <jessica.johnson_____>
Cc: Ileen Rangel <ileen.rangel_____>, Maritza Stewart <maritza.stewar_____v>, Jonathan Amdur
<jonathan.amdur_____>, Kelly Pittl <kell_____>

### Subject: Clarification of Brady Material, Subpoenas, and Family Testimony

Dear Jessica Johnson,

I am writing to clarify the **Brady material** in the case of **Jamie Renee Walker** and to express serious concerns regarding the **subpoenas** issued to my family members in relation to the **bond hearing**. I am deeply concerned that the **subpoenas** appear to be issued **not as an effort to uncover the truth**, but rather as an act of **punishment** and **retaliation** against the family for advocating for **Shelby** and seeking **justice**. My primary goal is to ensure that **Shelby Jane Koelle's testimony** is properly considered and that **justice** is served.

### Legal Concerns Regarding Subpoenas

It has come to my attention that the **subpoenas** issued to my family members appear to be **punitive** in nature, and I am concerned that they may be in **violation of legal precedent** regarding **proper subpoena usage**. A subpoena should be used to ensure the **presence of witnesses** who have **relevant testimony** for the case, but **not as a coercive or intimidating tool**.

Legal precedent and **ethical standards** set forth by the **American Bar Association (ABA)** and in **case law** provide guidance on the **appropriate use of subpoenas**. A subpoena should **not be used to harass, burden, or intimidate** potential witnesses. In **U.S. v. Fisk (1869)**, the court ruled that subpoenas must have a **substantial purpose** and cannot be issued **solely for harassment**. Further, the **ABA Model Rules** (Rule 3.4) state that a lawyer should not **use means that have no substantial purpose other than to delay or burden a person**.

The **subpoenas issued** to my family without any prior communication about their **role** or **relevance** to the **bond hearing** suggests **a misuse of the subpoena power**. Instead of contacting the family to understand **what they know** and whether their **testimony is relevant**, the **DA's office has issued subpoenas** with the **threat of jail time** and **$500 fines**—this is both **coercive** and **punitive**. The **lack of prior communication** and the **threatening nature** of the subpoenas seem to suggest **intent to intimidate** rather than a genuine effort to **gather truth**.

### The Role of the Family and Shelby's Testimony

It is also troubling that the **DA's office** is aware that **Shelby's statements** are the key **Brady material** in this case, and yet they have issued subpoenas for the **bond hearing** without ever reaching out to the family to discuss their relevance or what they can contribute. The family members are **willing to testify** about what they have **heard Shelby say**—specifically, that **Jamie is innocent** and that **Shelby has stated this** repeatedly. This is **exculpatory evidence** that supports Jamie's innocence, yet it has been handled in a way that makes it appear as if the **subpoenas** were issued out of **frustration** with the family's willingness to assist in uncovering the truth.

The **bond hearing** typically focuses on whether the defendant should be released on bail, not on the **merits of the charges**. It is **reasonable to assume** that **Shelby's testimony**, which primarily

speaks to **Jamie's innocence** and **Shelby's victimization**, does not directly relate to the **bond hearing**. As such, the **subpoenas** appear to be an attempt to **punish** the family for their advocacy for **Shelby** rather than an attempt to **gather relevant evidence**.

### Legal Implications of the DA's Actions

The legal implications of **misusing subpoenas** for **punitive purposes** can be significant. The **misuse of subpoena power** may violate **due process** and undermine **fairness** in the legal process. If subpoenas are issued without proper **investigation** and **understanding of the relevance of the testimony**, it can be seen as an **abuse of legal process**, which can lead to **court intervention**. In the case of **U.S. v. Nixon (1974)**, the **Supreme Court** ruled that subpoenas should serve the purpose of **obtaining evidence** that is **material** and **relevant** to the case. If the prosecution issues subpoenas without first investigating the **necessity** of the testimony, this could be seen as **an improper use** of the **subpoena power**.

### Failure to Communicate with Family Members

In addition to the **legal concerns** around the **subpoenas**, it is troubling that the **DA's office** has failed to **communicate directly with the family** before issuing the subpoenas. **My father** reached out to **Ileen Rangel** and was told she could not explain **the nature** of his subpoena due to **legal reasons** he did not fully understand. **No family members** were **consulted** about their knowledge or what they could contribute to the case, and yet the **subpoenas** were still issued, complete with threats of **jail time** and **$500 fines**.

This lack of **consultation** before issuing subpoenas is **irregular** and potentially **improper**, given that the **family is willing to help**. Rather than issuing subpoenas, the **DA's office** could have **reached out to the family** to discuss their potential role and the **relevance** of their testimony. This **failure to communicate** not only undermines the **prosecutorial process**, but it also raises the **possibility of misconduct** in how the **subpoenas** were used.

### Financial and Logistical Burden

I want to be transparent about the financial burden this situation is placing on me. As a teacher with two children aged 10 and 12, I simply do not have the funds to fly to Kansas, pick up Shelby, and bring her back to Seguin for the bond hearing. The costs associated with flights, hotels, daycare, and missing work make this an undue burden that I cannot afford at this time.

However, I fully understand the importance of Shelby's testimony to this case. She is the central witness in the bond hearing, and I strongly urge you to find a way to help facilitate her attendance at the hearing so she can testify first-hand about what actually happened. Given that the **County Attorney's office is willing to provide air travel, lodging, and transportation for Cody Koelle's testimony**, it would only seem logical and equitable to extend the same assistance to **Shelby**, considering she is the **star witness for the State** and can provide critical **truth** and **justice** to this case. As of now, I will not be able to provide such services for Shelby at this time, and I hope that the same consideration can be given to her as was provided to Cody.

### Family Testimony and Relevance

The only testimony I can provide at the bond hearing is that I **heard Shelby say exactly what she will likely testify to under oath**, which feels **redundant and unnecessary**. In light of this, I urge you to **reach out to each family member you intend to subpoena** and have a conversation about what they know and how it **relates to the case**. If their testimony does not add new information beyond what **Shelby** can provide, it may not be necessary to bring them in person. I am also concerned that issuing the subpoenas via email, rather than through traditional methods, may result in the recipients not being aware of them if they are inadvertently filtered into their spam

folders. Reaching out to the individuals and having a conversation with them prior to the formal delivery of the subpoenas would seem to be the most professional and reasonable approach.

## A Collaborative Approach

My family and I are **willing to help**, but we need to ensure that we are **working together** in a **cooperative, professional, and fair manner**. I want to make sure that **Shelby's testimony** is central to the process, as she is the **actual victim** and has the **first-hand knowledge** that could significantly impact the case. I am committed to helping **find the truth** and **justice**, and I believe that ensuring **Shelby's voice** is heard is a critical part of this.

Please feel free to reach out to me if you'd like to discuss this further or arrange a way forward that allows for **Shelby's testimony** to be included in the **bond hearing**. I am hopeful that we can work together in a way that upholds **justice** for **Shelby**, and I look forward to collaborating with you in a **professional** and **respectful** manner.

Thank you for your time and attention to this matter.

Sincerely,
**James Louis Roden Jr.**

**Disclaimer**: I am not an attorney, nor am I offering legal advice. I am a concerned family member and a **citizen of the United States and Texas**, seeking to ensure that the **truth** and **justice** are served in this case. My intention is solely to provide information that may assist in bringing the **truth** to light and ensuring that **Shelby Jane Koelle's voice** is heard in accordance with her **constitutional rights**. I am not acting in any legal capacity and do not intend to interfere with the legal process or represent any party in a legal manner.

[Quoted text hidden]



**Paladin R** ███████████████████████

# ADA Accommodation Request Shelby Jane Koelle

2 messages

---

**Paladin R** ██████████████████████                              Sun, Mar 23, 2025 at 9:02 PM
To: kimberly.mcmahon ███████████████ , linda.balk ████████████
Cc: Jessica Johnson <jessica.johnson ████████ >, Jonathan Amdur <jonathan.amdur ███████████ >, Maritza
Stewart <maritza.stewart ████████████ >, dwillborn@ ██████████ , Kelly Pittl <kelly@ █████████ >

See Attached

> 📄 **ADA Request for Shelby Jane Koelle.docx**
> 19K

---

**Paladin R** ██████████████████████                              Sun, Mar 23, 2025 at 9:03 PM
To: kimberly.mcmahon ███████████████ , linda.balk ████████████
Cc: Jessica Johnson <jessica.johnson ████████████ , Jonathan Amdur <jonathan.amdu ██████████ , Maritza
Stewart <maritza.stewart ██████████ >, dwillborn ████████████ s, Kelly Pittl <kelly ████████

PDF version of ADA Accommodation Request Shelby Jane Koelle

See attached

On Sun, Mar 23, 2025 at 9:02 PM Paladin R <j █████████████████  wrote:
> See Attached

> 📄 **ADA Request for Shelb** ████████████
> 54K

**M** Gmail                                       **Paladin R <​                              >**

## RE: **EXTERNAL** Re: Brady Material

**Paladin R <​                      >**                          Tue, Mar 25, 2025 at 3:54 AM
To: Jessica Johnson <jessica.johnson​                      ​>
Cc: Ileen Rangel <ileen.rangel                      , Maritza Stewart <maritza.stewar                      , Jonathan Amdur <jonathan.amdur                      , Kelly Pittl <kelly                      , dwillborn                      

**Subject: Concerns Regarding Subpoena Power and Shelby's Accommodations**

Dear Ms. Johnson,

Thank you for your response and for addressing some of my concerns. However, I feel it is necessary to provide additional context regarding the subpoena and how it was issued, as well as the ongoing issues with Shelby's accommodations.

First, regarding the subpoenas issued to my family, it is important to clarify that when I mentioned my family being willing to testify, it was in reference to their knowledge of the individuals involved in this case: Jamie Renee Walker, Michael Allen Walker, and Shelby Jane Koelle. My family has known Jamie and Shelby their entire lives and is well aware of the challenges they face, including the disabilities they suffer from, which is important context for understanding the dynamics at play in this case. My personal knowledge in helping Jamie navigate the legal system as a victim of domestic violence, particularly by Michael Allen Walker, is also highly relevant (Please refer to my "first hand knowledge email").

I have had direct dealings with Michael, and when he discovered that I had been in communication with the County Attorney's Office regarding my concerns about his violent tendencies, particularly in relation to his **Aggravated Assault with a Deadly Weapon** charge against Jamie in March of 2022, he reacted with threats. This led me to contact the County Attorney's Office to inquire about why my name had been disclosed to Michael, especially considering the protective order in place. It is critical that the prosecution has all the context, especially from immediate family members who understand the parties involved, their histories, and the background of the case. I believe this is standard practice in any thorough investigation of this nature.

It is my belief that the reason the County Attorney's Office knows so little about Jamie and Shelby's disabilities is because Officer Reaner communicated to Shelby's family that she has a policy of only speaking with the victim, not family members. While I understand the need to prioritize the victim's voice, this narrow approach to the investigation ultimately harms, rather than helps, the search for the truth. By excluding family members from the conversation—who possess critical context and insight into the lives of Jamie and Shelby—important details about their disabilities and the history of the case are overlooked. This policy, in practice, severely limits the scope of the investigation and contributes to the lack of understanding about the context surrounding this case. It is crucial for a thorough investigation that all relevant parties, including immediate family members, are included in the process to avoid mistakes, inaccuracies, and ensure that justice is served.

Regarding Shelby's accommodations, I must reiterate that Shelby suffers from a severe intellectual and developmental disability (IDD) with an IQ of 55, which significantly impacts her ability to read and write. Despite this, your office continues to communicate with her via text message, which is not an appropriate method for someone in Shelby's position. As mentioned, Shelby often relies on her Aunt Kimberly Kennedy to help her read and respond to text messages, and she uses voice-to-text technology, which can be a cumbersome process that often leads to miscommunication.

Shelby's condition has been well-documented in an IDD assessment completed in May 2024 (which I've attached for your reference), and she has received Social Security Disability benefits due to her IDD since the age of 6 years old. Given this, I strongly urge you to communicate with Shelby using methods that align with her cognitive abilities, such as phone calls or platforms like Google Meet. This would allow for a clearer, more effective communication process and help ensure that Shelby's participation as a victim in this judicial process is properly accomodeated.

The issue of whether your office has been communicating with the real Shelby prior to me providing her contact information last week is highly concerning, especially considering your office has continued, up to this very day, to exclusively communicate with Shelby via text message. This ongoing reliance on text-based communication only further highlights the notion that the County Attorney's Office has little to no understanding of Shelby's severe intellectual disability.

If your office had been in regular contact with Shelby since the indictment, this critical information about her inability to read or write would have been well-established. The fact that your office has persisted with text-based communication, despite this knowledge, suggests a lack of due diligence in understanding Shelby's needs. When combined with the other serious issues surrounding the subpoenas—such as the improper issuance, lack of investigation, and failure to communicate properly with the family—it becomes clear that there are significant problems in this case that must be addressed. This raises further questions about the integrity of the prosecution's handling of this matter and underscores the need for a thorough review of the entire investigation.

In conclusion, I request that your office reconsider its approach to both the subpoenas and Shelby's accommodations. I believe that with proper consideration and communication, we can ensure that justice is served and that Shelby's rights are fully protected. Thank you for your time and attention to this matter. I look forward to your response.

Thank you,
James Roden Jr.

P.S. Jamie Renee Walker continues to have difficulty effectively communicating with Kelly Pittl. Every attempt Jamie has made to get proper accomediations to review her evidence has been dismissed and simple questions about the case have been ignored. If you can kindly assist Kelly Pittl in getting Jamie the information she needs, it would be much appreciated. I will be giving a follow up email to help detail the things Jamie has stated she has concerns about and needs clarification on.

**Disclaimer**: I am not an attorney, nor am I offering legal advice. I am a concerned family member and a **citizen of the United States and Texas**, seeking to ensure that the **truth** and **justice** are served in this case. My intention is solely to provide information that may assist in bringing the **truth** to light and ensuring that **Shelby Jane Koelle's voice** is heard in accordance with her **constitutional rights**. I am not acting in any legal capacity and do not intend to interfere with the legal process or represent any party in a legal manner.

[Quoted text hidden]

 **Gmail**

**Paladin R** ████████████████████████

## please read URGENT

**Paladin R** <████████████████████>        Wed, Mar 26, 2025 at 10:20 PM
To: Kelly Pittl <kelly████████████, Jessica Johnson <jessica.johnson██████████, Jonathan Amdur
<jonathan.amdu██████████████, Maritza Stewart <maritza.stewar██████████, Ileen Rangel
<ileen.range██████████, dwillbor████████████

Dear Guadalupe County Attorney's Office, Kelly Pittl and Advocates,

It was recently shared with by Jamie that the main piece of evidence that Jamie aided Michael
Allen Walker is that during interrogation Jamie acknowledged that she performed an oral sexual
act upon Michael while Shelby was in the room. However, I feel it's important to draw attention to a
critical fact that seems to have been overlooked in the case: Shelby has consistently testified that
Jamie was coerced at gunpoint by Michael Allen Walker to perform sexual acts including the one in
question, under the threat of death. This is a crucial detail because it changes the narrative entirely
—Jamie was not aiding Michael in committing a crime but was herself a victim of physical rape and
psychological abuse, coerced into a situation under duress.

During Jamie's interrogation with Officer Reaner, the issue of the gun was not mentioned at the
time, as Jamie was understandably in fear for her life. Michael had made it clear that he believed
he was above the law and threatened to kill Jamie if she spoke out against him. While Officer
Reaner initially acknowledged Jamie's history of abuse, it appears that her Intellectual and
Developmental Disabilities (IDD) were not fully understood, leading to a misinterpretation of
Jamie's hesitance to open up. Unfortunately, this may have been wrongly viewed as an admission
of guilt, when it was, in fact, a result of fear and confusion caused by the trauma Jamie had
suffered at Michael's hands.

Both Shelby and Jamie have repeatedly informed investigators that Michael held a gun to Jamie's
head, forcing her to participate in sexual acts. This information was shared with Officer Reaner, yet
it seems that this critical evidence has not been fully considered or integrated into the case. Shelby
has consistently stated to her family, including her grandparents, and others that Jamie was beaten
and threatened with death by Michael. However, despite these statements, this testimony seems to
have been overlooked by the prosecution. If this information had been shared with Jamie a year
ago, as she requested, this misunderstanding could have been easily resolved. This underscores
the importance of disclosing evidence as early as possible. Our family has been confused and
frustrated by the prolonged nature of this case, as we were under the impression that all relevant
facts were already known to everyone involved. This information was provided to investigators well
before the indictment. Considering Michael's history and the protection order against him, which
was put in place to protect Jamie, these facts hold significant weight. Both Jamie and Shelby have
consistently shared this with our family, further confirming the credibility of their statements.

While I do not have a complete understanding of what all transpired in Seguin, Texas at the Walker
house, I do know that my sister, Jamie, has suffered significant trauma in her life, including multiple
instances where Michael has harmed her. I also know that Jamie has faced challenges due to her
intellectual disability, which has significantly impacted her life. Shelby, too, suffers from severe IDD
and, like Jamie, needs the assistance of trained professionals to help them navigate this situation.

I am humbly requesting that the court consider appointing a **guardian ad litem** to represent
Shelby. As someone who deeply cares for them both, I am limited in my ability to provide the
expertise and resources they so desperately need. While I have done everything I can to advocate
for them, I believe that someone with professional training and experience in these matters could

offer much-needed assistance to ensure their voices are heard and their rights are protected and this is beyond my expertise.

As a husband, father, and teacher, I face many limitations in terms of resources and time. I am doing all I can to support my sister and Shelby, but I fear that without appropriate legal support and advocacy, they will not receive the help they need. This is why I am reaching out for assistance— because I believe it is essential for them to have a voice in the process, particularly as victims in this case.

Additionally, I must share that Shelby was threatened by CPS today, with accusations that she attacked her baby. This is not true, and I am deeply concerned that this is an attempt to intimidate or retaliate against Shelby for speaking out and asking for help. This situation is becoming overwhelming, and I fear for the safety and well-being of both Shelby and Jamie. My efforts alone are not enough, and I believe it is vital for those who are trained to advocate for women in these circumstances to step in and provide the support they need.

Unfortunately, despite numerous phone calls, emails, and voicemails, I have yet to hear back. This silence only amplifies the fear and uncertainty that Jamie and Shelby are experiencing. In any other situation, I would expect that a conversation would be had to address the concerns of the family, and that a collaborative effort would be made to ensure that both Jamie and Shelby's voices are heard. I reached out to ensure that Shelby has a voice in this process, and to make sure that her rights as a victim are upheld. I also reached out to Kelly Pittl on Jamie's behalf because she has been given little support or communication, despite her right to have counsel and answers to her questions.

This will be my final attempt to open dialogue and seek help. If you are unable or unwilling to communicate with me, I understand, but I urge you to reach out directly to Shelby and ensure that Kelly Pittl is able to communicate with Jamie. These women need to be heard and given the opportunity to fully participate in this process. You have more knowledge and access to resources and are in a better position to help them.

Thank you for your time and consideration. I remain hopeful that the right thing will be done for them both.

Thank you and God Bless,

James L Roden Jr.
Family Advocate

**Disclaimer**: I am not an attorney, nor am I offering legal advice. I am a concerned family member and a **citizen of the United States and Texas**, seeking to ensure that the **truth** and **justice** are served in this case. My intention is solely to provide information that may assist in bringing the **truth** to light and ensuring that **Shelby Jane Koelle's voice** is heard in accordance with her **constitutional rights**. I am not acting in any legal capacity and do not intend to interfere with the legal process or represent any party in a legal manner.

[Quoted text hidden]

Case 5:26-cv-00054-XR    Document 14-6    Filed 05/04/26    Page 23 of 51

 **Gmail**

**Paladin R <jimlouisroden@gmail.com>**

# Stepping down as Advocate, Jamie and Shelby need a replacement advocate.

**Paladin R** <jimlouisroden@gmail.com>                              Thu, Mar 27, 2025 at 9:49 PM
To: dwillborn███████████████, Kelly Pittl <kelly███████████

Dear Mr. Pittl and Mr. Willborn,

I am writing to clarify a situation regarding communication between Jamie, Shelby, and your office. First and foremost, I want to sincerely apologize for any misunderstanding and admit that I was not aware of the sensitive information included earlier in the email chain. Jamie asked me to help share her story and to explain the difficulties she has been facing. As she struggles with reading, writing, and understanding due to her intellectual and developmental disabilities (IDD), she requested my assistance in replying to an email and expressing her experiences. I did not intend to overstep or cause any harm in any way, and I deeply regret any inconvenience this may have caused.

I am not an attorney and, as such, I have made multiple attempts to contact your office for assistance, but have yet to receive a response. My primary goal is to ensure that Jamie and Shelby—both of whom have IDD—receive the support they need and deserve. They are victims of abuse and need an advocate who can help guide them through this complex and difficult process. At present, neither Jamie nor Shelby has anyone else in the family who is capable or has the resources to assist them in navigating the legal challenges they are facing.

While I will no longer be advocating for Jamie and Shelby, I am deeply concerned that they are not receiving the appropriate help and support. It is troubling that both your office and Mr. Pittl have been unwilling to communicate or assist them, despite their urgent needs. Jamie and Shelby have both endured unimaginable abuse, and they need someone to stand up for their legal rights and ensure they have access to proper resources. I kindly request that if possible, you help identify someone who can advocate for them moving forward, especially given their IDD and the need for someone to help them understand the complex legal processes involved.

I humbly request your assistance in ensuring that Jamie and Shelby are provided with the necessary resources to move forward with their case. I do not have the legal knowledge or resources to advocate for them in the way that is needed.

Thank you for your time and attention to this matter. I sincerely hope that you can find someone to advocate for them to ensure that both Jamie and Shelby's voices are heard and that they receive the support they so desperately need.

Sincerely,
James Louis Roden Jr.

P.S. If I may ask one more favor, could you please pray for Jamie and Shelby? I feel that my prayers alone are not enough. We are all brothers and sisters through Christ, and Jamie and Shelby need God's love and guidance more than ever. Thank you, and God bless.

4/9/25, 10:52 PM      Western Governors University Mail - Reporting Possible Crime - Concern Regarding Shelb...(Case No. 24-1775-CR-B)

Case 5:26-cv-00054-XR   Document 14-6   Filed 05/04/26   Page 24 of 51



James Roden ████████████████████

# Reporting Possible Crime - Concern Regarding Shelby Jane Koelle (Case No. 24-1775-CR-B)

3 messages

---

**James Roden** ████████████████        Tue, Apr 1, 2025 at 12:49 AM
To: kell███████████████, jessica.johnson████████████, jonathan.amdu███████████,
maritza.stewar███████████, ileen.range███████████, dwillbor███████████, Laura.Bolton█████████

**Subject: Reporting Possible Crime - Concern Regarding Shelby Jane Koelle (Case No. 24-1775-CR-B)**

To Whom It May Concern,

I am writing to express an urgent concern regarding my niece, Shelby ███████████ and I am unsure of the proper channels to report this. I just recently became aware of a troubling situation that has left me deeply concerned for Shelby's safety and well-being.

Please note that I wish to remain anonymous in this matter to protect myself and my family (wife and children) from any potential retaliation. Additionally, I wish to distance myself from my sister and the rest of her children moving forward, as this is not something I wish to expose my wife and children to.

Shelby, who has Intellectual and Developmental Disabilities (IDD) and receives Social Security Disability benefits, has been living with her brother, Cody, and his wife, Andrea, in Kansas since August 1st, 2024. Despite knowing Shelby's condition, Cody and Andrea allowed a man named Jesse to move into their home. They permitted Jesse to sleep in the same room with Shelby, and Cody has openly stated that he was aware Jesse was using Shelby for sex, claiming that the relationship would not last long. It is now believed that Shelby is pregnant for a second time, potentially as a result of exploitation due to her disability, an issue that both Cody and Andrea had a responsibility to protect her from.

This situation is deeply disturbing, not only because it exposes Shelby to abuse but because it mirrors the very crime Jamie and Michael Allen Walker are being accused of. By allowing this man to have unrestricted access to Shelby, and permitting him to engage in sexual activity with her, Cody and Andrea may have facilitated the same type of abuse that is being prosecuted in Jamie's case. This is a clear violation of Shelby's rights as a vulnerable adult and falls under the same legal concerns as those Jamie and Michael face.

As set forth in Texas Penal Code Section 22.011, which criminalizes sexual assault, the law clearly outlines that individuals with intellectual disabilities cannot consent to sexual activity, and any sexual act committed against them without their consent is a violation of their rights. Under Texas law, consent cannot be legally given by a person who lacks the mental capacity to understand the nature of the act (Tex. Penal Code § 22.011(c)).

In Kansas, the law similarly protects individuals with IDD from sexual exploitation and abuse. According to Kansas Statutes Annotated (K.S.A.) 21-5503, any sexual act involving a person who is unable to provide consent due to mental incapacity is considered sexual assault. Given that Shelby has been diagnosed with IDD, her ability to consent to sexual acts is legally restricted, and Cody and Andrea's actions in permitting this relationship to develop and continue may amount to legal violations under both Texas and Kansas law.

To make matters worse, Cody and Andrea kicked both Shelby and Jesse out of the house together after discovering illegal drugs on the property. While I understand their concern about the drugs, it was irresponsible and dangerous for them to allow this situation to escalate without contacting the authorities. Given Shelby's condition, Cody and Andrea should have taken steps to protect her, rather than ignoring the situation and allowing further harm and forcing her to move in with him knowing the dangers of drugs and sexual exploitation.

It is deeply concerning that this is not the first time Shelby has been placed in such a vulnerable position. In less than two years, a pregnancy has occurred again, highlighting significant failures within the system to protect her. As her family, we are devastated that this abuse has continued without intervention and with this potential second pregnancy another life is tragically impacted.

It is my understanding that Shelby has been under the care of the Guadalupe County Attorney's Office Victim Advocate Program, and their office has conducted regular check-ins with her. Given their oversight, I trust they are already aware of this situation and will take the appropriate steps to ensure Shelby's safety. It is imperative that the relevant authorities in Kansas now step in to further investigate this matter and take the necessary legal actions to protect Shelby from future harm.

As a teacher, I have a duty to report potential abuse, and while I wish to remain anonymous to avoid causing additional harm to my elderly parents, my wife and children from retaliation. I believe this situation must be brought to light. Shelby has been subjected to abuse multiple times, and it is vital that her rights and safety be protected moving forward.

I have included Laura Bolton, the CPS worker handling Shelby's case in Kansas, in this email. I want to clarify that I am no longer the family advocate for Jamie Renee Walker or Shelby Jane Koelle in relation to the ongoing criminal case in Guadalupe County as it is beyond my expertise and hope a more qualified individual can be appointed to help both Shelby and Jamie. However, upon learning of this situation, I felt a responsibility to report it. I sincerely hope that the appropriate authorities in both Kansas and Texas can collaborate to address this issue promptly, before further harm occurs.

Thank you for your attention to this serious matter.

Sincerely,
James Louis Roden Jr.

P.S. Again, I ask that my identity remain anonymous as I do not wish to expose my wife and children to retaliation or harm, and I wish to distance myself from my sister's case and her children going forward as this is beyond my ability to advocate effectively.

---

🎵 **Cody in Regards to Shelby pregnancy.m4a**
1328K

---

**James Roden** <jroden██████                    Tue, Apr 1, 2025 at 8:24 AM
To: Kimberly Kennedy <kennedyckimberl██████

Sent from my iPhone

Begin forwarded message:

> **From:** James Roden <jroden3█████
> **Date:** April 1, 2025 at 12:49:34 AM CDT
> **To:** kelly██████, jessica.johnson█████, jonathan.amdur███
> maritza.stewart█████, ileen.rangel████, dwillborn███
> Laura.Bolton████

4/9/25, 10:52 PM    Western Governors University Mail - Reporting Possible Crime - Concern Regarding Shelby ... Case No. 24-1775-CR-B)

Case 5:26-cv-00054-XR   Document 14-6   Filed 05/04/26   Page 26 of 51

**Subject: Reporting Possible Crime - Concern Regarding Shelby Jane Koelle (Case No. 24-1775-CR-B)**

[Quoted text hidden]

---

🎵 **Cody in Regards to Shelby pregnancy.m4a**
1328K

---

**James Roden** <jroden⬛⬛⬛⬛⬛⬛⬛⬛⬛>                          Wed, Apr 9, 2025 at 12:04 PM
To: megan.ru⬛⬛⬛⬛⬛⬛⬛⬛    Brianna.Leishma⬛⬛⬛⬛⬛⬛⬛⬛⬛, mar⬛⬛⬛⬛⬛⬛⬛⬛⬛

**Hi this is James Roden this is my other email and this is the email I reported the newest incident with Shelby to the Guadalupe County Attorney's Office and the current CPS agent that is working with Shelby to find resources for her kids. I made this report April 1st and a week later I'm in jail, me and my family are arrested on 1st degree felony charges, I lost my job, lost all my money to bail and get a lawyer. I stated in the email that I was worried about retaliation and that is exactly what I got.**

**Thank you,**
**James Roden**

---------- Forwarded message ---------
From: **James Roden** ⬛⬛⬛⬛⬛⬛⬛⬛⬛
[Quoted text hidden]
[Quoted text hidden]

---

🎵 **Cody in Regards to Shelby pregnancy.m4a**
1328K

 Gmail                                                                    **Paladin R** < ███████████████████ >

## Contact Information to the Guadalupe County Attorneys Office and Ford County Sheriffs Office

3 messages

---

**Paladin R** < █████████████████ >                                          Sat, Mar 22, 2025 at 3:45 PM
To: mjones███████████
Cc: Jessica Johnson <jessica.johnson███████████, Ileen Rangel <ileen.rangel██████████, Jonathan Amdur
<jonathan.amdur█████████, Maritza Stewart <maritza.stewar█████████████, dwillbor██████████████,
Kelly Pittl <kell████████████

Dear Deputy Jones of Ford County Kansas Sheriff Office,

Here is the contact information you requested as it relates to the fraud case of Shelb█████████ in Ford County Kansas and its connection to Guadalupe County Texas.

Jessica Johnson - Guadalupe County Assistant County Attorney
Phone: ████████████
Email: jessica.johnso████████

Ileen Rangel - Guadalupe County Victim Advocate
Phone: ████████████
Email: ileen.rangel████████

Deputy Jones Ford County Kansas Sheriff Office
Email: mjones██████████
Phone: ██████████

Shelby Jane Koelle (Victim)
Phone: ████████████
Address: ████████████████ KS ████

Case Number in Guadalupe County for the Aggrevated Sexual Assault of Shelby ████████:
Case #:  24-1775-CR-B

CC'd in the email is everyone who is working on the case in Guadalupe County Texas. Please feel free to use it if needed to help investigate your case in Ford County.

---

**Kelly Pittl** <kelly████████████                                          Sun, Mar 23, 2025 at 9:42 AM
To: Paladin R < ██████████████ >

What are you alleging is fraud?
[Quoted text hidden]
--
Kelly F. Pittl
The Law Office of Kelly F. Pittl, P.L.L.C.
████████████et
███████, Texas
office ██████
fax ██████
kelly██████



**Paladin R** <████████████████████>                    Sun, Mar 23, 2025 at 5:46 PM
To: Kelly Pittl <kelly████████████, Jessica Johnson <jessica.johnso███████████, Ileen Rangel
<ileen.range████████████, Jonathan Amdur <jonathan.amdur███████████, Maritza Stewart
<maritza.stewart████████████, dwillborn███████████
Cc: mjone████████

**Response:**

The **fraud** being alleged is not from my personal knowledge but directly from **Shelby**. She has made the following allegations:

1. **Pretending to be Shelby on the phone**: **Shelby** alleges that **Andrea Martin** has **impersonated her** during **phone communications** with **lawyers**, **law enforcement**, and potentially others involved in the legal process. This impersonation was intended to **mislead** or **manipulate** the handling of legal matters related to **Shelby's testimony** and the defense of **Jamie and prosecution of Michael**.

2. **Stealing and keeping Shelby's mail**: **Shelby** has reported that **Andrea Martin and Cody Koelle** has **intercepted, opened**, and **kept mail** that was intended for **Shelby**. This mail likely included important **legal documents** such as **court notices** or **subpoenas**. By keeping or withholding this mail, **Andrea Martin** could be interfering with **Shelby's ability to participate fully** in the legal process, preventing her from receiving important information related to **Jamie's case**.

3. **Forging Shelby's signature**: **Shelby** also alleges that **Andrea Martin** has **forged her signature** on documents, potentially related to the case. **Forgery** is a criminal offense in which a person signs another person's name with the **intent to deceive** or **fraudulently use** those documents, likely to **manipulate the legal process** or **obscure the truth** about **Jamie's innocence and Michael's guilt**.

**Coercion and Influence:**

It is also important to note that according to **Shelby** she is being **encouraged** into **speaking to Michael Allen Walker's family**, who are trying to influence her testimony and statements, likely in an effort to **help reduce the charges** for **Michael Allen Walker**. **Andrea Martin**, a **close friend of Michael Allen Walker**, has a personal motive against **Jamie Renee Walker**, likely due to a **possible extramarital relationship and the belief that Jamie called Child Protective Services on Andrea Martin**. This personal animosity and involvement could be leading to **Shelby's manipulation** and possible manipulation of Guadalupe County Attorney's office, in this case.

Additionally, **Cody Koelle**, who is **best friends** with **Dylan (Goose) Walker**, Michael's son, is also believed to be working in conjunction with **Andrea Martin** to **misdirect the court** and **obfuscate the truth** in order to **help Michael Allen Walker** while **hurting Jamie Renee Walker**. These connections indicate that there is possible **collusion** to deceive the court and **undermine the legal process** in favor of **Michael Allen Walker**.

**Shelby's Claims vs. Guadalupe County Attorney's Office:**

It's essential to understand that **Shelby** has **consistently stated** that she has not had any **direct communication** with **law enforcement** or anyone from the **Guadalupe County Attorney's Office** since moving to **Kansas in August 2024**. However, **Jessica Johnson**, the **Guadalupe**

**County Attorney**, has claimed that she has been in **regular contact** with **Shelby**. This significant discrepancy raises serious questions about the **credibility of the DA's claims** and the actual **circumstances surrounding Shelby's involvement** in the case and how it relates to the alleged fraud of Andrea Martin pretending to be Shelby to influence the case.

Further supporting **Shelby's claim**, the **Guadalupe County Attorney's Office** did not have **Shelby's address** or **phone number** until **I provided them**. In fact, they had been relying solely on **Cody Koelle** and **Andrea Martin** for any communication, both of whom have clear **personal interests** in **undermining** the case and **influencing** Shelby's testimony.

**The DA's Tactics:**

Moreover, it is worth noting that the **Guadalupe County Attorney's Office** is offering **Cody Koelle** free **flights**, **hotel**, and **lodging** for his testimony, which is only likely to **help the prosecution** of **Jamie**. This offer further illustrates that the prosecution is not focused on **finding the truth or seeking justice**—it is primarily concerned with securing a **win** for the state. A prosecutor is a *MINISTER OF JUSTICE,* prosecutor's role is not just to win cases but to ensure that the **legal process** is fair, that **the rights of the accused** are protected, and that justice is **served impartially**.

The **knee-jerk reaction** of **subpoenaing** my entire family—after I simply encouraged them to speak to the **actual victim**, **Shelby**, who was seeking help—is a clear attempt at **intimidation**. Especially considering the fact that she has made no efforts to contact the individuals she subpoenaed and has not obtained any statements from them, despite the significant financial burden imposed on my family. The cost to bring these individuals from across the country will approach **$10,000**, covering **flights**, **rental cars**, **hotel lodging**, **daycare**, **lost wages**, **food**, and other necessary expenses, all while they are under the threat of **jail time** and a **$500 fine** for non-compliance. This situation appears to be a clear violation of **subpoena power** and **prosecutorial misconduct**, and the **court** and **State Bar** should be made aware of it if this issue is not rectified.

Shelby has allegedly been manipulated by Andrea Martin and Cody Koelle, who have prevented her from speaking to anyone from the Guadalupe County Attorney's Office or law enforcement. It is crucial that the **truth** is heard in court, and the **court should not allow this case to be manipulated** by people with a **vested interest in protecting Michael Allen Walker who actually impregnated Shelby by force**.

**Denial of Financial Assistance and Communication Issues:**

Another troubling issue is that **Shelby** is being **denied any financial assistance** to attend the hearing, even though she lives in **Ford County, Kansas**, just like **Cody Koelle**. Despite the fact that **Cody Koelle** has received **free flights**, **hotel**, and **lodging** from the DA's office to attend the hearing, **Shelby**—the **actual victim**—has been denied any assistance to attend and testify. This is just another example that being a minister of justice is not their priority, they are willing to pay to get testimony that will help them prosecute Jamie even if that testimony is misleading or an outright lie, instead of getting testimony from the actual victim that can bring truth to light. **Shelby** has made it clear that **I will not be able to assist** financially, as I too am being **subpoenaed by the state** and cannot make the trip back and forth from Kansas, yet they still refuse to help financially to get her to 274th District Court to get her on the stand to testify.

Additionally, **Ileen Rangel**, the **Victim Advocate** for the **Guadalupe County Attorney's Office**, has been sending **text messages** to **Shelby**, which is deeply concerning because **Shelby** cannot read or write due to her **severe intellectual disability (IDD)**. **Shelby** can only respond using **voice-to-text**, and she often needs assistance from others to read text messages. If **Ileen Rangel** had reviewed the **case file** or understood **Shelby's situation**, she would be aware that **Shelby has an IQ of 55** and cannot read or write. This only reinforces **Shelby's statement** that she has had no contact with anyone from the **County Attorney's Office**, as **Ileen**, her **Victim**

**Advocate**, would have known that if she had been in regular contact with the real **Shelby**  ▮▮▮▮

The lack of **sympathy** or **empathy** in **Ileen Rangel's responses** to **Shelby**, despite her role as a **victim advocate**, is deeply troubling. **Ileen Rangel's text response to Shelby** clearly indicate a lack of understanding of Shelby's condition and the necessary sensitivity required when communicating with someone who has **severe intellectual disabilities (IDD)**. If **Ileen Rangel** had indeed been in **regular contact** with **Shelby**, as **Jessica Johnson** claims, she would have been fully aware of **Shelby's cognitive limitations** and the need to provide appropriate accommodations. Instead, **Shelby** continues to be treated as though she is capable of managing communications that are beyond her abilities, such as receiving text messages that she cannot read or respond to without help.

This failure to provide **Shelby** with the **necessary accommodations** indicates a serious disconnect between **Shelby's actual condition** and the responses from those who are supposed to advocate for her. It raises concerns about whether **Shelby's rights** are being adequately protected and whether she has been given a fair opportunity to communicate effectively with the **Guadalupe County Attorney's Office**. Given that **Shelby** has stated that she has had **no contact** with anyone from the **Attorney's Office**, it seems highly unlikely that the **regular contact** claimed by **Jessica Johnson** is accurate.

### Concerns About the Indictment and Shelby's Exclusion

This lack of due diligence in ensuring Shelby's participation in the process raises significant questions about the integrity of the investigation and the foundation of the indictment. The indictment against Jamie is vague and lacks crucial details that would clarify Jamie's alleged involvement in the crime. Specifically, the indictment fails to provide a clear explanation of what actions Jamie took to assist **Michael Allen Walker**, leaving open questions about the nature of the alleged crime. For example, while the indictment states that Jamie allegedly **aided and abetted**, it fails to provide specific details on how she was involved, leaving crucial aspects of the charge unclear.The indictment also does not address the context of the alleged incident, leaving many of the facts surrounding the charge unclear. According to **Criminal Procedure Code § 21.15**, an indictment must contain sufficient details to notify the defendant of the nature of the offense with enough specificity to allow preparation for defense. The failure to provide these details raises questions about whether the **right to a fair trial** has been properly preserved under the **Sixth Amendment**.

This lack of specificity in the indictment aligns with Shelby's claims that she has not been adequately involved in the process. If Shelby had been properly contacted by the **Guadalupe County Attorney's Office**, her testimony could have directly addressed these ambiguities, especially given that she is the **victim** and has stated that she has not spoken with anyone from the office since moving to **Kansas** in **August 2024 and has claimed since day one that her Mom Jamie Renee Walker who also suffers from IDD is innocent.**. The **failure to communicate with Shelby** about the case calls into question whether the **County Attorney's Office** has truly investigated the matter thoroughly or if the indictment was based on incomplete or misrepresented evidence. The **failure to interview key witnesses** or gather exculpatory evidence could constitute a violation of **Brady v. Maryland, 373 U.S. 83 (1963)**, which mandates the prosecution's duty to disclose favorable evidence to the defense.

In light of Shelby's claims of lack of contact, it becomes evident that the **County Attorney's Office** has not taken the necessary steps to ensure Shelby's inclusion in the case, despite her pivotal role as the victim and potential witness. This failure is not only a violation of **Shelby's rights as a victim** under **Article 1, Section 30** of the **Texas Constitution** but also creates serious concerns about the integrity of the indictment. The lack of clarity in the charges, coupled with Shelby's exclusion, suggests that important **exculpatory evidence** may have been overlooked or

deliberately ignored, further undermining the legitimacy of the case against Jamie. If this failure is not addressed, it could be grounds for **appeal** based on prosecutorial misconduct and violation of the defendant's constitutional rights to a fair trial.

**Why These Actions Are Fraud:**

The actions described above constitute **fraud** because they involve **deceptive practices** intended to **mislead others**, including **law enforcement**, **attorneys**, and potentially the **court**, and obstruct **justice**. The **fraud** here is intended to **suppress truthful testimony** from **Shelby**, prevent her from **fully participating** in the legal process, and **mislead** the court regarding **Jamie's innocence and Michaels guilt**.

The **fraud** described by **Shelby** directly interferes with **Jamie's right to a fair trial** and her ability to **defend herself** in light of the **exculpatory testimony** from **Shelby**. These actions are part of a broader attempt to **hide the truth** and prevent the legal process from reaching a just conclusion.

**Importance of Investigation:**

**Shelby** is being systematically **locked out** of the **legal process** in this trial, which involves both **Jamie** and **Michael**, and a thorough **investigation** is needed to uncover what is truly happening **behind the scenes**. Based on my experiences so far, it appears that neither the **court appointed defense** nor the **prosecution** is genuinely interested in seeking the **truth**. Instead, both sides seem focused on securing a **quick and easy plea deal by any means necessary, even if it means locking up an innocent victim by motion to increase bond, because the more time Jamie spends in jail the easier it is to convince her to plea as the case potentially drags out for years**. It is **disconcerting** that I, as someone who initially **reported the crime** and who is trying to bring the **truth to light**, am being treated with **disdain** rather than **gratitude**. I fear that the **justice system** is failing my sister, and it reminds me of the story of **Fred Gray** and why the **Martin Law** was passed—to protect my sister from situations like this. Thus the reason she doesn't know anything about the evidence against her and the indictment states nothing as to how she aided Michael Allen Walker in any way, all of this violates her Constitutional rights.

It is clear that **exculpatory evidence** exists and that there are serious **Brady violations** occurring. It is now up to you, **Kelly Pittl**, to do what is right. If **Jamie** is wrongfully convicted due to the **prosecution** and **defense** knowingly failing to perform their **due diligence** and allowing **prosecutorial misconduct and ignoring exculpatory evidence**, it would not only provide **grounds for appeal** but also warrant a serious **investigation** by the **State Bar**, **Texas Attorney General's Office**, and any other governing body that oversees such critical issues. Since I am **subpoenaed**, I plan to bring these concerns to the attention of **Judge Gary Steel** and hope that he can take the necessary steps to protect **Jamie Renee Walker's** and **Shelby** ███████s **Sixth** and **Fourteenth Amendment rights** and ensure that **justice** is served.

Furthermore, as the victim in this case, **Shelby** is entitled to several constitutional protections. Under the **Sixth Amendment**, **Shelby** has the right to be heard and to participate in the legal proceedings, and her testimony should not be obstructed. To request a continuance or take any other legal action on **April 7th, 2025**, in an attempt to prevent **Shelby** from testifying and telling the truth—especially knowing the significant cost and resources spent to bring everyone subpoenaed to court, including **Shelby**—would only further expose the misconduct occurring in this case. I sincerely hope that **Shelby** is given the opportunity to be heard and that her testimony is placed on the record on **April 7th, 2025**. As a victim of crime, **Shelby** also has rights under the **Victims' Rights Amendment** in the **Texas Constitution (Article 1, Section 30)**, which guarantees that victims are treated with dignity and respect throughout the judicial process. This includes the right to be informed, the right to be heard, and the right to participate in certain court proceed

**Shelby** also has the **right to be protected from intimidation or harassment** under the **Crime Victims' Rights Act (18 U.S.C. § 3771)**, which guarantees that victims are entitled to be **treated fairly and with respect** for their dignity and privacy. If her **constitutional rights** are being violated—specifically her right to participate and her right to be free from coercion—it is critical that the **court** address these issues to ensure that her **voice** is heard and her **right to justice** is not infringed upon.

Thank you,
James Louis Roden Jr.

**Disclaimer:**

*I am not a lawyer, and the information I have provided should not be construed as legal advice. I am speaking solely as a concerned family member and citizen, sharing my personal concerns and observations about this case. While I cannot independently verify all the allegations made by others, my limited knowledge of the facts only strengthens my insistence that a thorough investigation be conducted to uncover the truth and address the concerns surrounding this case.*

[Quoted text hidden]

 

## Urgent: Immediate Action Required to Support Shelby Koelle – Concerns Regarding APS Handling

3 messages

**Paladin R** < ██████████ >                                    Sun, Jun 2, 2024 at 12:42 AM
To: regina.josep ████████████, taylor.smith2 ████████, Thomas.kimbark2 ████████, Elaine Reamer
<elaine.reamer ████████,
Cc: kimberlyckennedy █████████, Paladin R < ████████████ >, Anna Roden <rattlerfan █████████ >



# <span style="color:red">Urgent</span>: <u>Immediate Action Required</u> to Support Shelby ████ – Concerns Regarding APS Handling

**To Whom It May Concern,**

**In Regards to: Shelby ███████** **(DOB ██████**

    I am writing regarding Shelby ████. In February 2024, I contacted Adult Protective Services (APS) to report a possible sexual assault involving Shelby ████. At the time, Shelby was nearly five months pregnant, and I learned through family members that Michael Allen Walker, Shelby's stepfather, was the father of her child. Initially, APS closed the case because Shelby denied the allegations and later claimed the relationship was consensual. The case was then referred to the Guadalupe County Sheriff's Office, where it was put on hold based on Shelby's testimony.

    As a result of the case being closed, Shelby remained in the household with Michael Allen Walker and continued to suffer sexual abuse for nearly an additional month. I was eventually able to get the case reopened by providing documentation of state law indicating that, due to Shelby's intellectual and developmental disability (IDD) (she receives SSI for her disability), and the fact that Texas law prohibits any sexual contact between a stepfather and stepdaughter, the law had been broken.

    After Shelby was removed from the home and transferred to League City, her brother Colby took her to their grandfather's house, as I did not have any spare room in my home. Due to my parents' age and their own disabilities, they could only care for Shelby for a few days. I worked tirelessly to find resources for Shelby and eventually secured a place for her at Hope House by Anchor Point in Galveston County. Hope House agreed to take Shelby in but informed us that they could not accommodate her and the baby after birth due to her disability.

    Once Shelby was settled in Hope House, we worked diligently to find a facility that could provide services for Shelby while she raised her baby. Debbie Sonnier from Hope House explored every available resource to find a suitable home or facility for Shelby. Hope House also offered Shelby the option of open adoption once it was clear that Child Protective Services (CPS) would become involved after the child's birth due to Shelby's disability as stated by Adult Protective Services of Guadalupe County. Shelby was informed of her options and rights to help her make the best decision. Additionally, her brother Cody Koelle and her aunt Kimberly Kennedy offered to take in both Shelby and her child to provide a safe and supportive environment as a last resort if no other suitable solution for Shelby and baby can be found.

    I contacted Regina Joseph from APS, who was handling the case, to explore the possibility of obtaining temporary custody of Shelby and providing her with a facility to stay at while the family gathered resources to support Shelby and her child if she chose not to pursue adoption. Regina facilitated an IDD assessment for Shelby, and I fully supported this, knowing that her last assessment was conducted during her school years and indicated a 51 IQ. Given Shelby's inability to read, write, and follow complex instructions at age 26, I was confident the assessment would confirm her disability and enable the state to find a more suitable facility for her.

Adult Protective Services (APS) conducted an assessment of Shelby ████; however, the manner in which the assessment was performed raised significant concerns. The results indicated that Shelby was capable of living independently, leading to the closure of her case. I attempted to discuss these results with Regina Joseph, but my calls were no longer returned.

In response, I sent Regina Joseph a copy of the State of Texas policy on Best Practices for conducting IDD assessments. Please see the attached document for the complete Best Practices from the Department of Human Services, specifically *Title 26 of the Texas Administrative Code (TAC) Chapter 304, Subchapter D, §304.401(a)(1).* This section mandates that an Authorized Provider (AP), employed by or contracted with a local intellectual and developmental disability authority (LIDDA) or a state-supported living center (SSLC), must adhere to the Determination of Intellectual Disability Best Practice Guidelines (DID BPG) when conducting a DID assessment or endorsement and when writing a DID report.

On page 13 of Best Practices, it states:

" *Any deviation from standardization, including audio-visual administration, must be explained in the DID report. **Rationale and any possible impacts on test validity and reliability must be included in this explanation**.* "

For audio and visual performance for the test it states the following:

***"Audio-visual administration of standardized intelligence tests to individuals with IDD may be <u>difficult or impossible</u>****. Individuals with IDD often lack the reading skills and focused attention necessary to complete online intelligence tests. Without a person trained in intelligence test administration being present with the individual to assist with instructions, manipulate the materials, and follow strict standardized procedures, test results can be questionable*."

According to the Texas Administrative Code, conducting an IDD assessment in a manner that fails to account for an existing diagnosis of IDD is both difficult and impossible. Shelby ████ has been diagnosed with IDD and has been receiving SSI for nearly 20 years due to her disability.

During Shelby's assessment, it was revealed that the assessment was conducted while the assessor was caring for her five-year-old child. <u>The Texas Administrative Code clearly states</u>:

*"If an AP determines that a test can be remotely administered for an individual, the AP must ensure that the individual's environment is **<u>free from distractions</u>**, including other people who could positively or negatively influence their test behavior."*

Shelby's family, including myself, James Louis Roden Jr., Kimberly Collen Kennedy, Cody Koelle, Colby Koelle, Dolores Jane Roden, and James Louis Roden Sr., felt that the initial assessment was unfair and denied Shelby access to much-needed services to which she is entitled under Texas Law and the Federal Americans with Disabilities Act. We decided to seek an independent evaluation at our own expense to counter the state's assessment, which we believed violated best practices.

Dr. Daniel K. Sanders, who has over 30 years of experience conducting such assessments in the Greater Houston Area, performed this independent evaluation. His findings, which have been shared with APS and the Guadalupe County Sheriff's Office with Shelby ████ permission, indicated that Shelby suffers from a severe intellectual disability and should not live independently due to potential risks to herself and her child. The assessment also highlighted the need for additional support for Shelby to care for her infant.

After receiving Dr. Sanders' assessment, I continued to contact Regina Joseph to secure the necessary support for Shelby. Despite numerous voicemails and text messages pleading for assistance as Shelby's due date approached, I did not receive a response for nearly a month. Consequently, I made another report to APS in hopes of obtaining the support Shelby needed. Kendia James from the Galveston Office of APS contacted me, informing me that she would reach out to Regina and attempt to visit Hope House before May 25th, 2024.

On May 23rd, 2024, APS visited Hope House and communicated with Carmen, the House Mom, and Shelby's advocate, Ms. Dina Ramos from the Resource Crisis Center (RCC). On May 24th, 2024, it was

reported to Shelby's family that APS had transferred Shelby to another facility that would accommodate both her and her child, providing the necessary care for her IDD disability to ensure their safety. We were overjoyed to hear this news, believing that Shelby had finally received the best possible outcome.

During the conversation with Debbie and Carmen from Hope House we inquired who will be the contact person going forward so that we may continue to love and support Shelby and celebrate our new addition to the family ███ ████████. Debbie informed use that Dina Ramos from RCC was the contact person going forward. I reached out to Regina again to get a summary and to inquire as to what we can do as a family going forward to support Shelby and ████, however I again did not receive any word back. Once Memorial Day weekend was over the workweek started on Tuesday May 28th, 2024 I reached out to Dina Ramos (RCC). I was informed by Dina that she was instructed to not share any information about Shelby with anyone. I expressed concern about Shelby's IDD and asked that we want to make sure she and baby are safe and well taken care of. She informed me that a lawyer will be reaching out to me that day. I waited until 5:00 p.m. and proceeded to text Dina that the lawyer did not contact. Dina did not respond until two days later stating that she was informed by APS to no longer communicate or give any information about Shelby to anyone going forward. Dina proceeded to block my phone. I continued to reach out to Regina Joseph of APS but still I got no word.

As a result of no communication with the family about Shelby, child and wellbeing I reached out with Consumer Affairs Office of Texas to get APS to contact the family in regards to Shelby. Was finally contacted by Thomas Kimbark of APS. When speaking with Thomas I gave him the whole story about the how I was able to get Shelby out of being sex trafficked and continuously raped by her Step Father and how I was able to get her services at the Hope House and how I was reaching out to APS to get Shelby services because I did not want to see her homeless and due to my age and the age of her immediate family being on the older side we wanted to make sure that Shelby was not homeless if she no longer had immediate family living that could help her. Thomas acted very skeptical of who I was and what I wanted. Showed no compassion or empathy for the Shelby or her families situation. He stated that APS has no clue where Shelby is even though it was confirmed by Kendia James that Shelby was moved to a facility and that she had spoken with Shelby on Thursday and they made arrangements with RCC to get Shelby into another facility that would cater to her child and her IDD. When Thomas informed me that they have no clue where Shelby was and advised me to call police to make a report my heart sank and fear overwhelmed me. I asked Thomas if I could get Debbie from Hope house on a three way call and he refused and he stated he didn't need to talk to anyone and started questioning my legitimacy of being family even though he reached out to me due to my report to Consumer Affairs Office. Upon getting off the phone with Thomas from APS I immediately contacted Debbie and Carmen from Hope House and shared as to what I was informed by Thomas from APS. We agreed that a police report with the League City Police department would be best. Debbie, Carmen, Kimberly Kennedy, Cody Koelle myself and League City Police continued to reach out to Dina Ramos, however she insisted that APS informed her along with APS lawyers that she is not to give any information out about Shelby. League City Police did inform me that upon questing Dina Ramos she revealed that APS did an assessment on Shelby and she was found to be competent to live independently and that APS is helping her to live independently with child. Dina Ramos also informed Debbie from Hope House that the assessment done by the family was possibly fraudulent and won't be considered. I find this disconcerting as Shelby receives SSI for her disability and can easily access her school records and reach out to family for history of her condition.

I understand APS's role in protecting individuals, but as an educator with over 20 years of experience helping countless families obtain services and support from APS, CPS, and charitable organizations, I have never encountered a situation where APS has blocked an entire family and another crisis service provider from any information about a loved one. APS has prevented Shelby from having any contact with her entire family, which includes aunts, uncles, cousins, grandparents, and numerous friends and well-wishers. The individuals who truly harmed Shelby are now in jail, and it is unjust to treat her entire family as criminals when we have no criminal records and have committed no crime. We are advocating for Shelby's best interests and seeking the support she needs.

Our family has limited means but big hearts, and we love Shelby ███████ dearly. We want to ensure she is safe and receives the necessary services, which is why I initially reached out to APS and filed two reports.

Currently, we understand from Dina Ramos of RCC and Kendia James of APS Galveston, as originally reported by Regina Joseph to Debbie and Carmen, that APS, with RCC's assistance, facilitated Shelby's transfer from Hope House to another location. It is perplexing and distressing that Shelby's entire family is barred from offering their love and support during this critical time when she is giving birth to a new family member. This should be a joyous and celebratory time, but instead, we are grieving and fearful for Shelby's well-being.

Dina Ramos from RCC has blocked everyone's numbers and accused Shelby's brothers of being impostors and liars when they reached out to speak with Shelby. How is it in Shelby's best interest to block everyone from her life when there is no immediate threat? Even a simple phone call explaining the situation and the reason for no contact would greatly ease the family's concerns, knowing that an official with authority and validity can confirm Shelby's safety and well-being, and provide a timeline for when the family can have contact with Shelby again.

We cannot imagine that Shelby is happier being isolated from her family, friends, and loved ones. It seems cruel and unusual to deny her the opportunity for family support. There is no credible evidence that anyone from her family, outside of Jamie and Michael, poses a legitimate threat to Shelby. If there were, police or state authorities have not made it known to us.

I respectfully request that you consider this letter and reach out to Shelby's family, Anchor Point Hope House or League City Police Department to give us peace of mind by confirming her safety and addressing the seriousness of her condition of IDD. If APS doubts the credibility of our concerns, I urge you to contact Dr. Sanders for verification and consider conducting another evaluation of APS choice that adheres to Best Practices under *Title 26 of the Texas Administrative Code (TAC) Chapter 304, Subchapter D, §304.401(a)(1).* to ensure that Shelby's rights under the Americans with Disabilities Act are being upheld for her and her baby's safety.

Thank you for taking the time to read this. Here is the following contact information of Shelby's Family for future reference. Please share these contacts with any facility that Shelby may be staying in case the facility needs any support or history of Shelby medical needs and records. If you have any information that confirm the safety of Shelby please contact the League City Police Department and speak with Officer Thomas or his supervisor regarding Shelby's well being and safety to rely to family that it has been confirmed that she is safe and who we can contact moving forward.

---

**Family Contacts for Shelb**████████ **DOB:** ████████

**James Louis Roden Jr**. – Uncle to Shelby (filed original report to APS and follow up report)
Address: ████████. League City TX ████
Phone: ████████
Email: ████████

**Anna Mares Roden** – Aunt to Shelby
Phon ████████
Email: ████████

**Kimberly Kennedy** – Aunt to Shelby
Phone: ████████0
Email ████████
████████

**Dolores Jane Roden** – Grandmother to Shelby
Phone: ████████
Email: ████████

**Cody Koelle** – Brother to Shelby
Phone: ████████

**Colby Koelle -**Brother to Shelby
Phone: █████████████

**Anchor Point of League City Hope House** (Reference Debbie ████████
Address: ████████████████ t League City TX ██████
Email: █████████████████████
Website: https://anchorpoint.us/
Phone: █████████████
Phone: █████████████

**Hope House:** House Mom Carmen
Address██████████████████████████
Phone: █████████████

**League City Police Department** (Missing Person Report for Shelby ██████
Address: 5██████████████, League City, TX ████████
Phone: █████████████
Case Number: 2024-290377
Officer on Case: Officer Thomas
Badge #: 1265

---

**This report and plea for help has been sent to the following Contacts:**

**Officer Reamer Guadalupe County Sheriff Office**
Case #: 24-02887 (Michael Allen Walker and Jamie Renee Walker Case)
Phone: █████████████
Email: elaine.reamer█████████████████

**Regina Joseph** – Adult Protective Services Harris County
Phone: █████████████
Email: ██████████████████████████

**Taylor Smith** – Adult Protective Services Harris County (Supervisor)
Phone: █████████████
Email: ██████████████████████████

**Thomas Kimbark** – Adult Protective Services (Supervisor)
Phone: █████████████
Email: ██████████████████████████

**Kendia James** – Adult Protective Services Galveston County
Phone: █████████████

**Officer Thomas** – League City Police Department
Phone: █████████████
Phone Main Station: █████████████

**Debbie █████** of Anchor Point
Phone: █████████████
Email: ██████████████████████████

**Office of Consumer Affairs (Internal Affairs of DFPS)**
Phone: █████████████
*Case Complaint #:* A052820224.0090017

**Office of the Attorney General of Texas**
Ken Paxton
Website: https://www.texasattorneygeneral.gov/

**US Department of Justice – Civil Rights Division**
https://www.justice.gov/crt

██████████████████████████████
██████████████████████████████

CC: to the following recieptents

**Kimberly Kennedy**
Email: ████████████████████████

**James Roden**
Email: ████████████████████

**Anna Roden**
Email: ████████████████

---

## *I am attaching the following Documents to APS and Law Enforcement:*

**Receipt for Assessment by Dr. Sanders**

**Report of Shelby ████ IDD Assessment administered by Dr. Sandres**
*(I was given permission by Shelby to release this to law enforcement and Adult Protective Services and under HIPA guidelines to Avert a Serious Threat to Health and Safety and serve the best interest of Shelby* ████

**Authorization to Release Records**

Texas Health and Human Services. (2022). ***Determination of intellectual disability best practice guidelines.*** Texas Health and Human Services.

**Public Information Act of Texas**

# Family Rights Under Texas State and Federal Law

1. **Access to Services:**

   - Families have the right to access a variety of state and federally funded services for individuals with IDD. These services include medical care, educational support, vocational training, and residential care.

2. **Individualized Plans:**

   - Individuals with IDD are entitled to have individualized plans tailored to their specific needs. This includes Individualized Education Programs (IEPs) for students and Individualized Service Plans (ISPs) for adults.

3. **Participation in Planning:**

   - Families have the right to actively participate in the planning and decision-making processes regarding the care and services their loved ones receive. This includes being involved in the development, review, and revision of IEPs and ISPs.

4. **Informed Consent:**

   - Families must provide informed consent before any significant decisions are made regarding the care or treatment of their loved ones with IDD. This includes consent for medical treatment,

changes in living arrangements, and participation in certain programs.

5. **Least Restrictive Environment:**

   - Individuals with IDD have the right to receive services in the least restrictive environment appropriate to their needs. This principle aims to integrate individuals with IDD into the community as much as possible.

6. **Advocacy and Representation:**

   - Families have the right to advocate for their loved ones and to seek representation through advocacy groups or legal counsel if they believe their rights are being violated.

7. **Access to Records:**

   - Families have the right to access the medical, educational, and service records of their loved ones with IDD. This helps in understanding the care being provided and in making informed decisions.

8. **Right to Appeal:**

   - If families disagree with decisions made regarding the services or care provided, they have the right to appeal those decisions through appropriate channels, including administrative hearings and legal actions.

9. **Protection from Abuse and Neglect:**

   - Individuals with IDD are protected under state and federal laws from abuse, neglect, and exploitation. Families have the right to report any suspected abuse or neglect to the appropriate authorities.

**Reference**

Individuals with Disabilities Education Act (IDEA)

Americans with Disabilities Act (ADA)

Texas Administrative Code (TAC)

Disability Rights Texas

---

**6 attachments**



Shelby ▮▮▮▮ **Release Form IDD Assessment.pdf**
277K

S. ▮▮▮▮ **IDD Assessment Receipt.pdf**
62K

Shelby ▮▮▮▮ **Report 05-13-22.pdf**
407K

**Copy of Urgent Email Call to Action Shelby** ▮▮▮▮ **.pdf**
530K

**Texas Best Practices IDD Assessment.pdf**
1642K

**Public Information Act Texas.pdf**
3298K

---

**Paladin R** <▮▮▮▮▮▮▮▮>                                      Sun, Jun 2, 2024 at 9:01 AM
To: Kimberly Kennedy ▮▮▮▮▮▮▮▮

Sent from my iPhone

Begin forwarded message:

**From:** Paladin R < ▮▮▮▮▮▮▮▮▮▮ >
**Date:** June 2, 2024 at 12:42:35 AM CDT
**To:** regina.joseph▮▮▮▮▮▮▮▮▮, taylor.smith2▮▮▮▮▮▮▮▮, Thomas.kimbark2▮▮▮▮▮▮▮
Elaine Reamer <elaine.reamer▮▮▮▮▮▮▮▮▮▮, debbie     ▮
**Cc:** kimberlyckennedy▮▮▮▮▮▮   Paladin R <▮▮▮▮▮▮▮▮▮▮>, Anna Roden
▮▮▮▮▮▮▮▮▮
**Subject: Urgent: Immediate Action Required to Support  Shelby Koelle – Concerns Regarding APS Handling**

[Quoted text hidden]

---

**6 attachments**

 **Shelby** ▮▮▮ **Release Form IDD Assessment.pdf**
277K

**S.** ▮▮▮ **IDD Assessment Receipt.pdf**
62K

**Shelby** ▮▮▮ **Report 05-13-22.pdf**
407K

**Copy of Urgent Email Call to Action Shelby** ▮▮▮ **pdf**
530K

**Texas Best Practices IDD Assessment.pdf**
1642K

**Public Information Act Texas.pdf**
3298K

---

**Paladin R** <▮▮▮▮▮▮▮▮▮▮>                                    Mon, Jun 3, 2024 at 3:57 PM
To: Debbie ▮▮▮▮▮▮▮▮

See email below.
[Quoted text hidden]

---

**6 attachments**

 **Shelby** ▮▮▮ **Release Form IDD Assessment.pdf**
277K

**S**▮▮▮ **IDD Assessment Receipt.pdf**
62K

**Shelby Koelle Report 05-13-22.pdf**
407K

**Copy of Urgent Email Call to Action Shelby ███.pdf**
530K

**Texas Best Practices IDD Assessment.pdf**
1642K

**Public Information Act Texas.pdf**
3298K

 **Gmail**                                         **Paladin R <** ████████████ **>**

## Urgent: Concerns Regarding Mishandling of Shelby ██████ Case
1 message

**Paladin R <**████████████**>**                                         Wed, Jun 5, 2024 at 3:10 AM
To: sherif██████████████, jrios ████████████ jkoch ████████████, zachary.mcbride ████████
Elaine Reamer <elaine.reame████████>, cagroup ████████████
Cc: Debbie.████████████, regina.josep ████████████v, taylor.smith2 ████████████
Thomas.kimbark2 ████████████ Kimberly Kennedy <kennedyckimberl████████

**Date: 06/05/2024**

## Urgent: Concerns Regarding Mishandling of Shelby ██████ Case

Dear Arnold S. Zwicke and the Administrative Staff,

I am writing regarding case 24-02887, which is currently being handled by Officer Elaine Reamer. In February 2024, I reported a rape incident involving my niece, Shelby ████████, to Adult Protective Services (APS). Shelby, a 26-year-old woman with Intellectual Developmental Disability (IDD), has been receiving SSI benefits for her disability for the past twenty years since her diagnosis.

APS, accompanied by a Guadalupe County Sheriff's deputy, responded to the residence of Jamie Renee Walker and Michal Allen Walker, where Shelby also resided. During this visit, the deputy and APS observed that Shelby was pregnant. Despite being informed of Shelby's IDD, they dismissed the report, citing her age as a reason she could legally consent to sex, regardless of her cognitive condition. The deputy remarked, "She is an adult and it is normal to be sexually active," as documented by APS. Consequently, APS closed the case, and the Guadalupe County Sheriff's Office did not pursue an investigation, only creating an event report.

I contacted APS again, emphasizing Shelby's IDD and her SSI benefits. This led APS to refer the case back to the Guadalupe County Sheriff's Office for investigation. However, for over a month, no progress was made. In March, I reached out to APS once more, urgently requesting protection for Shelby from Michael Allen Walker, who was sexually assaulting her. APS referred me to Officer Elaine Reamer, who informed me that the case was on hold pending further investigation by APS. APS, in turn, stated they were waiting for the Guadalupe County Sheriff's Office to investigate.

The lack of action and the failure to take the severity of the crime seriously resulted in Shelby enduring an additional month of sexual assault and abuse. Near the end of March, APS finally intervened and removed Shelby ████████ from the residence, bringing her to me in League City, Texas. Upon her arrival, we immediately updated her State ID and closed her Social Security debit card, which was still in Jamie and Michael's possession.

I worked tirelessly to secure support for Shelby, as neither APS nor the Guadalupe County Sheriff's Office provided any assistance. I reached out to Anchor Point, a crisis organization with a maternity house for women in crisis. Shelby moved into this facility on April 4, 2024, where she received excellent support and services tailored to individuals with IDD.

However, on May 24, 2024, Officer Reamer abruptly removed Shelby from Anchor Point Hope House, just one day before her expected delivery date on May 25, 2024. Shelby was removed by a woman named Dina Marie Ramos who claims to represent RCC (Resource Crisis Center), Dina informed Hope House staff that she was instructed by Officer Reaner to remove Shelby and take her to undisclosed location and further instructed them to not tell any family of the move or who took her. Shelby was in safe environment for nearly two months without issue and was receive exceptional services.

On May 25th, 2024, I was contacted by the administration at Hope House, informing me that Shelby ████ is no longer a resident there. When I inquired about her whereabouts and the reason for her departure, they advised me to contact Adult Protective Services (APS) and Dina Ramos of RCC for further information.

Upon reaching out to Dina Ramos, I was informed that she could not discuss the case with any family members and would no longer respond to my calls. This was particularly disturbing as I had been told she would be the point of contact regarding Shelby's situation.

I then proceeded to contact APS, under the impression that they had facilitated Shelby ███ removal. Despite my repeated attempts over several days, I received no response from Regina Joseph, the caseworker. Consequently, I contacted Consumer Affairs, which oversees the Department of Family Protective Services, to escalate my concerns. Thomas Kimbark, a level 4 manager at APS, informed me that Shelby's case had been closed, stating she was in a safe location at Hope House. I clarified that she had been removed on May 24th, 2024, to which he responded that APS was not involved in her removal.

Alarmed and concerned, I was instructed by Thomas Kimbark to immediately file a police report, suspecting a possible kidnapping or missing person case. I contacted the League City Police Department, initiating an investigation into Shelby ███ disappearance. During the investigation, it was revealed that Officer Reaner coordinated Shelby's removal. However, neither the Guadalupe County Sheriff's Office nor any family members, including myself, who were responsible for advocating for Shelby, were notified.

Throughout this week-long ordeal, our family, including Shelby's grandparents, brothers, aunts, uncles, sister-in-law, and cousins, were grieving and praying for her safety. Despite my pleas for updates and the provision of contact information for immediate relatives, Officer Reaner failed to communicate with us, exacerbating our distress.

As of June 5th, 2024, I have not received any communication from Officer Reaner, who is reportedly on vacation. I have documented all interactions with her, which reveal her policy of not engaging with victims' families and her poor communication skills.

Currently, Officer Reaner and Dina Ramos claim that Shelby no longer wishes to have any contact with her family, which is difficult to believe given Shelby's intellectual and developmental disability (IDD). Shelby has always displayed kindness and compassion, and it is implausible that she would suddenly refuse to speak with her entire family. It is likely that she is being manipulated into making such statements, similar to previous instances where she was coerced into a sexual relationship with Michael Walker.

It is concerning that the Guadalupe County Sheriff's Office is not pursuing felony rape charges against Michael and Jamie Walker, despite clear evidence of Shelby's disability, including her long-term receipt of SSI. If additional proof is needed, the department could easily conduct another evaluation to confirm her condition and proceed with appropriate charges. I am also providing the independent evaluation of Shelby ███ by a licensed psychologist Dr. Sanders who has diagnosed her with a 55 IQ in his thorough report.

The stance of the Guadalupe County Attorney's Office, echoing that of the Sheriff's Office, that "Shelby is an adult and can make her own decisions," has facilitated the continued manipulation of Shelby, severing her ties with her supportive family and causing significant emotional distress. This position also undermines the case against Michael and Jamie Walker, who are likely to use the same defense strategy in the sexual assault case.

We had arranged for Shelby to live with her Aunt Kimberly, a minister at Morning Star Ministries, who was prepared to provide the necessary support for Shelby and her baby, ███. Unfortunately, Dina Ramos has been feeding Shelby false information, leading her to reject her family without any rational basis, with Officer Reaner seemingly encouraging this behavior.

Currently, no one in the family knows Shelby's whereabouts, her well-being, or whether her specific needs are being met. I have received dismissive remarks from individuals closely involved in her placement, including APS's lawyer, Penny, and the attorney in Guadalupe County, undermining Shelby's disability and the support she requires. The potential risks to Shelby and her infant, given her IQ of 55, are significant if she is placed in an unsuitable facility. As of now, there is no known facility in Texas designed to accommodate an IDD mother and her child, raising serious concerns about Shelby's current living conditions and the safety of her and her baby.

# Understanding Shelby's Disability

Given the uncertainty by APS and Guadalupe County Sheriff and Attorneys Office, I would like to clarify what Intellectual and Developmental Disabilities (IDD) are and explain why they can often be challenging to identify. .Detecting that Shelby, a 26-year-old woman with an IQ of 55, has an Intellectual Developmental Disability (IDD) can vary in difficulty for the average person. Here are some factors to consider:

**Communication and Social Skills:**

- **Language Proficiency**: Shelby has relatively clear speech and the ability to hold simple conversations. However, she might struggle with understanding complex language, abstract concepts, or following detailed instructions.

- **Social Cues**: Shelby might have difficulty understanding and responding appropriately to social cues, making nuanced decisions in social interactions, and managing more complex social relationships.

**Daily Living Skills:**

- **Routine Tasks**: Shelby might handle routine daily tasks well, especially those she has practiced and mastered. However, she could face challenges with new, unexpected, or complex tasks.

- **Independence**: While Shelby may manage some level of independence, she will need assistance or supervision for more complicated activities such as managing finances, healthcare, or employment.

**Behavior and Learning:**

- **Learning Difficulties**: Shelby will have difficulty learning new skills, understanding complex concepts, and performing tasks that require higher-order thinking.

- **Behavioral Indicators**: Signs such as frustration with complex tasks, reliance on routines, or discomfort in unfamiliar settings may be noticeable.

**Contextual Factors:**

- **Support Systems**: The presence of strong support systems, such as family, friends, or professional aides, can help mitigate the visibility of Shelby's disability. She may function well in structured environments where support is readily available.

- **Environment**: In familiar and supportive environments, Shelby's disability may be less noticeable. In contrast, in unfamiliar or stressful situations, her challenges might become more apparent.

**Variability in Detection:**

- **Observation Skills**: The average person's ability to detect Shelby's IDD depends on their observation skills, experience, and understanding of intellectual disabilities.

- **Subtle Signs**: Some signs of Shelby's IDD can be subtle and may not be immediately obvious to someone without specific knowledge or experience in recognizing intellectual disabilities.

While some aspects of Shelby's IDD might be noticeable to the average person, particularly in unfamiliar or challenging situations, other aspects might not be immediately apparent, especially in supportive or routine environments. Detecting Shelby's IDD often requires a nuanced understanding of cognitive and behavioral indicators, which may not be readily apparent to everyone.

To determine Shelby's mental age given her IQ of 55, we use the formula for mental age:

**Mental Age = (IQ × Chronological Age) / 100**

Shelby's chronological age is 26. Plugging in the values:

**Mental Age = (55 × 26) / 100**

Therefore, Shelby's mental age would be approximately **14.3 years**.

Shelby's mental age being approximately 14.3 years suggests she might exhibit some behaviors typical of a teenager, but it's important to consider the broader context of her intellectual development, life experiences, and environment. Here are some factors to consider:

**Potential Teenage Behaviors:**

- **Rebelliousness**: Like many teenagers, Shelby might show some signs of rebelliousness, seeking independence and testing boundaries.

- **Emotional Regulation**: She may experience emotional ups and downs typical of adolescence, such as mood swings, frustration, or impatience.

- **Social Dynamics**: Shelby might navigate social dynamics similar to those experienced by teenagers, such as forming friendships, **seeking approval**, and **dealing with peer pressure.**

    While Shelby might exhibit some behaviors characteristic of a teenager due to her mental age, her actual behavior will be influenced by a combination of her intellectual disability, life experiences, personality, and support systems. Understanding and supporting her unique needs and behaviors is key to helping her navigate her environment effectively.

# Potential Liability as the result of harm due to the inappropriate placement of Shelby

Removing Shelby from a supportive family can have significant consequences, especially considering her intellectual developmental disability (IDD) and mental age of approximately 14.3 years.

The consequences of removing Shelby from a supportive family can be profound, affecting her emotional well-being, behavior, cognitive development, health, safety, social connections, and overall quality of life. Ensuring continuity of care and support is crucial for her stability and development.

The liability impact on a facility, such as a maternity home, for not knowing or taking Shelby's intellectual developmental disability (IDD) seriously, particularly in a setting where she is required to care for an infant child, can be significant. Here are some key points:

**Legal Liability:**

- **Negligence**: The facility could be held liable for negligence if it fails to provide appropriate care and accommodations for Shelby's disability. This includes understanding her cognitive limitations and providing the necessary support.

- **Failure to Protect**: If the facility's failure to recognize and address Shelby's disability leads to harm to either Shelby or her infant, it could be liable for failing to protect the individuals in its care.

- **Violation of Disability Rights**: Not accommodating Shelby's disability may violate federal and state disability rights laws, such as the Americans with Disabilities Act (ADA), which requires reasonable accommodations for individuals with disabilities.

**Health and Safety Risks:**

- **Inadequate Care for the Infant**: If Shelby is unable to provide the necessary care for her infant due to her disability, the facility could be liable for any harm that comes to the child. This includes issues related to feeding, hygiene, and general safety.

- **Shelby's Well-being**: The facility is responsible for Shelby's well-being. If it fails to provide appropriate support, Shelby's health and safety could be at risk, leading to potential liability for the facility.

**Ethical and Professional Standards:**

- **Duty of Care**: Facilities have an ethical and professional duty to provide appropriate care and support to all residents, including those with disabilities. Failing to do so could result in reputational damage and professional sanctions.

- **Training and Awareness**: The facility must ensure that staff are adequately trained and aware of how to support residents with disabilities. Lack of training and awareness can lead to inadequate care and potential harm, increasing liability.

**Potential Consequences:**

- **Legal Action**: The facility could face lawsuits from Shelby, her family, or child protection agencies if it is found to have been negligent or in violation of disability rights.

- **Financial Penalties**: Legal action could result in significant financial penalties, including compensation for damages, legal fees, and potential fines.

- **Reputation Damage**: Negative publicity from a lawsuit or regulatory action can severely damage the facility's reputation, impacting its ability to attract and retain residents.

- **Regulatory Sanctions**: The facility could face sanctions from regulatory bodies, including loss of licenses or certifications required to operate.

**Mitigating Liability:**

- **Comprehensive Assessment**: Conduct thorough assessments of Shelby's abilities and needs to ensure she receives appropriate support and accommodations.

- **Individualized Care Plans**: Develop individualized care plans that consider Shelby's disability and provide the necessary support for her and her infant.

- **Training Programs**: Implement training programs for staff to recognize and appropriately respond to the needs of residents with disabilities.

- **Regular Monitoring**: Establish regular monitoring and review procedures to ensure that care plans are effectively implemented and adjusted as needed.

The liability impact of not taking Shelby's disability seriously in a maternity home setting is substantial. It includes legal, financial, ethical, and reputational risks. To mitigate these risks, the facility must ensure appropriate care, support, and accommodations for Shelby and her infant.

# Failure to investigate and seek Justice for Shelby

In Texas, the definition of consent, especially concerning individuals with intellectual and developmental disabilities (IDD), is outlined in several statutes within the Texas Penal Code and the Texas Family Code. Here are the relevant provisions:

**Texas Penal Code**

1. **Section 22.011 - Sexual Assault**:

    - **Subsection (b)** specifically addresses situations where a person cannot consent. It states that a sexual assault is without consent if:

        - The actor knows that the other person is unconscious or physically unable to resist.

        - The other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring.

        - **The actor knows that as a result of mental disease or defect, the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it.**

- The other person has not consented and the actor knows the other person is unaware of the sexual assault.
- The actor is a public servant who coerces the other person to submit or participate.

## Texas Family Code

1. **Section 261.001 - Definitions**:
   - This section outlines what constitutes abuse, including sexual abuse, and includes provisions about individuals who cannot legally give consent due to their mental state or incapacity.

## Texas Penal Code

2. **Section 22.021 - Aggravated Sexual Assault**:
   - This section provides further detail on aggravated sexual assault and includes provisions about the victim's mental capacity to consent. Specifically, it defines situations where the victim is unable to consent due to mental impairment or disability.

## Case Law and Attorney General Opinions

- Texas courts have interpreted these statutes to protect individuals with intellectual and developmental disabilities by recognizing their limited capacity to consent. Case law and Attorney General opinions provide additional guidance on applying these statutes in specific circumstances.

## Key Points

- **Mental Incapacity**: The law recognizes that individuals with certain mental impairments or disabilities may be unable to give informed consent.

- **Lack of Understanding**: If an individual cannot understand the nature of the act due to their intellectual or developmental disability, it is considered non-consensual.

- **Coercion and Exploitation**: The law addresses situations where an individual with IDD might be coerced or manipulated into giving apparent consent, which is not legally valid.

## Practical Implications

- **Protective Measures**: Law enforcement and the judicial system have a duty to protect individuals with IDD from sexual exploitation and assault.

- **Investigations and Prosecutions**: In cases involving individuals with IDD, special consideration is given to their ability to consent, and perpetrators may face enhanced charges and penalties.

These laws collectively ensure that individuals with intellectual and developmental disabilities are protected under Texas law, recognizing their vulnerability and the potential for exploitation.

If Guadalupe County Sheriff Office continues to dismiss Shelby's family pleas and continue to act in malice towards Shelby's family by refusing to communicate and collaborate with to bring Shelby justice and ensure her safety and the safety of her child ██████ ██████████, we will have no choice but seek further assistance.

## Local Authorities

1. **Guadalupe County District Attorney's Office**
   - Address: ██████████████ Seguin, TX ██████
   - Phone: ██████████████
   - Role: The District Attorney can investigate and prosecute cases of official misconduct and ensure that local law enforcement agencies perform their duties.

2. **Guadalupe County Commissioners Court**

- Address: ████████, Seguin, TX ████
- Phone: ████████
- Role: The County Commissioners oversee county operations and can address issues related to the performance of the Sheriff's Office.

## State Authorities

3. **Texas Rangers (Part of the Texas Department of Public Safety)**
   - Address: ████████████, Austin, TX ████
   - Phone: ████████
   - Role: The Texas Rangers can investigate allegations of criminal misconduct by public officials.

4. **Texas Attorney General's Office**
   - Address: ██████████, Austin, TX ████
   - Consumer Protection Hotline: ████████
   - Role: The Attorney General can take legal action against public officials and ensure the enforcement of state laws.

5. **Texas Commission on Law Enforcement (TCOLE)**
   - Address: ████████████████, Austin, TX ████
   - Phone: ████████
   - Role: TCOLE oversees the certification and conduct of law enforcement officers in Texas and can investigate complaints against officers.

## Federal Authorities

6. **U.S. Department of Justice (Civil Rights Division)**
   - Address: ██████████████████ Washington, DC ████████
   - Phone: ████████
   - Role: The Civil Rights Division can investigate and address violations of federal civil rights laws, including failures to protect individuals with disabilities.

## Advocacy Organizations

7. **Disability Rights Texas**
   - Address: ██████████ Austin, TX ████
   - Phone: ████████████
   - Role: This organization provides legal and advocacy services for individuals with disabilities.

8. **The Arc of Texas**
   - Address: ████████████████, Austin, TX ████
   - Phon ████████
   - Role: The Arc advocates for the rights and full inclusion of individuals with intellectual and developmental disabilities.

# The importance of communication and the need for improvement

Sheriff Arnold S. Zwicke, your campaign emphasized the importance of professional training and enhancing the quality of staff and officers to improve the service provided to the community. However, the recent actions taken by your office are not only unprofessional but also willfully detrimental, severely undermining the trust and confidence of the community you serve.

Officer Reaner personal policy of no communication with family goes against your departments goal of improving community relations and trust. Effective communication between police and the families of victims is crucial for several reasons.

**Building Trust and Cooperation**: Transparent and compassionate communication helps build trust between law enforcement and the community. When families feel they are being kept informed and treated with respect, they are more likely to cooperate with investigations and share critical information that could aid in solving cases.

**Providing Emotional Support**: Families of victims often go through intense emotional trauma. Effective communication can provide them with the necessary support, helping them navigate through their grief. It shows that law enforcement cares about their well-being, which can be immensely comforting during such difficult times.

**Ensuring Accuracy and Clarity**: Clear communication helps prevent the spread of misinformation. By keeping the family informed about the investigation's progress and any new developments, police can ensure that the family receives accurate information directly from the source, reducing the likelihood of confusion or misunderstanding.

**Enhancing Community Relations**: Positive interactions with the families of victims can enhance the overall relationship between law enforcement and the broader community. When the community sees that the police are handling cases with sensitivity and transparency, it fosters a more supportive and cooperative environment.

**Facilitating Justice**: Open lines of communication can aid in the pursuit of justice. Families who feel heard and respected are more likely to trust the judicial process and support law enforcement efforts, which can be critical in ensuring that justice is served effectively.

By prioritizing effective communication with the families of victims, Guadalupe County Sheriff Office can foster trust, provide crucial support, ensure clarity, enhance community relations, and facilitate justice. These positive outcomes ultimately contribute to a more effective and compassionate law enforcement system.

I would like to extend my heartfelt gratitude to the Guadalupe County Sheriff's Administration for taking the time to address the serious situation involving our beloved Shelby ███████. We are fully committed to assisting in the prosecution of those responsible for this heinous crime. Should there be any way we can support the efforts of both the Sheriff's Office and the County Attorney, we are prepared to do so to ensure justice is served to the fullest extent of the law.

Furthermore, we request prompt updates on Shelby's wellbeing. It is crucial for us to be assured that her disability needs are met to provide her the best opportunity for a safe and supportive environment. If an appropriate facility cannot be found, we are more than willing to assume responsibility to ensure Shelby receives the care and support she deserves.


Sincerely,

James Louis Roden Jr, Kimberly Kennedy, James Louis Roden Sr, Colby James Koelle, Cody Lane Koelle, ███████████, ███████████, ███████████,

# Contact Information

**James Louis Roden Jr.** – Uncle to Shelby (filed original report to APS and follow up report)
Address: ███████████. League City TX ████
Phone: ████████████████
Email: ████████████████

**Anna Mares Roden** – Aunt to Shelby
Phone ████████████████
Email: r████████████████

**Kimberly Kennedy** – Aunt to Shelby
Phone ████████████████
Email: e████████████████
Email:k████████████████

**Dolores Jane Roden** – Grandmother to Shelby
Phone: ████████████
Email: ████████████████

**Cody Koelle** – Brother to Shelby
Phone: ████████████

**Colby Koelle -**Brother to Shelby
Phone: ████████████

**Anchor Point of League City Hope House (Reference Debbie** ████████
Address: ████████████████ TX ████
Email: Debbie.████████████████
Website: ████████████████
Phone: ████████████████
Phone ████████████

**Hope House: House Mom Carmen**
Address: ████████████████ TX ████
Phone: ████████████

**League City Police Department** (Missing Person Report for Shelby ████████
Address: ████████████, League City, TX ████
Phone: ████████████
Case Number: 2024-290377
Officer on Case: Officer Thomas
Badge #: 1265

# Protection from Retaliation

In Texas, several laws and statutes protect private citizens from retaliation by law enforcement for filing a complaint. These protections are designed to ensure that individuals can report misconduct or abuses of power without fear of retribution.

**Texas Penal Code**

1. **Section 36.06 - Obstruction or Retaliation**:

- This section makes it a criminal offense to intentionally or knowingly harm or threaten to harm another person by an unlawful act in retaliation for or on account of their service or status as a public servant, witness, prospective witness, or informant. This includes private citizens who file complaints against law enforcement officers.

**Texas Whistleblower Act**

2. **Texas Government Code Chapter 554**:

   - While primarily aimed at protecting public employees, the principles of the Texas Whistleblower Act can be used to argue for protections against retaliation for any individual reporting a violation of law.

**Federal Protections**

3. **42 U.S.C. § 1983 - Civil Action for Deprivation of Rights**:

   - This federal statute allows individuals to sue state and local government officials, including law enforcement officers, for civil rights violations. This includes protection against retaliation for exercising First Amendment rights (freedom of speech and the right to petition the government).

4. **First Amendment of the U.S. Constitution**:

   - Protects the rights of individuals to free speech and to petition the government for a redress of grievances. Retaliation for filing a complaint against law enforcement can be seen as a violation of these constitutional rights.

**Texas Constitution**

5. **Article I, Section 8 - Freedom of Speech and Press; Libel**:

   - The Texas Constitution guarantees the right to free speech, which includes the right to file complaints and report misconduct without fear of retaliation.

---

**4 attachments**



Shelby ███ Report 05-13-22.pdf
407K

S. ███ IDD Assessment Receipt.pdf
62K

Public Information Act Texas.pdf
3298K

Urgent Conern Regarding Mishandling of Shelby ███ Case.pdf
396K