**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JAMES LOUIS RODEN JR, *Plaintiff* | § § § § | |
| v. | § § | Case No.  SA-26-CA-00054-XR |
| ELAINE MICHELLE REAMER, COUNTY OF GUADALUPE, TEXAS, *Defendants* | § § § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT REAMER'S**
**RULE 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE XAVIER RODRIGUEZ:

## I.    INTRODUCTION

Defendant Reamer's motion rests on a single false equivalence: because S.J.K. gave inconsistent statements over time, Plaintiff must have committed witness tampering. That is not the law. Witness inconsistency is not witness tampering, and advocacy is not coercion. The missing element is a coercive act by Plaintiff—and the affidavit identifies none. Defendant does not establish coercion; she merely labels it.

Plaintiff did not commit the conduct alleged. He did not coerce, threaten, bribe, intimidate, or pressure S.J.K., and he did not instruct her or attempt to influence her to give false testimony. As the First Amended Complaint pleads, Plaintiff acted throughout as a mandated reporter and disclosed family advocate: he reported suspected abuse and renewed exploitation of an intellectually disabled adult, sought to connect S.J.K. with officials and her own advocate, asked the court to appoint a neutral Guardian ad Litem, and openly documented S.J.K.'s own freely-given statements—on which she confirmed, on video and in a sworn affidavit, that she was acting

1

of her own free will and was not coerced. Plaintiff advances the arguments below without conceding any of the affidavit's accusations, all of which he denies.

Texas first-degree felony witness tampering requires that a person, with intent to influence a witness, either confer a benefit or coerce the witness to testify falsely. Tex. Penal Code § 36.05(a). Reamer's affidavit alleges no benefit, and "coercion" under Texas law means "a threat, however communicated." *Id.* § 1.07(a)(9). The affidavit identifies no threat—no quoted words, no bribe, no promise, no intimidation, no instruction to lie, and no witness who accused Plaintiff of any of these. It alleges only that Plaintiff "repeatedly" contacted his intellectually disabled niece and was "advising" her what to say. That states no offense. It is the *Malley* defect: an affidavit so lacking in indicia of probable cause that no reasonable officer could rely on it. Even before correction, the affidavit fails on its face.

It also fails under *Franks*. As Plaintiff's First Amended Complaint sets out in detail (¶¶ 68–84), Reamer omitted the facts that defeated any inference of coercion: that S.J.K. had already given Reamer the same core account before the alleged tampering; that S.J.K. denied coercion on the very videos Reamer admits receiving and swore her voluntariness; that S.J.K. had accused Reamer herself of refusing to believe her; that the tampering accusation against Plaintiff originated not from neutral investigation but from materials routed through the County Attorney's Office from Michael Walker's defense team; that others allegedly impersonated S.J.K. and blocked her access to officials; that Plaintiff had asked the court to appoint a neutral Guardian ad Litem and withdrawn as advocate; and that Plaintiff had filed a mandated report six days before the warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978); *Malley v. Briggs*, 475 U.S. 335 (1986); *Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024).

Critically, Defendant's motion does not address most of these well-pleaded allegations. It argues a handful of points and leaves Plaintiff's enumerated omissions (¶¶ 69–82) unrebutted. On a Rule 12(b)(6) motion those allegations must be accepted as true, and they independently defeat the motion. The Court need not decide which of S.J.K.'s accounts was ultimately true; it need only decide whether the affidavit stated probable-cause facts showing Plaintiff coerced false testimony. It did not. Accepting Plaintiff's well-pleaded facts as true, the motion should be denied.

One procedural matter bears noting at the outset. Defendant bears the burden on her Rule 12(b)(6) motion, and it is settled that a party may not raise new arguments for the first time in a reply brief, where the non-movant has no opportunity to respond; such arguments are waived. See, e.g., Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010); Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, 315 (5th Cir. 2008). Plaintiff, who proceeds pro se, respectfully requests that the Court confine its consideration to the grounds actually raised in Defendant's motion, and treat any argument first advanced in reply—including any belated effort to supply the coercive act, benefit, or threat the affidavit omits, to defend the omissions under Franks, or to invoke qualified immunity or the independent-intermediary doctrine on new grounds—as waived. Plaintiff stands ready to address any properly raised argument and asks only the opportunity to do so before it is decided against him.

## II.    DEFENDANT DOES NOT TEST THE PLEADINGS, AND THE ALLEGATIONS SHE IGNORES MUST BE TAKEN AS TRUE

To survive dismissal, a complaint need only state a plausible claim on its well-pleaded facts, accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendant's motion does not test the pleadings. It attaches two videos, asks the Court to credit defense counsel's interpretation of them, and asks the Court to resolve *Franks* materiality against Plaintiff before any discovery. A

3

motion to dismiss does not permit that; it tests the sufficiency of the pleadings, not the weight of evidence.

More fundamentally, Defendant's motion engages only a fraction of the First Amended Complaint. It argues probable cause from an interview and a FaceTime video, the independent-intermediary doctrine, and clearly established law. It does not address the bulk of Plaintiff's well-pleaded allegations—including the enumerated material omissions at ¶¶ 69–82, the facial-insufficiency allegations at ¶¶ 47 and 77, the defense-connected source at ¶¶ 34 and 69, S.J.K.'s sworn voluntariness at ¶¶ 39 and 72, Plaintiff's Guardian ad Litem request and withdrawal at ¶¶ 44–45 and 75, and the impersonation and access-interference allegations at ¶¶ 50–53 and 80. A movant who does not contest an allegation does not defeat it. Those allegations are admitted as true for purposes of this motion, and standing alone they defeat the theory that Plaintiff coerced false testimony.

### III.    THE COURT MAY NOT RESOLVE DISPUTED VIDEO EVIDENCE OR REWRITE THE WARRANT AT RULE 12

The warrant stands or falls on the four corners of Reamer's affidavit, corrected for material omissions—not on exhibits supplied later by counsel. *See Franks*, 438 U.S. at 171. Reamer's affidavit never identified the July 19, 2024 interview as the baseline Plaintiff supposedly caused S.J.K. to contradict, never told the magistrate Plaintiff had seen it, and never alleged Plaintiff knew its contents. Defendant cannot manufacture probable cause Reamer did not present.

A video controls over a plaintiff's allegations only when it "blatantly contradict[s]" them; otherwise the Court must view it in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Plaintiff alleges the March 19 video shows advocacy, access-seeking, identity verification, and preservation of S.J.K.'s own words. Nothing in it blatantly contradicts those allegations, so the Court may not adopt Defendant's contrary reading at this stage.

4

Defendant's reliance on the videos also exceeds the narrow exception that lets a court consider documents outside the pleadings at Rule 12. A document may be considered only if the complaint refers to it and it is central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Plaintiff's complaint referenced statements S.J.K. made "in August 2024" (¶ 24); Defendant's own corrected filing now confirms the tendered interview is dated July 19, 2024.[1] Defendant has not established that this specific recording is the statement referenced in the complaint or central to Plaintiff's claims. And if the Court considers the full recording anyway, the motion is converted to one for summary judgment, and "all parties must be given a reasonable opportunity to present all the material that is pertinent." Fed. R. Civ. P. 12(d). Plaintiff has had no discovery—no access to Reamer's investigative file, the complete recordings, or the carrier records—and conversion without it would be premature.

Finally, *Franks* and *Malley* are recognized exceptions to the independent-intermediary doctrine. *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022). A magistrate's signature does not insulate an officer who tainted the probable-cause determination through a conclusory affidavit or material omissions. Defendant cannot invoke the magistrate's signature while relying on evidence and inferences never presented to that magistrate.

### IV.    THE AFFIDAVIT FAILED ON ITS FACE UNDER MALLEY BECAUSE IT ALLEGES NO STATUTORY MEANS OF WITNESS TAMPERING

Even accepting every word of the affidavit and setting the omissions aside, it does not allege the offense it charges. *Malley* applies where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344–45. This affidavit is that.

---

[1] Defendant's transmittal letter to the Clerk (June 23, 2026) states that an advisory was filed correcting the date of this video to July 19, 2024, verified by the WatchGuard metadata file. [Advisory, Dkt. 19.]

The Texas witness-tampering statute provides only two means of commission. A person violates the statute when, "with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness . . . or he coerces a witness . . . in an official proceeding" to testify falsely or withhold testimony. Tex. Penal Code § 36.05(a). The affidavit against Plaintiff alleges neither means.

**No benefit.** The affidavit identifies no money, promise, or thing of value Plaintiff offered S.J.K. That absence is conspicuous, because the same affiant knew exactly how to allege a benefit, and how to allege a threat, when she believed one existed—as her two companion affidavits, sworn the same day in the same investigation, demonstrate. In the affidavit against Jamie Walker, Reamer alleged the defendant did "agree to confer a benefit, namely $8,000.00, to Cody Koelle." In the affidavit against Plaintiff's seventy-seven-year-old father, James Louis Roden Sr., Reamer alleged coercion by a threat—that he told Cody Koelle he would "have his children removed if he did not help Jamie Renee Walker," in connection with a claimed $40,000 dispute, and would "start cracking down." The affidavit against Plaintiff contains no comparable allegation of either a benefit or a threat. The same officer pleaded a benefit against one defendant and a threat against another, but pleaded neither against Plaintiff—because there was none.

**No coercion.** The affidavit's only remaining theory is coercion, and it identifies no coercive act under any applicable definition. As used throughout the Penal Code, "coercion" means "a threat, however communicated"—to commit an offense, inflict future bodily injury, accuse a person of an offense, expose a person to hatred or contempt, harm a person's credit or business, or take or withhold official action. Tex. Penal Code § 1.07(a)(9). The affidavit identifies no threat of any kind. It alleges only that Plaintiff "repeatedly" contacted S.J.K. and was "advising the victim on what to say." Repeated contact is not a threat, and advice is not a threat. Even under the ordinary

meaning of "coerce"—to compel by force, threat, or intimidation—persuading or advising a witness is not coercion. The affidavit pleads no compulsion of any kind.

**The shift from the accusation actually made confirms the facial defect.** The accusation Cody Koelle made against Plaintiff was that Plaintiff forged Cody's November 2024 affidavit and signature—a forgery allegation, not witness tampering. (Compl. ¶ 28.) Plaintiff was never charged with forgery. Rather than test or pursue that allegation, the affidavit "shifted to Plaintiff's advocacy for S.J.K." (Compl. ¶ 28), and recast Plaintiff's own advocacy communications—his recordings, transcripts, and FaceTime contacts undertaken to help a disabled adult be heard—as the tampering offense. An affidavit that abandons the witness's actual accusation and substitutes the target's protected advocacy, while alleging neither of the statute's two means, is the paradigm of a warrant "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley, 475 U.S. at 344–45. No reasonable officer could believe that repackaging advocacy as tampering, after the only accusation actually made went uncharged, established probable cause for the elements of § 36.05.

The family-violence character of this charge does not broaden that conclusion; it confirms it. Plaintiff was charged under § 36.05(e-1)(2)—a classification provision that, because the *underlying* proceeding involves family violence, sets the punishment at "the most serious offense charged in the criminal case" (here, the aggravated-sexual-assault prosecution of Michael and Jamie Walker). That subsection is what makes the offense a first-degree felony; it says nothing about the elements and does not expand the meaning of coercion. And the "family violence" refers to the underlying proceeding, not to any conduct by Plaintiff—the affidavit does not allege, and Plaintiff did not commit, any act of family violence. The Legislature broadened "coerce" for family-violence cases in only one way: § 36.05(e-3) deems a person to coerce a witness if he

"commits an act of family violence as defined by Section 71.004, Family Code," against the witness with intent to cause her unavailability. That is the broadest coercion theory available in this setting, and the affidavit satisfies none of it—it alleges no assault, no bodily injury, no sexual abuse, and no threat of imminent physical harm by Plaintiff against S.J.K., who lived more than 700 miles away. Under the general definition (a threat), the ordinary meaning (compulsion), or the family-violence definition (an act of family violence), the affidavit alleges no coercion.

Defendant's own authority confirms the point. Defendant cites *Mitchell v. State* for the proposition that repeatedly contacting a witness to get them to lie is witness tampering. But the statute requires that the influence be accomplished through a statutory means—a benefit or a threat. *Mitchell* does not hold that contact alone, without a benefit or threat, is tampering, and the statute cannot be read that way. Such a reading would criminalize protected and even legally mandated conduct: Texas law requires teachers, nurses, counselors, clergy, and social workers to report and follow up on the suspected abuse or exploitation of a vulnerable adult, *see* Tex. Hum. Res. Code § 48.051, and a statute cannot be construed to punish as a first-degree felony the very contact that other law compels. The Court should not adopt a construction that places the Penal Code in conflict with the State's mandatory-reporting statutes and criminalizes good-faith advocacy. The statutory element Defendant cannot supply is the coercive act—and Plaintiff's contact, undertaken openly as a mandated reporter and disclosed advocate, supplies no intent to induce false testimony either.

The affidavit's disregard for accuracy appears on its own face. The companion affidavits against Plaintiff and his father assign the identical Texas driver's license number to two different individuals born thirty years apart—an impossibility reflecting an affidavit sworn to without verification of even basic identifying facts. Because the affidavit alleges neither of the two statutory means of committing witness tampering, no reasonably well-trained officer could believe

8

it established probable cause. That is a *Malley* violation, and it requires denial regardless of the omissions addressed below.

## V.    DEFENDANT'S MARCH 19, 2025 VIDEO SHOWS ADVOCACY, NOT TAMPERING

Defendant says Plaintiff "can be seen coercing" S.J.K. on the March 19 video—the same "FaceTime video" Reamer cited in her affidavit and produced herself as Exhibit 1—but, as in the affidavit, it identifies no coercive act. Because the video is Defendant's own exhibit, incorporated into and central to her motion, it is squarely before the Court at Rule 12, and every timestamp below is keyed to the running time of that same file Defendant produced, so the Court may view each point in Defendant's own evidence. On that evidence, Reamer's characterization does not hold. The portion on which Defendant relies shows S.J.K. stating her own position and Plaintiff asking whether she will testify under oath (at 09:00–09:42), to which she answers that her mother is innocent and did not know (at 09:40–09:54), and that she "tried to tell" officials but was prevented (at 10:15–10:22). There is no threat, no bribe, no promise, no instruction to lie, and no statement by S.J.K. that Plaintiff pressured her. A pointed question is not coercion, and a witness giving an answer Defendant dislikes is not probable cause for a first-degree felony.

The surrounding record makes Defendant's characterization untenable—and it is the very context Reamer omitted. The video does not begin with Plaintiff feeding S.J.K. a story. It begins with Plaintiff asking whether S.J.K. has spoken with the County Attorney's Office or her advocate (at 00:13–00:47); S.J.K. answers that she has not ("I haven't spoke to no advocate at all," at 00:46), that "the only people" with contact were Cody and Andrea Koelle and that Cody "would never let me be in contact with anybody" (at 01:11), that her court mail was opened and withheld (at 02:41), and that "Andrea would pretend to be me over the phone" (at 03:34). Those statements pointed away from Plaintiff and toward access interference and impersonation by others. And S.J.K.

9

volunteers the core account herself—"My mom's innocent… Michael Walker raped me" (at 06:10)—and states that she "tried to" report it to "Officer Elaine [Reamer], but she didn't believe me… wouldn't even let me talk on my own behalf" (at 06:48–06:57). The video thus shows S.J.K. originating her own account, not Plaintiff dictating it.

The video also refutes the affidavit's claim that Plaintiff told S.J.K. no one from the prosecutor's office had contacted her. Reamer swore the video showed Plaintiff "telling the victim that no one had been in contact with her from the prosecutor's office." In fact, Plaintiff did not assert that as his own; he expressly relayed to S.J.K. what the County Attorney's Office had told him that day—that the office said it was "in regular contact" with her and that its last recorded contact was October 31, 2024 (at 00:13 and 00:47)—and asked her about it; it was S.J.K. who answered that she had "never spoken to nobody" (at 01:11, 04:44). A separate recorded call the same day, in which the County's own victim-assistance coordinator spoke with S.J.K. directly, corroborates that the contact information originated with the County, not with Plaintiff. Reamer attributed S.J.K.'s own access complaint to Plaintiff, as if he had manufactured it.

Finally, the video shows documentation, not manipulation: Plaintiff states the date and time and asks permission to ask questions (at 00:00), and asks S.J.K. to state her full name (at 06:59–07:04) and show photo identification so officials know who is speaking (at 07:07–07:56)—a direct response to the impersonation S.J.K. had just described. Those are the acts of a person preserving a statement for officials, not concealing a scheme. At most the video is ambiguous; under *Scott v. Harris* it cannot be read as coercion at Rule 12.

## VI.   THE JULY 19, 2024 VIDEO CONFIRMS THE FRANKS OMISSIONS; IT DOES NOT CURE THEM

Defendant relies on the July 19, 2024 interview to argue S.J.K. once implicated Jamie. If the Court considers that video, it confirms Plaintiff's *Franks* theory rather than supplying probable cause.

First, the video shows Reamer knew S.J.K.'s "Jamie innocent" account predated the alleged tampering and had an innocent explanation. Reamer acknowledged on the recording (at approximately 07:52) that S.J.K. had previously told her that her mother *"was not taking place"* in the abuse, and Reamer stated: *"I understand wanting to protect your mother. I understand loving your mother."* If Reamer understood that S.J.K. could give that account out of love for her mother, Reamer had no basis to treat the same account, repeated through Plaintiff's advocacy, as proof that Plaintiff coerced it. Reamer still needed a threat or a benefit. She had neither.

Second, the video shows Reamer knew Plaintiff was an advocate before she recast that advocacy as a crime. Near the close of the interview (at approximately 26:13), Reamer told S.J.K.: *"**I'm forever grateful to your uncle** for pushing us and insisting that something had happened with you. We wouldn't be here now without him **because he advocated for you** in the beginning."* The affidavit later used Plaintiff's knowledge of S.J.K.'s disability to imply exploitation, while omitting that Plaintiff knew of the disability because he was her advocate, a special-education-certified teacher, and a mandated reporter—the very advocate Reamer had thanked. That omission inverted the meaning of his conduct.

Third, the video cannot rewrite the affidavit's four corners, and the affidavit's own words show the July 19 video was never the affiant's baseline. In the probable-cause section of the warrant against Plaintiff, Reamer swore that the theory originated in her 2024 investigation: *"In March 2024, I began an investigation into the offense Prohibited Sexual Conduct, where Jamie*

11

*Renee Walker and her husband Michael Walker were the suspects . . . the victim stated Jamie and Michael had been having a sexual relationship with her. I drafted warrants for the arrest of Jamie and Michael.* **_The couple was arrested for their warrants on 4/9/2024_**.*"* The affidavit then alleged Plaintiff "coerce[d] the victim into changing her statement." Reamer's sworn baseline was thus the March 2024 investigation and the April 9, 2024 arrests—not a July 19, 2024 recording, which the affidavit never mentions and which did not exist when the theory was first advanced. Defendant cannot now, in litigation, designate that video as the probable-cause baseline when the affiant's own sworn affidavit located the theory in the 2024 investigation and never presented the video to any magistrate. Probable cause must rest on the facts presented to the magistrate, not a later litigation exhibit. *Franks*, 438 U.S. at 171.

Fourth, the video goes to intent. Witness tampering requires intent to cause false testimony. Plaintiff was not present for the underlying events, had no access to law-enforcement theories, and was never told S.J.K. had given a contrary firsthand account (¶¶ 23–25). Plaintiff could not knowingly cause S.J.K. to contradict a recorded interview he had never seen and that Reamer never identified in the affidavit. Whatever S.J.K. said about Jamie on July 19, none of it is evidence that *Plaintiff* offered a benefit or made a threat—it is, at most, evidence about a different person, and it does not cure the affidavit's facial defect.

Fifth, the State itself rejected the theory that S.J.K.'s inconsistency was caused by Plaintiff. At Michael Walker's November 2025 sentencing, when the defense argued that the exculpatory account emerged only "once the Roden family got their hands on Shelby," the prosecutor expressly rejected that framing in his closing, stating: "these accusations did not begin once the Roden family got their hands on Shelby as Mr. Green is trying to portray. The problems — the cracks started to show on March 29th, 2022." The prosecution—the party with every incentive to support its own

witness-tampering theory—thus acknowledged on the record that S.J.K.'s account had a history that predated Plaintiff's involvement. A witness whose inconsistency predated Plaintiff cannot supply probable cause that Plaintiff caused her to change her account. In short, the July 19 video shows only that Reamer possessed yet another inconsistent statement, and possessing an inconsistent statement is not probable cause that Plaintiff committed tampering.

### VII.    THE AFFIDAVIT ALSO FAILED UNDER FRANKS BECAUSE REAMER OMITTED MATERIAL EXCULPATORY FACTS SHE POSSESSED

Even if the affidavit alleged a coercive act, it omitted facts that defeat probable cause. The corrected-affidavit analysis restores the omitted facts and asks whether probable cause survives. *Winfrey v. Rogers*, 901 F.3d 483, 494–95 (5th Cir. 2018). Here it does not. Plaintiff's complaint enumerates these omissions (¶¶ 68–84); the most significant are organized below by the source in which Reamer possessed them.

**The March 10 and March 12 videos.** Reamer's affidavit admits she received "videos"—plural—and cited them as evidence that Plaintiff was "advising the victim on what to say." Yet the affidavit omitted that, in the March 10 and March 12 videos among those she received, Plaintiff expressly asked S.J.K. whether she was being "coerced," "forced," or "persuaded," and S.J.K. repeatedly denied it and affirmed she was acting "on [her] own free will" (¶¶ 37–38, 72, 76). The affiant invoked the existence of the videos as inculpatory while omitting their exculpatory content.

**The March 15, 2025 sworn affidavit.** S.J.K. executed a notarized affidavit certifying that her statements were made "freely and voluntarily, without coercion, duress, or promise of benefit," and stating that she had repeatedly told the Sheriff's Office, including Reamer, that Jamie was not involved (¶¶ 39, 72). These exculpatory materials, with the videos and the March 18 Cody recording, were transmitted to the County Attorney's Office (Assistant County Attorney Jessica Johnson) on March 19, 2025—the same prosecutorial source Reamer swore she had been drawing

from beginning March 17, 2025—and the affidavit was electronically served on that office on March 30, 2025 and filed March 31, 2025. The exculpatory materials were therefore in the stream Reamer admits relying upon well before the April 7 warrant, supporting the inference that their omission was knowing or reckless.

**Reamer's own April 4, 2024 interview.** Reamer personally conducted a recorded interview of S.J.K. on April 4, 2024—a year before the alleged tampering—in which S.J.K. stated, in her own words, that her mother "was never involved with anything," "didn't even do it," and "had no clue," and that Michael had threatened to shoot both S.J.K. and her mother and had assaulted her mother (¶¶ 17–18, 71). The affidavit omitted that prior consistent account, making S.J.K.'s 2025 statements appear newly manufactured by Plaintiff when the affiant's own records showed S.J.K. had given the same account, on her own, before Plaintiff was ever alleged to have influenced her.

**Plaintiff's role as the reporter, not a protector.** The affidavit stated that "the Defendant is Jamie's biological brother," implying a motive to protect Jamie, while omitting that Plaintiff was the person who reported the suspected abuse and asked officials to investigate *both* Michael and Jamie Walker (¶ 15). The affiant's own prior sworn affidavit—the April 9, 2024 warrant against Jamie—documents that Plaintiff cooperated with the investigation and surfaced evidence that contributed to Jamie's arrest. A person acting to protect Jamie does not report her for investigation and provide evidence against her. The omitted facts negate the protective motive the tampering theory requires.

**S.J.K.'s accusation against Reamer herself.** The affidavit omitted that S.J.K. had accused Reamer—under oath in the March 15 affidavit and on Defendant's own Exhibit 1—of refusing to believe her and "attempt[ing] to convince [her] otherwise" (¶¶ 40, 73). That omission was material

to credibility: the magistrate was asked to credit Reamer's claim that Plaintiff "redirected" S.J.K. without being told the alleged victim accused Reamer of doing exactly that.

**Plaintiff's withdrawal and request for a neutral guardian.** The affidavit omitted that, in the weeks before the warrant, Plaintiff openly petitioned the County Attorney's Office, submitted court-filed ADA accommodation requests for S.J.K. (including a March 23, 2025 request filed in the related criminal cause), asked officials and the court to appoint a neutral Guardian ad Litem and a professional replacement advocate, and formally withdrew as advocate, expressly disclaiming any role as counsel (¶¶ 44–45, 75). A person covertly coercing a witness does not file public requests for court-appointed neutral protection and then withdraw. That conduct negates, rather than supports, the inference of corrupt intent.

**The defense-connected, unverified source.** The affidavit omitted that the accusation did not arise from neutral investigation but was routed through the County Attorney's Office from materials "received from Michael Walker's attorneys" and from the Cody and Andrea Koelle affidavits—a fact Reamer admitted in her own companion affidavits (¶¶ 34, 69, 79). The threat element of the companion affidavit against Plaintiff's father likewise rested not on Reamer's independent investigation but on what "the Guadalupe County Attorney's Office" advised her Cody had said. A magistrate needed to know the accusation came from an adversarial source with a motive to discredit S.J.K. and those helping her, and that the affiant had not independently verified it.

**The remaining omissions.** The affidavit further omitted: that S.J.K. repeatedly initiated contact with Plaintiff seeking help, rather than the reverse (¶¶ 42, 70); Plaintiff's April 1, 2025 mandated report of renewed exploitation, filed six days before the warrant (¶¶ 54–58, 78); that no one had interviewed Plaintiff, his father, or S.J.K. about coercion before the warrants issued (¶¶

15

59–64, 81); that there was no exigency (¶ 82); and that the affidavit identified no specific tampering act—no quoted threat, benefit, promise, or instruction to lie, and no timestamp (¶¶ 47, 77).

Restored, these facts show prior consistency, sworn voluntariness, a conflicted affiant, a defense-connected and unverified source, impersonation and access interference by others, a witness seeking help, a mandated reporter who sought neutral court protection, and no specific coercive act—not probable cause. Under a corrected affidavit, there was none. *Hughes*, 100 F.4th at 619–22.

## VIII.   THE INDEPENDENT-INTERMEDIARY DOCTRINE, TINOCO, AND QUALIFIED IMMUNITY DO NOT REQUIRE DISMISSAL

The magistrate's signature does not end the inquiry, because Plaintiff plausibly pleaded both the *Franks* and *Malley* exceptions. *Wilson*, 33 F.4th at 208. The independent-intermediary chain is broken where the affiant's actions tainted the intermediary's deliberations—where the affiant withheld material facts from, or misled, the magistrate, so the probable-cause determination was not based on all the relevant facts. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017); *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021).

*Tinoco* does not help Defendant. There, the affidavit contained a specific tampering allegation—that the plaintiff told the witness he needed to change his statement. Reamer's affidavit identifies no witness who accused Plaintiff of tampering, no statement instructing S.J.K. to lie, no benefit, and no threat. *Tinoco* illustrates precisely what is missing here.

Defendant provides no independent basis for dismissing Count II apart from her probable-cause argument. Plaintiff pleaded that Reamer initiated criminal process through the April 7 affidavit, that Plaintiff remained seized through arrest, bond conditions, and court supervision, and that the prosecution ended in his favor when the charge was declined on or about July 18, 2025 without conviction, plea, deferred adjudication, indictment, or judicial finding. That satisfies

favorable termination. *Thompson v. Clark*, 596 U.S. 36 (2022). That the charge was declined before any grand-jury presentment or neutral probable-cause review supports the inference that the felony process itself functioned as the restraint (¶ 98). And probable cause on a hypothetical different charge would not save a charge that lacked it. *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024).

Qualified immunity cannot be resolved on Defendant's disputed facts. The right was clearly established well before April 2025: an officer may not obtain an arrest warrant through a facially conclusory affidavit, or by knowingly or recklessly omitting facts that defeat probable cause. *Franks; Malley; Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017) (en banc); *Winfrey*, 901 F.3d 483; *Terwilliger*, 4 F.4th 270; *Hughes*, 100 F.4th 611. *Hughes*—decided at the pleading stage in 2024—denied qualified immunity where officers turned a good-faith reporter into a felony defendant through affidavit omissions. That is this case.

### IX.    PLAINTIFF PLAUSIBLY PLEADED FIRST AMENDMENT RETALIATION

Defendant's only retaliation argument is that probable cause defeats the claim. Because Plaintiff plausibly pleaded the absence of probable cause under *Malley* and *Franks*, that argument fails at Rule 12. Defendant also ignores the controlling exception. Even where probable cause exists, a retaliatory-arrest claim survives on "objective evidence that [the plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," and a plaintiff need not produce near-identical comparators. *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019); *Gonzalez v. Trevino*, 602 U.S. 653 (2024).

Plaintiff pleaded that evidence, and the most direct piece is the affiant's own personal motive to retaliate—which appears in S.J.K.'s sworn words and in Defendant's own exhibit. In her March 15, 2025 affidavit—executed under penalty of perjury, notarized, and filed in the related

criminal cause—S.J.K. swore that, despite her repeated statements that Jamie was not involved, "Officer Reamer refused to believe me and attempted to convince me otherwise." The same accusation appears on the FaceTime recording Defendant attached as its own Exhibit 1. That affidavit was electronically served on Assistant County Attorney Jessica Johnson on March 30, 2025 and filed March 31, 2025. Within roughly a week, and six days after Plaintiff's April 1, 2025 mandated report, the same accused officer sought a first-degree felony warrant against the advocate who had surfaced the accusation, while omitting it from her own affidavit. Because part of this evidence comes from Defendant's own incorporated exhibit, it is squarely before the Court at Rule 12, and an officer's decision to seek a felony warrant against the person who reported misconduct allegations against her is powerful, objective evidence of retaliatory motive reflected in the record (¶¶ 40, 73, 100–101).

The remaining objective evidence reinforces the inference. Between March 20 and April 1, 2025, Plaintiff petitioned the County Attorney and the court in writing—providing a first-hand account, submitting Brady and exculpatory materials, filing ADA accommodation requests for S.J.K., and reporting renewed exploitation—all protected activity (¶ 100). In his April 1, 2025 report, filed six days before the warrant, Plaintiff expressly stated he feared retaliation for reporting; the retaliation he predicted followed within the week (¶¶ 54–58). Kimberly Kennedy, a similarly situated advocate who reported the same account by sworn affidavit, was not arrested (¶ 102). The affidavit was unusually thin compared to Reamer's detailed work elsewhere in the same investigation (¶ 65). And it used Plaintiff's protected reporting and disability advocacy as the evidence of crime. At the pleading stage, that states a plausible First Amendment retaliation claim.

## X.    CONCLUSION

The affidavit alleged no statutory means of witness tampering and omitted the facts that defeated probable cause. Defendant's motion leaves most of Plaintiff's well-pleaded allegations unrebutted, and those allegations—accepted as true—defeat the motion. Reamer is not entitled to qualified immunity at the pleading stage. Plaintiff respectfully requests that the Court deny the motion. Alternatively, if the Court finds any claim insufficiently pleaded, Plaintiff requests leave to amend rather than dismissal with prejudice.

Respectfully submitted,

/s/ James Louis Roden Jr.
James Louis Roden Jr.
Plaintiff, Pro Se
1005 Beaumont Street
League City, Texas 77573
(210) 482-0802
jimlouisroden@gmail.com

## CERTIFICATE OF SERVICE

I certify that on the 28th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve notice on all counsel of record, including counsel for Defendant Reamer (Wright & Greenhill, P.C.) and counsel for Defendant County of Guadalupe.

/s/ James Louis Roden Jr.
James Louis Roden Jr.

19