**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JAMES LOUIS RODEN JR., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 5:26-cv-00054-XR |
| | § | |
| ELAINE MICHELLE REAMER, and | § | |
| COUNTY OF GUADALUPE, TEXAS, | § | |
|     Defendants. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
GUADALUPE COUNTY'S RULE 12(b)(6) MOTION TO DISMISS**

TO THE HONORABLE XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE:

Plaintiff James Louis Roden Jr., pro se, respectfully files this Response in Opposition to Defendant Guadalupe County's Rule 12(b)(6) Motion to Dismiss (Dkt. 18), and would show the Court as follows:

## I.     INTRODUCTION

Guadalupe County's motion does not engage the claims Plaintiff actually pleaded. As to Plaintiff's disability claim, the County argues that Shelby Koelle was not "denied participation" in a County service on the basis of her disability—an element of a Title II discrimination claim Plaintiff never brought. Plaintiff pleads a Title V and Section 504 retaliation claim: he sues as an individual retaliated against for his disability advocacy, not as a disabled person denied a service, and not on Shelby's behalf. As to Plaintiff's Monell claim, the County answers only a single "pattern of prior incidents" theory and argues the related warrants "arise from the same investigation." But Plaintiff pleads municipal liability through a final-policymaker decision, a specifically pleaded sheriff-side custom, and a documented failure to correct after notice to the

1

Sheriff—routes the County never addresses. Because the motion attacks claims Plaintiff did not plead and ignores the claims he did, it should be denied.

One further matter applies across the entire motion. The County bears the burden on its Rule 12(b)(6) motion, and it is settled that a party may not raise new arguments for the first time in a reply brief, where the non-movant has no opportunity to respond; such arguments are waived. See, e.g., Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010); Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, 315 (5th Cir. 2008). Plaintiff, who proceeds pro se, respectfully requests that the Court confine its consideration to the grounds actually raised in the County's motion as to every count, and treat any argument first advanced in reply—whether directed at the disability retaliation claim, the Monell claim (Count V) including the final-policymaker route and the materials incorporated at Count V, or any other matter Plaintiff addresses herein—as waived. Plaintiff stands ready to address any properly raised argument and asks only the opportunity to do so before it is decided against him.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. Webb v. Town of St. Joseph, 925 F.3d 209, 214 (5th Cir. 2019). A pro se complaint is held "to less stringent standards than formal pleadings drafted by lawyers" and is liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). Documents attached to or incorporated by reference in the complaint, and central to the plaintiff's claims, are considered part of the pleadings at this stage. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th

Cir. 2000). A motion to dismiss tests the sufficiency of the pleadings, not the weight of the evidence; and a movant who does not address a claim cannot obtain its dismissal.

### III.    PLAINTIFF PLAUSIBLY PLEADS A TITLE V / SECTION 504 RETALIATION CLAIM, AND THE COUNTY ATTACKS A CLAIM PLAINTIFF DID NOT BRING

The County's sole argument against Plaintiff's disability claim is that Plaintiff "failed to assert that he was engaging in any" protected activity, reasoning that "Plaintiff cannot plausibly plead that Shelby was denied any participation in any activity by Guadalupe County on the basis of her disability." (Mot. ¶ 19.) That misapprehends the claim. Plaintiff does not assert a Title II disability-discrimination claim, and he does not sue on Shelby's behalf. Plaintiff pleads the opposite: he "does not sue as S.J.K. and does not assert an independent disability-discrimination claim on his own behalf," but sues "as an individual retaliated against for aiding and encouraging S.J.K.'s exercise of disability-related rights and access to government processes." (Compl. ¶ 111.) The claim is retaliation and interference under Title V of the ADA, 42 U.S.C. § 12203(a)–(b), and Section 504. (Compl. ¶¶ 103–112.) Whether Shelby was "denied participation" in a County service is not an element of that claim. The County's motion does not engage the claim Plaintiff actually pleaded.

#### A. The legal standard for a Title V / Section 504 retaliation claim.

Title V protects "any individual" from retaliation, coercion, intimidation, threats, or interference because that individual opposed disability-based discrimination or "aided or encouraged any other individual in the exercise or enjoyment of" rights protected by the ADA. 42 U.S.C. § 12203(a)–(b). The protection is not limited to disabled persons; it extends to advocates who assist them. To state a prima facie retaliation claim under the ADA and Section 504, a plaintiff must allege that (1) he engaged in a protected activity; (2) he suffered an adverse action; and (3) a

causal link connects the two. See Lyons v. Katy Indep. Sch. Dist., 964 F.3d 298, 304 (5th Cir. 2020); Feist v. La. Dep't of Justice, 730 F.3d 450, 454 (5th Cir. 2013). A plaintiff need not be correct that the underlying conduct violated the ADA; a reasonable, good-faith belief that he was engaged in protected activity suffices. At the pleading stage, the causal-link element is satisfied where the protected activity and the adverse action are "not wholly unrelated," and close temporal proximity alone supports the inference. See Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th Cir. 2001).

**B. Plaintiff pleaded protected activity: disability advocacy for two intellectually disabled women.**

Plaintiff pleaded, in detail, that he engaged in ADA-protected advocacy. He informed County officials that S.J.K. is intellectually and developmentally disabled (Full Scale IQ of 55, unable to read or write); requested disability accommodations for her, including a court-appointed support person and simplified communication; asked the court to appoint a neutral Guardian ad Litem; identified himself as S.J.K.'s advocate; and sought to ensure that S.J.K. had meaningful access to prosecutors and the court. (Compl. ¶¶ 44, 106.) He likewise advocated for Jamie Walker, a documented intellectually disabled domestic-violence victim, asking officials to account for both women's disability-related vulnerabilities in the criminal process. (Compl. ¶ 107.) These allegations are not conclusory; they are documented in the contemporaneous record Plaintiff incorporated as Exhibit D, which includes his March 23, 2025 ADA Accommodation Request filed in the related criminal cause and served on the County Attorney's Office; his written notice to County personnel that S.J.K. could not read or write and that text-only communication failed to accommodate her; his request for a Guardian ad Litem and a replacement advocate; and his disability-based reporting concerning S.J.K.'s care. Advocacy on behalf of a disabled person's

access to government processes is precisely the protected activity Title V and Section 504 secure for "any individual." 42 U.S.C. § 12203(a)–(b).

**C. Plaintiff independently pleaded interference under § 12203(b): the County repurposed his protected advocacy itself as the basis for a felony arrest.**

Section 12203(b) provides a basis for liability distinct from retaliation. It makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual" on account of his having "aided or encouraged any other individual in the exercise or enjoyment of" ADA-protected rights. 42 U.S.C. § 12203(b). Unlike the retaliation prong, interference does not depend on a McDonnell Douglas burden sequence; it asks whether the defendant's conduct interfered with protected advocacy. Plaintiff pleads precisely that. The County "used the same disability-related advocacy communications as part of the criminal narrative against Plaintiff," did not treat his accommodation efforts as protected, and instead "stripped" those communications "of their context and repurposed [them] as evidence of supposed witness tampering in a 1st degree felony arrest warrant affidavit seeking up to 99 years in prison." (Compl. ¶ 108.) Turning a person's ADA advocacy into the very evidence used to arrest him is interference with that advocacy in the most direct sense.

The interference is visible on the face of the warrant itself, not merely inferred. The accusation Cody Koelle actually made against Plaintiff was that Plaintiff forged the November 2024 affidavit and signature—a forgery allegation, not witness tampering, and one for which Plaintiff was never charged. (Compl. ¶ 28.) Rather than pursue the accusation actually made, the affidavit "shifted to Plaintiff's advocacy for S.J.K." (Compl. ¶ 28), and rested the witness-tampering charge on Plaintiff's own communications—the recordings, transcripts, and FaceTime videos of his advocacy for S.J.K., including his contacting prosecutors with S.J.K. on the phone

5

so that she could be heard. (Compl. ¶¶ 34, 108.) The County took those protected advocacy communications and recast them, stripped of context, as the witness-tampering offense itself. (Compl. ¶ 108.) Where an officer abandons the accusation actually made and reaches instead for the target's disability advocacy to manufacture a different charge, the interference with that advocacy is not a matter of inference—it is the visible structure of the warrant. Removing a disabled person's documented advocate through felony arrest predictably interfered with S.J.K.'s and Jamie's exercise of their ADA rights by stripping them of the person aiding their access to the criminal process, and it did so by penalizing the advocate for that very aid. That is precisely the conduct § 12203(b) forbids.

That Plaintiff later disclaimed any role as counsel and sought to step back from an active courtroom posture does not defeat the interference claim; it confirms it. (Compl. ¶ 45.) Section 12203(b) turns on the County's motive in acting against Plaintiff for his protected advocacy, not on whether he remained an active advocate at the moment of arrest. A plaintiff who curtailed his own advocacy in the face of escalating official pressure has experienced the chilling effect the statute is designed to prevent; the chilling of advocacy is the injury, not a defense to it. The County's motion does not address the § 12203(b) interference theory at all—it argues only that S.J.K. was not "denied participation" in a County service (Mot. ¶ 19), an element of a Title II claim Plaintiff never brought—so the interference claim is unrebutted and survives. See Webb, 925 F.3d at 214.

### D. Plaintiff pleaded an adverse action that would deter advocacy.

The adverse action is severe and obvious: Plaintiff was arrested on a first-degree felony witness-tampering charge carrying a potential 99-year sentence, booked, and placed under a $100,000 bond and felony conditions. (Compl. ¶¶ 6, 108.) A retaliation plaintiff need only show

action that a reasonable person would find materially adverse—action likely to dissuade protected activity. A felony arrest is the paradigm of such action. As Plaintiff pleads, the County's conduct "would deter a reasonable family advocate, mandated reporter, teacher, or minister from assisting an intellectually disabled victim in seeking meaningful access to prosecutors, law enforcement, and the court." (Compl. ¶ 112.)

### E. Plaintiff pleaded causation by both recognized methods.

Plaintiff pleaded causation by both methods the Fifth Circuit recognizes—direct use and temporal proximity. First, and most directly, the County did not merely arrest Plaintiff after his advocacy; it built the criminal accusation out of that advocacy. Plaintiff pleads that the County "used the same disability-related advocacy communications as part of the criminal narrative against Plaintiff," "stripped" those communications "of their context," and "repurposed" them "as evidence of supposed witness tampering." (Compl. ¶ 108.) The warrant affidavit drew on the very recordings, calls, and communications through which Plaintiff sought disability accommodations and access for S.J.K. (Compl. ¶¶ 46–48, 110.) When the protected activity is itself converted into the predicate for the adverse action, causation is alleged on the face of the affidavit's own reliance.

Second, the temporal proximity is extraordinarily close. Plaintiff's ADA filings and advocacy occurred in March 2025, and his April 1, 2025 mandated report concerned renewed exploitation of an intellectually disabled adult; the County sought the warrant six days later, on April 7, 2025. (Compl. ¶¶ 56, 110.) A six-day interval is far within the period the Fifth Circuit treats as supporting prima facie causation, and it is reinforced by the contrast Plaintiff pleads between the County's urgency in arresting the advocate and its delay in acting on the abuse he reported. (Compl. ¶¶ 57, 61.) Together, the County's direct use of the advocacy communications and the close timing comfortably satisfy the "not wholly unrelated" pleading standard.

**F. The County's footnote concerning Jamie does not defeat the claim.**

The County suggests in a footnote that, to the extent Plaintiff's advocacy for Jamie is protected, he "cannot articulate any retaliation" because he was "not arrested for tampering with a witness with regard to Jaime." (Mot. ¶ 19 n.32.) That misses the claim twice over. Plaintiff's protected advocacy was for S.J.K.'s disability access as well as Jamie's, and the retaliatory adverse action—the felony tampering arrest—was directed at Plaintiff for that advocacy regardless of which related cause number the charge was filed under. Title V asks whether Plaintiff was subjected to an adverse action because of his protected advocacy, not whether the charging instrument named the disabled person he advocated for.

**G. Section 504 and the good-faith standard.**

The same allegations state a retaliation and interference claim under Section 504 of the Rehabilitation Act, which Plaintiff pleads on the County's receipt of federal financial assistance for law-enforcement, victim-services, and court-access programs. (Compl. ¶¶ 104–105.) And because a plaintiff need only have held a reasonable, good-faith belief that he was engaged in protected activity, the County cannot defeat the claim by disputing whether Shelby was ultimately "entitled" to any particular accommodation. Plaintiff's requests for a support person, simplified communication, and a Guardian ad Litem for an adult with a Full Scale IQ of 55 were manifestly reasonable and made in good faith. At the pleading stage, that is more than sufficient. The motion should be denied as to Count IV.

## IV.    PLAINTIFF PLAUSIBLY PLEADS MONELL LIABILITY AGAINST GUADALUPE COUNTY

The County's motion treats Count V as though it pleaded a single theory—an unwritten "pattern" of numerous prior incidents—and then argues that the related warrants "arise from the

8

same investigation" and so cannot be a pattern under Martinez v. Nueces County, 71 F.4th 385 (5th Cir. 2023). (Mot. ¶¶ 6–11.) That is not the claim Plaintiff pleaded. Plaintiff pleads municipal liability through three independent routes, each grounded in well-pleaded facts the County does not address: (A) a final-policymaker decision, because in Texas the sheriff is the County's final policymaker for law enforcement and a single decision in that sphere binds the County; (B) a specifically pleaded sheriff-side custom of converting prosecutor-routed, defense-connected accusations into felony warrants without independent verification; and (C) a documented failure to correct after written notice to the Sheriff himself. The County's motion engages only the pattern theory—and only part of it—so it does not carry its burden as to Count V.

**A. In Texas, the sheriff is the County's final policymaker for law enforcement, so a single decision within that sphere can establish liability—and no "written policy" is required.**

Plaintiff pleads, and binding precedent confirms, that "in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of the delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected." Turner v. Upton County, 915 F.2d 133, 136 (5th Cir. 1990); accord McMillian v. Monroe County, 520 U.S. 781, 785 (1997) (citing Turner). (Compl. ¶ 114.) Because of that status, "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity." Bennett v. Pippin, 74 F.3d 578, 586 (5th Cir. 1996) (quoting Brown v. Bryan County, 67 F.3d 1174, 1183 (5th Cir. 1995)). And "when a final policymaker makes the relevant decision, and when that decision is within the sphere of the policymaker's final authority, the existence of a well-established, officially-adopted policy will not insulate the municipality from liability." Id.

Two consequences follow. First, the County's lead argument—that Plaintiff "fails to identify any written policy" (Mot. ¶ 8)—is beside the point. A facially unconstitutional written

9

policy is one route to liability, not a prerequisite; its absence does not defeat a custom or a final-policymaker claim. See Verastique v. City of Dallas, 106 F.4th 427, 432 (5th Cir. 2024). Second, and dispositively, this route removes the County's "one investigation, not a pattern" argument from the analysis entirely. A single decision by the final policymaker establishes liability; no pattern of prior incidents is required. Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986) (pleaded at Compl. ¶ 114); Bennett, 74 F.3d at 586. The County's Martinez "same investigation / no pattern" argument is therefore directed at a requirement the final-policymaker route does not impose. Where liability rests on the law-enforcement decision of the office that holds final law-enforcement authority for the County, Plaintiff need only plead that the challenged conduct was the act of that office. Plaintiff pleads exactly that. (Compl. ¶¶ 114–116.)

The pleaded facts, and the record incorporated by reference at Count V (Ex. F), identify a discrete final-policymaker decision that needs no pattern to bind the County. Plaintiff pleads that the Sheriff's Office classified Dolores Roden's sworn criminal complaint against Cody Koelle—expressly styled a criminal complaint alleging aggravated perjury, false report, and tampering with a governmental record—as "Civil" and declined to investigate it, routing it instead to the County Attorney's Office. (Compl. ¶ 119.) Plaintiff's own pleading characterizes this as "selective investigative treatment." (Compl. ¶ 119.) That was not a clerical act of a records custodian. The decision whether to investigate an alleged crime is a core law-enforcement function within the Sheriff's exclusive final authority, and the incorporated record reflects that the Sheriff himself and his command staff—Sheriff Ray, Sgt. Mann, Captain MacHost, and Chief Deputy Skrzycki-Pfiel—were directly addressed on, and on notice of, that classification and the refusal to investigate. (Ex. F.) A decision to decline criminal investigation, made or ratified by the County's

10

final law-enforcement policymaker, is a single policymaker decision that binds the County under Pembaur and Bennett—and Martinez's pattern requirement does not reach it.

Notably, the County's motion never engages this final-policymaker route at all. Its entire Monell argument is directed at the pattern, failure-to-train, and ratification theories; it does not address Plaintiff's pleaded final-policymaker allegation (Compl. ¶ 114), the single-decision rule of Pembaur, Turner, and Bennett, or the discrete selective-investigation decision described above. A movant bears the burden on a Rule 12(b)(6) motion, and a motion that does not address a pleaded basis for liability cannot obtain its dismissal. Webb, 925 F.3d at 214. On that ground alone— independent of every other route—Plaintiff's final-policymaker theory survives.

**B. Plaintiff pleads a specific sheriff-side custom, not a conclusory one.**

Independent of the single-decision route, Plaintiff pleads a custom with concrete content: Sheriff's Office personnel accepted accusation materials that the County Attorney's Office curated and routed from an adversarial, defense-connected source, and converted those materials into first-degree felony warrant affidavits without independently interviewing the central witnesses, verifying the underlying claims, or fairly disclosing the source to the magistrate. (Compl. ¶¶ 115–116.) That is not a "formulaic recitation of the elements." It identifies who acted, what they did, and what they omitted. The County's own authority asks only that the description of the practice "contain specific facts" rather than conclusions. See Murray v. City of Copperas Cove (cited Mot. ¶ 9). Plaintiff's does.

Plaintiff's well-pleaded allegations supply those specific facts. Plaintiff pleads that the accusation did not arise from a neutral investigation but came through the County Attorney's Office after materials were received from Michael Walker's defense side and from Cody and Andrea Koelle, and that the affiant acknowledged as much in the related affidavits. (Compl. ¶¶ 34,

46.) He pleads that sheriff personnel converted that stream into first-degree felony warrants without interviewing the accused or the alleged victim, without verifying the disputed forgery claim, and without identifying a single coercive act, threat, benefit, or quoted statement attributable to Plaintiff. (Compl. ¶¶ 47–48, 59, 118.) The incorporated record corroborates these allegations: Plaintiff pleads that the affidavit omitted the defense-connected origin and nature of the witness-tampering allegation, and that Michael Walker's defense team urged or persuaded the production of the materials that the County Attorney's Office then routed to the affiant. (Compl. ¶¶ 34, 69; see Ex. A.) An accusation originating with the adverse party's defense, routed through the prosecutor and adopted without independent law-enforcement verification, is the antithesis of the neutral probable-cause review the Fourth Amendment requires.

**C. The County's "same investigation" argument fails because Plaintiff pleads distinct, separately documented County decisions outside the warrant investigation.**

The County's central contention is that the related warrants and decisions "arise from the same investigation" and are therefore a single incident under Martinez. (Mot. ¶ 11.) That fails on the face of the pleadings, because Plaintiff pleads County decisions that are not part of the warrant investigation at all. Most clearly, Plaintiff pleads the County's handling of Dolores Roden's sworn criminal complaint against Cody Koelle—a separate matter, filed months after the warrants, supported by notary verification, a recorded admission, and Cody's documented false-report history—which the Sheriff's Office "reviewed" and then forwarded to the County Attorney's Office, stating that the County Attorney's Office, not the Sheriff's Office, would conduct any investigation. (Compl. ¶ 119.) The incorporated record confirms the point: the Sheriff's Office's own incident report—bearing the affiant-investigator as the reporting officer—classified that sworn, statute-citing criminal complaint as "Civil," dispositioned it "Cleared—Report Taken," and

12

reflected that the office would not investigate the alleged offense. (See Ex. F.) A complaint expressly styled as criminal, sworn under penalty of perjury, was thus never treated or recorded as a criminal matter at all.

The contrast is itself probative of the pleaded two-tier custom. Sheriff personnel treated an unverified, defense-routed accusation against Plaintiff as warrant-ready within days. They treated the opposite-direction complaint—Dolores Roden's sworn criminal complaint against the defense-aligned accuser, supported by notary verification, a notary log, a recorded admission by Cody, and Cody's criminal-history and false-report records (Ex. F)—as non-criminal, and never investigated it at all. The complaint that produced three first-degree felony arrests was less documented than the complaint the County buried. (Compl. ¶¶ 119, 123.) Plaintiff also pleads a second discrete decision outside the warrant's merits: the County's failure to assign a conflict-free investigator after S.J.K. swore that the affiant herself had refused to believe her and tried to redirect her account, leaving the same conflicted officer as investigator-affiant. (Compl. ¶ 120.) Martinez requires that prior indications "point to the specific violation in question," 71 F.4th at 389; here, the specific violation—sheriff personnel abdicating independent investigation in favor of a prosecutor-routed narrative—is exactly what the separate complaint-handling and conflict decisions also display.

### D. Plaintiff pleads failure to correct after notice to the final policymaker.

The County argues that ratification is confined to "extreme" Grandstaff-type facts. (Mot. ¶¶ 16–17.) But Plaintiff does not rest on ratification of a single dramatic act; he pleads that senior County officials—including Sheriff Ray himself, the final policymaker—received repeated written notice that the warrant process was defective, that exculpatory evidence had been omitted, that Cody's credibility was contradicted, and that protected reporting and disability advocacy had been repurposed into criminal process, and that no corrective action followed. (Compl. ¶ 125.) The

incorporated record corroborates that notice and the absence of correction—reflecting a May 13, 2025 letter to Sheriff Ray describing the arrest without any interview or investigation, formal notices and follow-ups in October and November 2025, and the Sheriff's Office's own response confirming that it would not investigate and that the County Attorney's Office would handle the matter. (See Ex. F.) A final policymaker's knowledge of an ongoing constitutional injury and failure to correct it is probative of custom and deliberate indifference, independent of whether the underlying act is "extreme." The County's Grandstaff authority addresses a narrower point— ratification of a subordinate's isolated act—and does not answer Plaintiff's notice-and-failure-to-correct allegations.

**E. The failure-to-train sub-theory is pleaded in the alternative and need not carry the claim.**

Plaintiff also pleads a failure to train and supervise sheriff personnel on their Franks disclosure duties, the verification of credibility-impaired witnesses, and the protection of mandated reporters. (Compl. ¶¶ 122, 124.) Plaintiff recognizes that, in this Circuit, the single-incident route to a failure-to-train claim is narrow and is generally reserved for cases involving a complete absence of training. See Pineda v. City of Houston, 291 F.3d 325, 334–35 (5th Cir. 2002); World Wide St. Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 756 (5th Cir. 2009). The Court need not reach that theory. Plaintiff's Monell claim survives on the final-policymaker, custom, and failure-to-correct routes set out above, and the training allegations are pleaded as additional support, not as the sole basis for liability.

**F. Plaintiff pleads that the custom was the moving force behind his injury.**

Finally, Plaintiff pleads causation. Had sheriff personnel conducted any independent investigation—interviewing the accused or the alleged victim, fairly presenting Plaintiff's own

recordings in context rather than stripped of it, accounting for S.J.K.'s consistent exculpatory account, or disclosing that the materials reached the affiant through a defense-connected, prosecutor-routed stream—the corrected affidavit would not have supported probable cause, and the warrant would not have issued. (Compl. ¶¶ 126–127.) That is the required causal link between the pleaded custom and the constitutional violation. As Plaintiff pleads the point, the repeated conversion of an unverified, defense-routed accusation stream into three coordinated first-degree felony warrants—without interviews, corroboration, source disclosure, or fair presentation of exculpatory evidence—reflects custom and supervisory abdication, "not a one-off mistake." (Compl. ¶ 118.) The motion should be denied as to Count V.

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Guadalupe County's Rule 12(b)(6) Motion to Dismiss in its entirety. In the alternative, should the Court find any pleading deficiency, Plaintiff respectfully requests that any dismissal be without prejudice and that Plaintiff be granted leave to replead.


Respectfully submitted,

/s/James Louis Roden Jr.
James Louis Roden Jr.
Plaintiff, Pro Se
1005 Beaumont St.
League City, TX 77573
(210) 482-0802
jimlouisroden@gmail.com

15

**CERTIFICATE OF SERVICE**

I certify that on June 28th, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of this filing to all counsel of record, including counsel for Defendant Guadalupe County and Defendant Reamer.

/s/James Louis Roden Jr.
James Louis Roden Jr.