UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES LOUIS RODEN JR,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | § | Case No. SA-26-CA-00054-XR |
| ELAINE MICHELLE REAMER,<br>COUNTY OF GUADALUPE, TEXAS,<br>*Defendants* | §<br>§<br>§<br>§ | |

**PLAINTIFF'S MOTION FOR JUDICIAL NOTICE UNDER FEDERAL RULE OF EVIDENCE 201**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

1. Plaintiff James Louis Roden, Jr., appearing pro se, moves under Federal Rule of Evidence 201 for judicial notice of fifteen categories of court records. Plaintiff requests notice of the **existence and contents** of these records only. Plaintiff does *not* ask the Court to accept as true any matter asserted within them, and the relief requested does not depend on the truth of any such matter.

## I. LEGAL STANDARD

2. A court must take judicial notice of an adjudicative fact if a party requests it and supplies the necessary information. Fed. R. Evid. 201(c)(2). Notice is proper where the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). It may be taken "at any stage of the proceeding." Fed. R. Evid. 201(d).

3. The Fifth Circuit permits judicial notice of filings and transcripts in other judicial proceedings. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998). Notice extends to

the fact that a document was filed and to the statements it contains, though not to the truth of matters asserted within it. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). A court may notice its own records without converting a Rule 12(b)(6) motion into one for summary judgment. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

4. Every item below is either (a) a filing in a case pending before this Court, (b) a certified transcript of a public judicial proceeding, or (c) a docket entry in a state court of record. Each is capable of ready and accurate determination. None is subject to reasonable dispute.

## II. THE LIMITED PURPOSE OF THIS REQUEST

5. Because the distinction is dispositive of any objection, Plaintiff states it plainly. Plaintiff does not ask the Court to find that S.J.K. is or is not intellectually disabled; that her pregnancy was or was not planned; that Michael Walker was or was not violent; or that any statement quoted below is accurate. Whether those assertions are true is immaterial to this motion.

6. What Plaintiff asks the Court to notice is that **these filings exist and say what they say**. That a party filed a motion advancing a stated position is a fact about the docket, not a fact about the world. That a witness gave identified testimony at a public proceeding is a fact established by a certified transcript. That an indictment issued on a date is a fact established by the clerk's record.

7. Plaintiff does not request notice of any *finding of fact* made in another proceeding. He is aware that this Circuit has expressed "difficulty conceiving of an adjudicative fact found in a court record that is not subject of reasonable dispute." *Taylor*, 162 F.3d at 830 n.18. That concern does not arise here. No item below asks the Court to adopt a finding, a credibility determination, or a conclusion reached by another tribunal. Each asks only that the Court notice that a document

exists and contains identified language, or that identified testimony was given at a public proceeding — facts established by the filings and certified transcripts themselves.

8. Each item is offered for a purpose that does not require its truth.

## III. CERTIFIED TRANSCRIPTS — STATE v. MICHAEL ALLEN WALKER, CAUSE NO. 24-1776-CR-B (NOV. 3, 2025)

9. The following statements and testimony appear in the certified reporter's transcripts of a public sentencing proceeding in the 25th Judicial District Court of Guadalupe County, Texas, before Richard E. Roberts, Jr., CSR. Plaintiff requests notice that the statements were made and the testimony given. Items 1 through 9 are presented in the chronological order of the events described.

10. The certified transcripts of both days of the proceeding are attached together as Exhibit A. Items 1 through 9 are drawn from that exhibit.

### *Item 1 — Statements of the Assistant County Attorney Regarding the Plea Negotiation*

11. Plaintiff requests notice that Assistant County Attorney Jonathan Amdur stated on the record:

(a) (Day 1, p. 11, ll. 7–16) "Mr. Green did, to his credit, an amazing job of coming in at the right time, meeting with us, showing us the evidence that he has, and convincing me, quite frankly, that the interest of justice in this case would not necessitate our prosecuting him at the highest levels, right? Because we could have had him as first degree and second degrees. But instead we arrived at what I thought was a reasonable middle ground, which is an open plea for time on a third degree."

(b) (Day 1, p. 11, ll. 16–23) that the reduction followed from "whether or not there is reasonable doubt that — that the sexual relations were really tantamount to aggravated sexual assault or for that matter whether she even had the capacity to consent," and that "[t]here's no refuting that she was legally the stepdaughter, and this was in fact prohibited sexual conduct."

(c) (Day 2, p. 59, ll. 5–8) that "at that meeting we indicated a willingness to look into" the matter, and shortly afterward "a willingness to work out a plea offer on much more lenient charges than aggravated sexual assault."

(d) (Day 1, pp. 17–18) that, asked by the Court whether the State agreed S.J.K. "was capable of consenting," he answered: "we're not in agreement on anything because there is so much conflicting information out there. And being completely candid the Rhoden family . . . provided us with a report from a psychiatrist whose last name was Rhoden on the letterhead, and then, I think, it was a few days later sent us a corrected report . . . So I don't know what was fabricated and what was not. And I think that's a big part of it."

(e) (Day 1, p. 18, ll. 10–19) that, immediately following that answer, counsel for Michael Walker stated: "As far as the indictments concerned too, Judge, at the very beginning of this whole process I filed a motion to quash, because the language in the statute didn't specify whether or not he was being prosecuted under the prohibited sexual contact as a stepfather or as sexual relations with a mentally retarded person. At that time the State clarified this was because it was a stepdaughter-stepfather relationship and that's why they're going forward with that specific charge."

(f) (Day 1, p. 18, ll. 20–23) that the Court then asked, "And that's what he's pled guilty to?" and counsel answered, "Yes, sir. And that's what he's pleading guilty to, Judge."

*Item 2 — Direct Examination of the Defense Investigator*

12. Plaintiff requests notice that Michael Walker's investigator testified on direct examination by his counsel (Day 2, p. 53, ll. 9–15):

(a) Asked whether she had "come with me to meet with the D.A.'s office to tell them this information," she answered: "We did twice."

(b) Asked "What happened after that?" she answered: "They were then charged — several family members were charged with witness tampering."

(c) Asked whether those charged were "Jaime, James Roden and James Roden, Sr.," she answered: "Correct."

*Item 3 — Cross-Examination of the Defense Investigator*

13. Plaintiff requests notice that Assistant County Attorney Amdur stated on cross-examination of that witness (Day 2, p. 61, ll. 9–21):

(a) Asked whether "Andrea or Cody do anything with that information to the detriment of your client," the witness answered: "No."

(b) "All right. So as far as this case is concerned, it was wholly ineffective. And it just scored three of them — actually, and Jaime as well with additional charges, right? . . . They're plotting, it had zero affect on this case — or zero or a negative affect on this case, right? I mean it didn't make us or compel us to come down harder on this case. Like we saw the transparency and we offered a more lenient deal because of the craziness of their efforts at convoluting all of these cases."

*Item 4 — Statements Identifying the Source of the Report to Adult Protective Services*

14. Plaintiff requests notice that Michael Walker's counsel and investigator identified Plaintiff by name as the person who contacted Adult Protective Services, and advanced the theory that the report generated the allegations against their client:

(a) (Day 2, p. 50, ll. 7–21) Asked “Are you aware of who called the Adult Protective Services?” the investigator answered: “James Roden, the uncle to the complainant.” Asked whether “senior [was] the one that called APS,” she answered: “Initially, it was Junior. It was the uncle.”

(b) (Day 1, p. 13, ll. 19–25) that counsel stated in opening: “Once the Rhoden family found out about Shelby being pregnant they started calling adult protective services. The narrative that's listed out in the PSI is based on the adult protective services narrative in their report. Which is all based on information that was fed to them by the Rhoden family not based on what Shelby actually told them.”

(c) (Day 2, p. 67, ll. 18–23) that counsel asked the investigator “who initially called APS?” and she answered “The Roden family,” and that counsel then elicited that the callers stated his client was “a convicted felon” and that “[h]e's not.”

(d) (Day 2, p. 71, l. 22) that counsel stated in closing: “from the very beginning the Roden family was out to get Michael Walker because they thought it was a rape from the beginning. That's why they called APS.”

(e) (Day 2, p. 72, ll. 10–13) that counsel stated in closing: “It wasn't until she took a two-hour ride with her grandfather, the father of the co-defendant, out to Houston. And they were talking all the way to Houston I'm sure, Judge, that she came up with the story that was rape.”

(f) (Day 2, p. 73, ll. 17–19) that counsel stated in closing that "all the other stuff that's come out, whether this is rape or she was forced to, I think it's fictitious and made up by the Roden family in order to get Jaime out of trouble that she got herself in."

(g) (Day 2, p. 73, ll. 22–25) that counsel stated the Piner report "was made after Shelby was with the Roden family for multiple days and then she went in to make this report."

(h) (Day 2, p. 74, ll. 8–11) that counsel stated the report's authors were "taking as fact the Roden" family's account.

***Item 5 — The Planned-Pregnancy Theory Presented by Michael Walker's Counsel***

15. Plaintiff requests notice that counsel for Michael Walker advanced, and his witnesses testified to, the theory that S.J.K.'s pregnancy was planned:

(a) (Day 1, p. 13, l. 11) that counsel stated in opening that S.J.K. "intentionally got pregnant and this was planned between all three of them, they all three wanted to have a kid," and that "[t]his is not rape. She did not make allegations of rape."

(b) (Day 1, p. 23, l. 4) that Michael Walker's former wife testified: "He loves her. She was planned. They planned her."

**(c)** (Day 1, p. 29, l. 1) that, asked on cross-examination whether she had said "that Mr. Walker wanted to have [N.K.], that was a planned pregnancy," the witness answered: "Yes."

(d) (Day 2, p. 51, ll. 20–24) that Michael Walker's investigator testified the statement she obtained from S.J.K. was "that the child was planned," and that "I specifically asked her if they wanted this baby and if they planned to have this baby and she responded with 'Yes.'"

(e) (Day 2, p. 74, ll. 14–17) that counsel stated in closing that "the first question was, 'Well, did you guys want this baby? Was this baby planned?' And Shelby said, 'Yes. Absolutely.'"

(f) (Day 2, p. 51, ll. 14–18) that, asked on direct examination "Did you have long conversations with Shelby?" the investigator answered: "I did not."

(g) (Day 2, p. 62, ll. 21–24) that, asked on cross-examination "How many times have you talked to her?" the investigator answered: "Once," and asked "How long was that conversation?" answered: "Not long. A minute."

(h) (Day 2, p. 63, ll. 5–8) that the investigator testified that from "my one-minute conversation, I didn't sense that I was talking to somebody who didn't understand."

***Item 6 — Testimony of Defendant Elaine Reamer***

16. Plaintiff requests notice that Defendant Reamer testified under oath at that proceeding, and that the transcript records the following:

(a) (Day 2, p. 34, ll. 11–15, on direct examination) Asked "[a]side from the fact that she was the stepdaughter, is there any question of capacity?" she answered: "There have been several tests or evaluations — I don't know what you would call it — done and it's been both sides, sir."

(b) (Day 2, p. 40, ll. 21–25, on cross-examination) Asked whether she "would agree with me that multiple evaluations were done on Shelby," she answered: "Yes, sir," and stated she "remember[ed] two evaluations being done."

(c) (Day 2, p. 46, ll. 1–4) Asked whether "when you went into that interview, you expected that Shelby had a significantly lower IQ than people gave her credit for," she answered: "Yes, sir."

(d) (Day 2, p. 46, ll. 5–8) Asked whether she told S.J.K., "Well, Shelby, you're a lot smarter than people give you credit for," she answered: "Yes, sir."

(e) (Day 2, p. 46, ll. 9–12) Asked whether "the people telling you that Shelby had a significantly lower IQ" were "the Roden family giving you this information," she answered: "Yes, sir."

(f) (Day 2, p. 46, ll. 22–25 and p. 47) Asked whether she was aware S.J.K. had "lived on her own before," had "paid her own bills before," and had "paid rent and for groceries and everything else on her own," she answered "Yes, sir" to each.

***Item 7 — Further Cross-Examination of the Defense Investigator***

17. Plaintiff requests notice that Assistant County Attorney Amdur elicited the following on cross-examination of Michael Walker's investigator:

(a) (Day 2, p. 53, ll. 5–7) Asked "So she was wanting him — she was going to pay him money for a false affidavit; is that correct?" the witness answered: "That's what it sounded like, yes."

(b) (Day 2, p. 60, ll. 5–11) that "these were affidavits to try to exonerate Jaime that were being discussed, right? The $8,000 was bond money for Jaime. Really it had nothing to do with this particular case, right?"

(c) (Day 2, p. 58, ll. 11–20) Asked "where does it talk about James, Sr. threatening in this document," the witness answered: "The third page. It says grandad." Asked "Not by name,

right?" she answered: "Correct." Asked "You're assuming that it is James Roden, Sr. though?" she answered: "Yes."

(d) (Day 2, p. 58, ll. 21–25) that "the State has filed charges — not indicted — both James, Sr., the father of Jaime; James, Jr., the brother of Jaime; and Jane I think is her name, the mother of Jaime," to which the witness answered: "Yes."

(e) (Day 2, p. 60, ll. 12–22) Asked whether she witnessed "any direct communication involving Jaime or her immediate family that related to conspiring to set up or frame or falsely accuse this defendant," or whether "it was more for the benefit of Jaime getting her out of jail or getting documentation to show that she was a victim in this," the witness answered: "All of the communication, the recordings and I don't know how many text messages I saw from Jaime, it was all with regard to Michael."

***Item 8 — Statements of the Assistant County Attorney in Final Closing***

18. Plaintiff requests notice that Assistant County Attorney Amdur stated in final closing at the November 3, 2025 sentencing proceeding:

(a) (Day 2, p. 75, ll. 17–22) that he wished to "finish the sentence that Mr. Green read from the last page of the report picking up from 'but due to power imbalance/differential, coercion and safety reasons, the client is likely telling the truth about being repeatedly raped by her stepfather, Michael Allen Walker.'"

(b) (Day 2, p. 76, ll. 6–12) that "State's Exhibit 11 is very clear that she may have been able to have the capacity to consent, but she absolutely has an intellectual disability," and that the report states "she may have mild to moderate intellectual mental disabilities."

(c) (Day 2, p. 76, ll. 13–17) that "these accusations did not begin once the Roden family got their hands on Shelby as Mr. Green is trying to portray. The problems — the cracks started to show on March 29th, 2022 when Shelby ran to the neighbors to report an assault."

(d) (Day 2, p. 76, ll. 22–25) that S.J.K.'s statement in State's Exhibit 9 and the photographic exhibits "all of that came in before she went to live with the Roden's before they got her on that long drive from Seguin to the greater Houston area."

(e) (Day 2, p. 77, ll. 4–14) that Jamie Walker "filed an affidavit of non-prosecution because ostensibly they were scared of the defendant. They were scared of the defendant because of what he did to her. He choked her. He threatened repeatedly, 'I'm going to kill you. I'm going to kill you' while he choked her out. The evidence says she passed out. She hit the floor and she came to as he was slamming her head on the floor, hence the goose egg."

(f) (Day 2, p. 77, ll. 13–14) that "the Roden family's getting ahold of Shelby a year later cannot explain away the goose egg."

(g) (Day 2, p. 78, ll. 23–25) that "Shelby was taken advantage of given the power imbalance."

(h) (Day 2, p. 78, ll. 17–21) that "Deputy Wheeler is saying Shelby had him write down her statement because she couldn't write. So if there's conflicting evidence later that says she actually can read and write, that does cloud things in terms of Shelby's ability to understand or Shelby's ability to even consent."

(i) (Day 2, p. 78, ll. 22–25) that "[i]t doesn't cloud anything about Shelby's fear of the defendant or . . . that Shelby has less than average intelligence and that Shelby was taken advantage of given the power imbalance."

(j) (Day 2, p. 79, ll. 1–5) that "[a]nd if the Roden's pointed out to her 'Shelby, this is wrong' — or if it hadn't been the Rodens who pointed it out to her, we can ask ourselves: Why didn't Jaime or why didn't the defendant point that out to her? That just shows how much more egregious this offense was."

***Item 9 — Testimony of Deputy Brendan Wheeler***

19. Plaintiff requests notice that Deputy Brendan Wheeler of the Guadalupe County Sheriff's Office testified under oath at that proceeding concerning his response to a call on March 29, 2022, and that the transcript records the following on direct examination:

(a) (Day 2, p. 11, ll. 14–25) that Jamie Walker stated her husband "started to choke her with his foreman up against the sink and brandished a knife in his off hand where he threatened to kill her," and that "during the time whenever he was pushing on her neck with the forearm she couldn't breathe. And she eventually lost consciousness and woke up on the floor."

(b) (Day 2, p. 12, ll. 16–22) that he observed "a small cut . . . on her left eyebrow," "a large knot on her forehead," and "some redness on her neck," and that the redness was consistent with being choked.

(c) (Day 2, p. 14, ll. 15–20) that State's Exhibit 1 was a photograph of a purse "which the defendant cut with a knife," and State's Exhibit 2 a photograph of "the knife that was found on the defendant's person."

(d) (Day 2, p. 17, ll. 6–10) that, asked why he filled out S.J.K.'s written statement for her, he answered: "I was told she couldn't write, so she explained to me what she had witnessed and I wrote it for her," and that he was so told "by both Shelby and Jaime."

## IV. RECORDS OF THIS COURT — RODEN SR. v. REAMER, NO. 5:26-cv-00081-XR

20. *Roden Sr. v. Reamer*, No. 5:26-cv-00081-XR, is pending before this Court. Defendant Elaine Michelle Reamer is a defendant in both actions and is represented by the same counsel in both. The records identified in Items 10 and 11 are therefore records of this Court, which it may notice on its own. Fed. R. Evid. 201(c)(1).

***Item 10 — Defendant Reamer's Rule 12(b)(6) Motion to Dismiss***

21. Plaintiff requests notice that Defendant Reamer filed a Rule 12(b)(6) motion to dismiss in that action, and that the motion states:

(a) that a warrant affidavit is "truthful" where "the information put forth is believed or appropriately accepted by the affiant as true";

(b) that Defendant Reamer's affidavit satisfied that standard because "it faithfully conveyed the allegations contained within signed, sworn and notarized affidavits"; and

(c) that under *Freeman v. County of Bexar*, 210 F.3d 550, 555 (5th Cir. 2000), "reliance upon the exact wording of [witnesses'] sworn statements is undoubtedly reasonable."

22. Plaintiff further requests notice that the same motion states:

(d) that "on January 31, 2025, both Cody and Andrea appeared to aver to affidavits that accused Plaintiff **and his son James Roden Jr.** of waging a relentless pressure campaign 'to sign an affidavit that they drafted'"; and

(e) that "Sgt. Reamer truthfully averred in her probable cause affidavit that she had **reviewed** sworn affidavits purporting to be from Cody and Andrea Koelle," and that those affidavits "were signed and notarized and accused Plaintiff of witness tampering."

23. Plaintiff further requests notice of the sourcing language in the two arrest warrant affidavits Defendant Reamer swore on April 7, 2025, and specifically:

(f) that the affidavit supporting the arrest of James Louis Roden, Sr. states: "From 3/17/2025, I have been receiving documentation from the Guadalupe County Attorney's Office that they had received from Michael Walker's attorneys"; and

(g) that the affidavit supporting the arrest of Plaintiff states: "From 3/17/2025 to 4/5/2025, I have been receiving documentation from the Guadalupe County Attorney's Office that is from the Defendant."

24. The affidavit described in subparagraph (f) is also attached to Defendant Reamer's motion in the companion action; the affidavit described in subparagraph (f) and (g) is also attached to Plaintiff's First Amended Complaint in this action as Exhibit A to that pleading.

25. Attached as Exhibit B.

***Item 11 — Exhibit 1 to That Motion: The Koelle Affidavits***

26. Plaintiff requests notice that Defendant Reamer attached to that motion, as her own exhibit, two sworn affidavits executed January 31, 2025 by Cody Lane Koelle and Andrea Koelle, each captioned in *State of Texas v. Michael Allen Walker*, Cause No. 24-1776-CR-B, and that those affidavits state:

(a) Andrea Koelle: "I have seen Shelby read, write, budget and take care of all her needs, including cooking."

(b) Andrea Koelle: "There are some people in her family who say that she is incapable of taking care of herself, but that is not true."

(c) Andrea Koelle: “I have decided to make myself available to testify on Michael's behalf.”

(d) Cody Lane Koelle: “I never saw Michael drunk, on drugs or violent towards anyone at all.”

(e) Cody Lane Koelle: “I believe this baby was planned.”

(f) Cody Lane Koelle: “If I were to be subpoenaed by the State or Micahel's defense, I will testify to the facts in this affidavit.”

(g) Andrea Koelle: “Shelby has made false allegations about a close friend of ours and even involved the police. She claimed that our friend physically hurt her and that is not true.”

(h) Andrea Koelle: that she “caught Shelby taking photos of a staged mess in our home because I believe she intended to try to involve CPS.”

27. Attached as Exhibit C.

## V. DOCKET AND CLERK RECORDS

### *Item 12 — The State's Charging Theory Against Michael Allen Walker*

28. Plaintiff requests notice of the contents of the State's Motion to Amend the Indictment in *State of Texas v. Michael Walker*, Cause No. 24-1776-CR-B, electronically filed August 29, 2024 at 1:39 p.m. and electronically certified by the Guadalupe County District Clerk, and specifically that the charging language the State proposed:

(a) sets out six counts;

(b) charges in Counts I through III Aggravated Sexual Assault, alleging that the act occurred "without the consent of the complainant, and the defendant, by acts or words, placed the complainant in fear that death or serious bodily injury would be imminently inflicted on the complainant, and the acts or words occurred in the presence of the complainant";

(c) charges in Counts IV through VI Prohibited Sexual Conduct, alleging only that the complainant was "a person the defendant knew to be, without regard to legitimacy, the defendant's stepchild"; and

(d) contains no allegation that the complainant had an intellectual disability, lacked the capacity to consent, or was unable to appraise or resist the conduct.

29. Attached as Exhibit D.

***Item 13 — The Charging Instrument Against Jamie Renee Walker***

30. Plaintiff requests notice of the contents of the indictment returned July 8, 2024 in *State of Texas v. Jamie Walker*, Cause No. 24-1775-CR-B, 25th Judicial District Court, Guadalupe County, Texas, certified by the District Clerk as a true and correct copy as filed and recorded, and specifically that:

(a) the indictment charges three counts of Aggravated Sexual Assault, first degree felonies;

(b) each count alleges that MICHAEL WALKER committed the underlying act "without the consent of the complainant";

(c) each count alleges as to Jamie Walker only that she "did then and there solicit, encourage, direct, aid, or attempt to aid MICHAEL WALKER to commit the offense of AGGRAVATED SEXUAL ASSAULT and defendant acted with the intent to promote or

assist the commission of the offense of AGGRAVATED SEXUAL ASSAULT by MICHAEL WALKER";

(d) the indictment alleges no independent act by Jamie Walker; and

(e) the indictment contains no allegation that the complainant had an intellectual disability or lacked the capacity to consent.

31. Attached as Exhibit D.

***Item 14 — The Plea Agreement in State v. Michael Allen Walker***

32. Plaintiff requests notice of the contents of the Plea Agreement filed July 2, 2025 in Cause No. 24-1776-CR-B, certified by the Guadalupe County District Clerk as a true and correct copy as filed and recorded, and specifically that:

(a) the agreement states that the defendant "will plead GUILTY . . . to the offense(s) of: Prohibited Sexual Conduct, a third-degree felony (Count 4) (Lesser-Included offense)";

(b) under "Term of Confinement" the agreement states: "Open, full range";

(c) among the conditions of the agreement, the State would "DM Count 1-3, 5-6";

(d) in the Defendant's Waiver of Rights and Judicial Confession, the defendant "JUDICIALLY CONFESSES and admits to committing the offense(s) of: Prohibited Sexual Conduct, a lesser-included offense as contained in Count 4"; and

(e) the agreement bears the signatures of counsel for the defendant, of Assistant County Attorney Jonathan Amdur for the State, and of the presiding judge, each dated July 2, 2025.

33. Attached as Exhibit E.

***Item 15 — Disposition of the Charges Against Jamie Renee Walker***

34. Plaintiff requests notice of the following, determinable from the Register of Actions maintained by the Guadalupe County District Clerk in Cause No. 24-1775-CR-B:

(a) that a Disposition was entered on February 18, 2026 by Judicial Officer Hines, Heather;

(b) that all three counts of Aggravated Sexual Assault against Jamie Renee Walker were dismissed; and

(c) that an Order of Dismissal was entered the same day.

35. Attached as Exhibit F.

## VI. DEFENDANTS' STATED OBJECTIONS

36. Plaintiff conferred with counsel for Defendants on September 16, 2026. Counsel responded that Defendants are opposed on two grounds: that the motion is inconsistent with the purpose of the Court's stay pending resolution of the Rule 12(b)(6) motions, and that briefing on those motions is complete. Plaintiff addresses each, and two further objections that may arise.

37. First, the stay. The stay protects Defendants from the burdens of litigation pending resolution of threshold immunity questions. This motion imposes none. It seeks no discovery, requires no production, no response, no deposition, and no expenditure by Defendants of any kind. It asks the Court to notice records already in existence — two of them filings of this Court, the remainder certified records of a state court of record. A motion that requires nothing of the opposing party does not implicate the burdens a stay of discovery exists to prevent. Rule 201(d) expressly permits notice "at any stage of the proceeding."

38. Second, closed briefing. This motion does not supplement the briefing or advance any argument on the pending motions. It identifies records and asks that they be noticed. Rule 201(c)(2) makes notice mandatory when a party requests it and supplies the necessary information, and Rule

201(d) sets no deadline. Plaintiff does not ask the Court to apply these records to any issue now before it, and reserves any argument concerning their significance for such briefing as the Court may permit. Should the Court prefer to defer consideration, the records will remain of record and available at any later stage.

39. Third, that notice would require accepting disputed facts as true. It would not. Plaintiff asks only that the Court notice the existence and contents of the records, a purpose the Fifth Circuit expressly permits. *Funk*, 631 F.3d at 783. No item requires the Court to resolve any factual dispute.

40. Fourth, that notice would convert the pending Rule 12(b)(6) motion into one for summary judgment. It would not. Consideration of matters of public record at the pleading stage does not effect conversion. *Norris*, 500 F.3d at 461 n.9; *Cinel*, 15 F.3d at 1343 n.6. Defendant Reamer has herself submitted exhibits with her Rule 12(b)(6) motion in this action.

41. Finally, Plaintiff notes that granting this motion prejudices no one. Two of the records are Defendant Reamer's own filings. The remainder are certified records of a state court. If the Court finds any item improper, it may decline that item without affecting the others.

## VII. RELIEF REQUESTED

42. Plaintiff respectfully requests that the Court take judicial notice of Items 1 through 15, for the limited purpose of establishing that the identified records exist, that they contain the language quoted, that the identified testimony was given, and that the identified dates and dispositions are as stated. Plaintiff does not ask the Court to accept any matter asserted within these records as true. In the alternative, Plaintiff requests that the Court take notice of such items as it finds proper.

Respectfully submitted,

/s/ James Louis Roden, Jr.
James Louis Roden, Jr.
Plaintiff, Pro Se
1005 Beaumont St. League City, TX 77573
(210) 482-0802
jimlouisroden@gmail.com

## CERTIFICATE OF CONFERENCE

On September 16, 2026, Plaintiff conferred by email with counsel for Defendants regarding the relief requested herein. Counsel responded September 17th, 2026. Defendants are opposed, stating that the motion would be inconsistent with the purpose of the Court's stay pending resolution of the Rule 12(b)(6) motions, and that briefing on those motions is complete. Defendants are therefore opposed.

## CERTIFICATE OF SERVICE

I certify that on September 17th, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ James Louis Roden, Jr.